**OFFICE COPY**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

SOCIETE DES BAINS DE MER ET DU :
CERCLE DES ETRANGERS A
MONACO, :

                Plaintiff, :

     vs. :

PLAYSHARE PLC, GRAND
MONACO LTD., GAMSHARE LTD., :
LUCAN TOH, MAXWELL WRIGHT,
HILSTEAD LTD., :

          Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

**JUDGE BATTS**

Case No. **'07 CIV 4802**

**DEMAND FOR JURY TRIAL**



RECEIVED
JUN 06 2007
U.S.D.C. S.D. N.Y.
CASHIERS

### COMPLAINT

Plaintiff Société des Bains de Mer et du Cercle des Etrangers à Monaco ("SBM" or

"Plaintiff"), by its attorneys Quinn Emanuel Urquhart Oliver & Hedges LLP, for its Complaint

against Defendants PlayShare PLC, Grand Monaco Ltd., GamShare Ltd., Lucan Toh, Maxwell

Wright, and Hilstead Ltd. (collectively, "Defendants"), alleges as follows:

### PRELIMINARY STATEMENT

1.    This action arises from Defendants' attempt to attract customers to its gambling

websites by willfully and blatantly trading off the goodwill associated with the world-renowned

Monaco casinos that SBM has developed through enormous effort and financial investment over

a time period spanning more than a century. SBM is the founder and manager of four Monaco

casinos, including the Casino de Monte-Carlo, which has been in operation since April 2, 1863.

Under express decree from the authorities of the Principauté of Monaco, SBM enjoys a

monopoly for casino and gaming industries within the territory of the Principauté of Monaco and

is therefore the sole company that can organize games and gambling in Monaco. As a result of SBM's efforts spanning over more than a century, the Casino de Monte-Carlo — the oldest of the four casinos owned and operated by SBM in Monaco — is famous and known the world over as one of the preeminent casinos in the world. SBM actively promotes its four Monaco-based casinos, particularly the Casino de Monte-Carlo, throughout the world and in the United States. Due to SBM's substantial investments, consumers perceive the terms "Monaco" or "Monte Carlo" in connection with casino services as identifiers of casino owner-operator SBM and the Principauté of Monaco. Indeed, the print and broadcast media, the film industry and the general public have used the terms "Casino de Monte-Carlo" and "Casino de Monaco" millions of times when referring to SBM's casinos.

2.      Notwithstanding these facts, and undeniably because of these facts, Defendants have attempted to trade upon the enormous goodwill and brand equity associated with SBM's casinos by registering and using at least 66 domain names that employ the term "Monaco" to operate gambling-related websites. Defendants' Grand Monaco Casino websites (the "Grand Monaco Casino") and its gambling software — which may be downloaded free of charge — prominently feature the designations GRAND MONACO CASINO and GRAND MONACO. Defendants' GRAND MONACO CASINO and GRAND MONACO designations undoubtedly cause consumers to mistakenly believe SBM sponsors, endorses, or is affiliated with Defendants' websites. Moreover, Defendants' incorporation of the term "Grand" and a "crest" design in connection with the term "Monaco"—both of which have connotations of royalty—further exacerbates the likelihood for consumer confusion.

3.      Defendants have deliberately infringed and diluted SBM's invaluable rights in its trademarks and brand equity through the registration, maintenance and use of Internet domain

2

names that are confusingly similar to SBM's marks, and by prominently featuring the confusingly similar GRAND MONACO CASINO and GRAND MONACO designations throughout their websites and gambling software in order to attract consumers to Defendants' websites and to create a caché that the sites would otherwise not possess. As Maxwell Wright— owner of the majority of domain names at issue in this action and Director and Chief Executive Officer of Defendant PlayShare — conceded in his submission to the World Intellectual Property Organization ("WIPO") in a related proceeding between SBM, Toh, and Wright, Defendants are "seeking to get some of the lustre of Monaco by incorporating the word in our name."

4.       Plaintiff seeks damages and permanent injunctive relief for Defendants' acts of unfair competition, trademark infringement, trademark dilution, cyber squatting, and related claims under federal and New York statutory and common law to prevent Defendants' continued fostering of an injurious false identification and association between Defendants and SBM and further co-opting of the goodwill and reputation of SBM's famous and valuable trademark rights.

## THE PARTIES

5.       Plaintiff SBM is a société anonyme organized and existing under the laws of the Principauté of Monaco, enrolled with the registry of companies of Monaco under number 56 S 00523, with a principal place of business at Place du Casino, Monte Carlo MC 98000 Monaco, Principauté de Monaco.  SBM has an additional place of business, operated in conjunction with the Principauté de Monaco, located at 565 Fifth Avenue, New York, New York 10017.

6.       Upon information and belief, Defendant PlayShare PLC ("PlayShare") is a public limited company organized under the laws of the United Kingdom with its principal place of business at 7 Queen Street, Mayfair, London W1J 5PB, UK.  Upon information and belief, PlayShare is the parent company of GamShare Limited and Grand Monaco Limited.

7.      Upon information and belief, Defendant Grand Monaco Limited ("Grand Monaco") is a private limited company organized under the laws of the United Kingdom with its principal place of business at 7 Queen Street, Mayfair, London W1J 5PB, UK.  Upon information and belief, Grand Monaco is a subsidiary of PlayShare PLC.

8.      Upon information and belief, Defendant GamShare Limited ("GamShare") is a private limited company organized under the laws of the United Kingdom with its principal place of business at 7 Queen Street, Mayfair, London W1J 5PB, UK.  Upon information and belief, GamShare is a gaming operator, licensed in Kahnawake, Canada.  Upon information belief, GamShare is a subsidiary of PlayShare.

9.      Upon information and belief, Defendant Lucan Toh ("Toh") is a Director of PlayShare and a resident of London, England.  Toh is the registered owner of domain names through which Defendants operate the Grand Monaco Casino.

10.     Upon information and belief, Defendant Maxwell Wright ("Wright") is a Director and the Chief Executive Officer ("CEO") of PlayShare, and a resident of London, England.  Wright is the registered owner of domain names through which Defendants operate the Grand Monaco Casino.

11.     Upon information and belief, Defendant Hilstead Limited ("Hilstead") is a company organized under the laws of the United Kingdom with its principal place of business at Mezzanine West, Hadfield House, Library Street, Gibraltar.  Upon information and belief, Hilstead is a subsidiary of Grand Monaco that handles, at least in part, the financial transactions for the Grand Monaco Casino.

12.     Upon information and belief, through their ownership of domains names set forth *infra* in ¶ 32 and control over Playshare, Toh and Wright have caused PlayShare to operate the

4

Grand Monaco Casino. Upon information and belief, Toh and Wright have caused subsidiaries of PlayShare, including Grand Monaco, GamShare, and Hilstead to aid in the advertising and promotion of the Grand Monaco Casino.

## JURISDICTION AND VENUE

13.     Plaintiff brings this action for federal unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1125(a); federal trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); federal cyber squatting under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1); deceptive acts and practices in violation of Section 349(h) of the New York General Business Law; false advertising in violation of Section 350-e(3) of the New York General Business Law; injury to business reputation and trademark dilution in violation of Section 360-*l* of the New York General Business Law; and trademark infringement and unfair competition in violation of the common laws of the State of New York and of the several states of the United States.

14.     This Court has original jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) and 1338(b). This Court has supplemental jurisdiction over all other claims asserted herein under 28 U.S.C. § 1367(a).

15.     This Court has personal jurisdiction over Defendants under New York Civil Practice Law and Rules § 302 by virtue of their transacting business and/or contracting to supply goods or services in the State of New York, their commission of tortious conduct as described herein within the State of New York, and their commission of tortious conduct as described herein outside the State of New York, causing injury to Plaintiff within the State of New York,

with the actual or reasonable expectation that said conduct will have consequences in the State of New York, and Defendants' deriving substantial revenue from interstate commerce.

16.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).

## THE BUSINESS OF PLAINTIFF SBM

17.    The Principauté de Monaco ("Monaco") is a constitutional monarchy located on a small piece of land, which is divided into four quarters. The most well-known of these quarters is undoubtedly Monte Carlo. It is so well-known, in fact, that it is common for the public to use the terms Monaco and Monte Carlo interchangeably.

18.    Monaco is known worldwide for, among other things, SBM's four high quality casinos, including the Casino de Monte-Carlo—one of Monaco's most famous and enduring symbols. SBM's empire of casinos is a venerable and important body within the international gaming and resort industry. The esteem held for SBM's casinos is based on its worldwide reputation for excellence and quality, and the terms "Monaco" and "Monte Carlo," when used in connection with gaming services, embody a tremendous amount of goodwill that inures to SBM. Because of the correlation between Monaco and Monte Carlo in the public's mind and the fame of SBM's Monaco-based casinos, to the average American consumer use of either the CASINO DE MONTE-CARLO mark or CASINO DE MONACO mark generates an association with SBM's famous casinos in Monaco.

19.    Since April 2, 1863, SBM has enjoyed a government-granted monopoly over the casino and gaming industries for the territory of Monaco, and is therefore the sole company that can organize games and gambling in Monaco. A true and correct copy of the Privilege des Jeux, renewed for the last time by the Ordonnace Souveraine no. 15-732 of March 13, 2003, is

6

attached hereto as Exhibit A. As indicated in Exhibit A, SBM will retain the exclusive right to conduct casino gaming within Monaco until at least April 1, 2027.

20.    SBM is the owner of United States Trademark Registration No. 3,031,006, dated December 20, 2005, for the mark CASINO DE MONACO for use in connection with, *inter alia*, computerized video games for gaming purposes, gaming equipment, software and hardware for use in gaming machines, computer game software, computer ecommerce software to allow users to perform electronic business transactions via a global computer network, and providing casino services within a hotel environment. A true and correct copy of Registration No. 3,031,006 is attached hereto as Exhibit B. SBM is also the owner of Registration No. 02.23234 for the mark CASINO DE MONACO issued by the Monaco Trademark Office on September 30, 2002. A true and correct copy of Monaco Registration No. 02.23234 and a translation are attached hereto as Exhibit C.

21.    Trademark Application Serial No. 76/479,351 for the mark CASINO DE MONTE-CARLO was filed by SBM on December 30, 2002 and is currently pending in the United States Patent and Trademark Office.

22.    In addition to the aforementioned trademark registrations and application, SBM also owns over one hundred and fifty domain names incorporating its trademarks that it uses in connection with its gaming and casino-related goods and services, including, among others, <monaco-grand-casino.com>, <casinosdemonaco.com>, <livemonacocasino.com>, <monacogoldcasino.fr>, <monaco-casinos.com>, <monaco-casinos.net>, <monacobestcasino.com>, <casinosmonaco.com>, <casinomonacopoker.com>, <casinomontecarlo.com>, and <casino-monte-carlo.com>. SBM has previously enforced its

trademark rights against infringing domain name registrants in United States federal courts. In addition, SBM has obtained numerous domain name transfers from infringing registrants.

23.     SBM actively and extensively advertises and promotes its Monaco-based casinos through various channels and media, including print media, film and the Internet, and uses the terms "Monaco" and "Monte-Carlo" to identify its casino-related goods and services. Though worldwide in its scope, a significant amount of this promotion is aimed at North American consumers. A substantial portion of SBM's multi-million dollar worldwide advertising and promotion budget is spent on marketing within the United States. Furthermore, for approximately twenty years, SBM has maintained an office in New York in conjunction with the Monaco tourism office for the purposes of promoting tourism in Monaco in general, as well as advertising SBM's Monaco-based casinos specifically. It also functions as an international sales office, from which consumers are able to book reservations for travel to Monaco.

24.     Through its New York office, SBM promotes its casinos in the United States by participating in trade shows, advertising through the print and broadcast media, charity partnerships and participation, direct mail and telephone marketing, and sales to groups and individuals. Over ten thousand brochures advertising SBM's Monaco-based casinos are mailed out every year by SBM. Plaintiff also publishes and distributes its English-language publication "Société," dedicated to tourism in Monaco and the resorts owned by SBM, throughout North America.

25.     This widespread marketing effort has reaped benefits. North Americans make up the single largest group of SBM clients. As of September 2000, twenty-two percent of SBM's customers were located in North America, followed by France and then Italy.

26.    In addition to SBM's advertising and marketing efforts, the media and general public have frequently used the CASINO DE MONACO and CASINO DE MONTE-CARLO marks in connection with SBM — and such use by the media and public inures exclusively to the benefit of SBM. As a famed institution, the Casino de Monte-Carlo garners a significant amount of unsolicited attention from the media. Monaco and the Casino de Monte-Carlo are frequently the subjects of newspaper and magazine articles throughout the United States. In addition, numerous books have been written about Monaco and the Casino de Monte-Carlo. Moreover, at least ten motion pictures were filmed in or were based on the Casino de Monte-Carlo, including, without limitation, "Foolish Wives" (1922), "Monte Carlo" (1930), "The Man Who Broke the Bank in Monte-Carlo" (1935), "Charlie Chan at Monte Carlo" (1937), "The Red Shoes" (1948), "Loser Takes All" (1956), "Seven Thieves" (1960), "Kaleidoscope" (1966), "Never Say Never Again" (1983), and "GoldenEye" (1995).

27.    As a result of SBM's long participation and leadership in the international gaming and resort industry, extensive advertising, and media attention over the MONACO and MONTE-CARLO designations for casino-related services and products, SBM would be irreparably harmed if it lost control over the ability to prevent unauthorized gaming sites from using such identifications for casino-related products or services.

## DEFENDANTS' UNLAWFUL CONDUCT

28.    Upon information and belief, Defendants operate several companies that provide marketing services to the online gambling industry in the form of both internet-based and non-internet-based advertising. This advertising is aimed at directing consumers to their Grand Monaco Casino websites, where consumers can download gambling software onto their computers and utilize online gambling services.

9

29.     Upon information and belief, PlayShare is the parent company of several online gambling companies, including Grand Monaco, PokerShare.com, and CasinoShare.com, as well as the PlayShare Affiliates Program and G3 Partner Limited ("G3"). Upon information and belief, PlayShare is licensed by the Kahnawake Gaming Commission, which regulates and controls gaming and gaming related activities conducted within and from the Mohawk Territory of Kahnawake, Canada, through its subsidiary, GamShare. Upon information and belief, Wright is the Director of PlayShare subsidiaries PokerShare.com and CasinoShare.com. Upon information and belief, the PlayShare Affiliates Program and G3 are programs through which member third-parties receive a monthly commission from PlayShare based on revenues earned from gamblers referred by the member to PlayShare.

30.     Upon information and belief, PlayShare acquired the Grand Gaming Group, including the Grand Monaco Casino and the G3 affiliate program that promotes it, effective November 1, 2006. Upon information and belief, such acquisition also included the domain names set forth *infra* in this Complaint.

31.     Upon information and belief, the Grand Monaco Casino, as it currently exists, was launched in or around July 2006. According to Defendants' websites, the Grand Monaco Casino offers players 250 unique games and "innovative monthly promotions" in order to retain existing clientele and continually attract new players. Upon information and belief, Defendants have actively employed the GRAND MONACO CASINO and GRAND MONACO designations in their advertising and promotional campaigns and have advertised their online casino services nationwide, including in New York and this judicial District.

10

32.    Defendants have also drawn consumer attention to their websites and casino services using a number of Monaco-related domain names.  As part of that effort Defendants have registered, maintained, and used at least the following domain names:

| | | |
|---|---|---|
| grandmonaco.com | grandmonacomillions.org | grandmonacolotto.com |
| grandmonacocasino.com | grandmonacopoker.org | grandmonacolounge.com |
| casinograndmonaco.com | grandmonacopokerclub.org | grandmonacomahjong.com |
| deutschesgrandmonaco.com | grandmonacoracebook.org | grandmonacomillions.com |
| grandmonacoayda.com | pokergrandmonaco.org | grandmonaconews.com |
| grandmonacoayuda.com | grandmonacostore.com | grandmonacoonlinecasino.com |
| grandmonacobingo.com | grandmonacosupport.com | grandmonacoonlinegaming.com |
| grand-monaco.com | grandmonacovideopoker.com | grandmonacoonlinepoker.com |
| grand-monaco-casino.com | grandmonaco.net | grandmonacopartners.com |
| grand-monaco-poker.com | casinograndmonaco.net | grandmonacoplayersclub.com |
| grandmonacocasinoclub.com | grandmonacobingo.net | grandmonacopoker.com |
| grandmonacoclub.com | grandmonacocasino.net | grandmonacopokerclub.com |
| grandmonacocraps.com | grandmonacocasinoclub.net | grandmonacopromotions.com |
| grandmonacogames.com | grandmonacogames.net | grandmonacoracebook.com |
| grandmonacogaming.com | grandmonacogaming.net | grandmonacorewards.com |
| grandmonacohost.com | grandmonacolottery.net | grandmonacoskillgames.com |
| grandmonacohosts.com | grandmonacomillions.net | grandmonacoslots.com |
| grandmonacolottery.com | grandmonacoplayersclub.net | grandmonacosports.com |
| casinograndmonaco.org | grandmonacopoker.net | grandmonacosportsbook.com |
| grandmonacocasino.org | grandmonacopokerclub.net | grandmonacosports.net |
| grandmonaco.org | grandmonacoracebook.net | grandmonacosportsbook.net |
| grandmonacocasinoclub.org | grandmonacoskillgames.net | pokergrandmonaco.net |

These domain names are collectively referred to herein as the "Monaco Domain Names."

33.    Each of the Monaco Domain Names is not owned by a corporate entity, but to either Defendant Toh or Wright *personally*.  This is no accident.  Upon information and belief, at all relevant times Defendants Toh and Wright have used numerous corporate entities, including but not limited to PlayShare, GamShare, Grand Monaco, CasinoShare.com, PokerShare.com, Hilstead, G3, and the PlayShare Affiliate Program, as their alter egos; have dominated and

controlled the affairs of these corporations; and have employed these entities as their instrumentalities for the acts alleged herein.

34.    Defendants use the Monaco Domain Names, as well as the GRAND MONACO CASINO and GRAND MONACO designations, to draw attention to and market their online casino websites. Defendants' websites, as well as their associated gaming components, prominently feature the GRAND MONACO CASINO and GRAND MONACO designations. As shown below, these websites also prominently feature a stylized rendition of those marks, including a mock royal "crest," enhancing the false suggestion that the designations are associated with Monaco and its royal family:





35. Defendants' online casino is currently in operation. The Monaco Domain Names resolve to websites with identical content, thereby creating numerous avenues through which consumers can access the Grand Monaco Casino.[1]



On the home page of Defendants' websites, pictured above, consumers are invited to download

---

[1] Currently, the following Monaco Domain Names appear to have been parked: grand-monaco-poker.com; grandmonacopoker.org; grandmonacopokerclub.org; pokergrandmonaco.org; grandmonacopoker.net; grandmonacopokerclub.net; grandmonacoonlinepoker.com; grandmonacopoker.com; grandmonacopokerclub.com; and pokergrandmonaco.net.

gambling software. At the top of each page of Defendants' websites, the GRAND MONACO designation, coupled with the "crest" indicia, is prominently displayed.

36.    Directly below the link to download the gambling software on the home page of Defendants' websites, pictured above, is an invitation to "PLAY INSTANT FLASH — NO DOWNLOAD REQUIRED." Upon clicking this link, the following screen is displayed:



As shown above, each of Defendants' "Instant Flash" games are offered in close proximity to the GRAND MONACO CASINO designation and stylized "crest."

37.    The program available for download on Defendants' websites prominently features the GRAND MONACO stylized designation at the top of each gaming page, as shown below:

14



38.    Upon information and belief, Defendants' websites, their associated downloadable casino program, and their "Instant Flash" gaming environment are accessible anywhere in the United States, including New York and this judicial District.

39.    Defendants have targeted consumers within this judicial District for promotional campaigns intended to draw attention to PlayShare and its subsidiaries (which includes Grand Monaco).  For example, on or about May 26, 2006, Defendants organized and heavily publicized a "gas giveaway" promotion that was, according to a PokerShare.com press release, "designed to help New Yorkers enjoy their Memorial Day Weekend without having to fret about the high price of gasoline."  Defendants actively encouraged local radio personalities and media outlets to publicize the event, as well as their casino services, websites, and affiliate programs.  The event

15

was held in this judicial District, at the corner of Canal Street and the West Side Highway, and

resulted in a ten-block traffic jam that was ultimately shut down by the New York Police

Department. As part of the event, Defendants gave away over eight thousand gallons of gasoline

to New York consumers, including consumers in this judicial District, all in an attempt to gain

attention for their casino services, websites, and affiliate programs.

40.    Upon information and belief, Defendants' computer program continues to interact

with pre-registered customers in the United States, including customers in New York and this

judicial District. For example, as indicated in the above image of Defendants' software (and as

highlighted below), Defendants' websites and their promotional material continue to make

reference to recent winnings paid in U.S. dollars to U.S. players:



41.    As a result of Defendants' use of the terms "Monaco" and "Casino" in connection

with gambling services, consumers are likely to believe mistakenly that Defendants' websites are

sponsored or authorized by or are affiliated with SBM. The fact that Defendants have

incorporated the term "Grand" does little to dispel the likelihood of consumer confusion and

indeed serves only to increase the likelihood that consumers will mistakenly believe that SBM

and the Principauté of Monaco is associated with the Grand Monaco Casino. At best,

Defendants' use of the term "Grand" does nothing to distinguish between the GRAND

16

MONACO CASINO and GRAND MONACO designations and the CASINO DE MONACO mark. Defendants' use of a royal "crest" design in connection with the GRAND MONACO designations compounds the confusion.

42.    Defendants are no doubt cognizant of the similarities between their domain names and designations and the CASINO DE MONACO mark, and it is by virtue of those similarities that Defendants' enterprise has earned substantial revenues. No doubt trying to have their cake and eat it too, Defendants include a statement situated at the very bottom of their websites' home pages that, in small font, reads: "Grand Monaco is in NO way associated with the Principality of Monaco, nor ANY of the land-based casino operations located in that jurisdiction. Grand Monaco is an independent operation." The statement, which neither as a matter of law nor of fact excuses Defendants' infringing activities, demonstrates Defendants' own recognition that consumers are likely to believe mistakenly that Defendants' websites were in some way sponsored or endorsed by, or affiliated with SBM.

43.    Defendants actively and aggressively advertise, promote, and market the gambling services offered in connection with the Grand Monaco Casino websites. One means through which Defendants promote their websites is "affiliate programs." Affiliates promote Defendants' services for a commission of revenues earned by Defendants for each individual gambling on Defendants' websites as a result of the affiliate's efforts. Upon information and belief, Defendants currently employ approximately 463 affiliates to promote their services and websites and derive approximately 95% of their business from affiliate advertisements featuring the GRAND MONACO CASINO and GRAND MONACO designations. Affiliates provide links to Defendants' websites in their advertisements, allowing consumers to reach Defendants' Grand Monaco Casino websites with the click of a button.

17

44.    Defendants' affiliates promote not only the Grand Monaco Casino, but other PlayShare gaming websites offering casino services, including PokerShare.com and CasinoShare.com. For example, on its website home page, G3 advertises its association with Grand Monaco in close proximity to a discussion of its connection to and relationship with the CasinoShare and PokerShare sites, and offers hyperlinks to those websites, as seen below:



By coupling the advertising and promotion of Defendants' other gambling websites with the Grand Monaco Casino, Defendants leverage the popularity of such sites to the Grand Monaco Casino.

45.    Upon information and belief, Defendant PlayShare is a public company. Notwithstanding the same, PlayShare has not publicly filed any financial statements. However, Wright has allegedly confirmed that the amount of business generated by the Grand Monaco Casino is "very substantial" and sales were at least $120,000,000 per annum based on 2006 rates.

Based upon this assertion of Wright, it is apparent that Defendants enjoy substantial revenues from the operation of the Grand Monaco Casino.

46.    Wright has stated that, in using the Monaco Domain Names and GRAND MONACO CASINO and GRAND MONACO designations, Defendants were "seeking to get some of the lustre of Monaco by incorporating the word in our name."

47.    On March 21, 2007, SBM initiated a proceeding before WIPO pursuant to the Uniform Domain Name Dispute Resolution Policy to obtain transfers of the Monaco Domain Names from Toh and Wright. A true and correct copy of the Complaint in that proceeding is attached hereto as Exhibit D. To date, no decision has been issued in that proceeding.

48.    Defendants have engaged in the above-referenced activities without permission or authority from SBM. Upon information and belief, such actions were taken in bad faith with full knowledge of Plaintiff's ownership of, and Plaintiff's exclusive rights to use the CASINO DE MONACO mark, with the intent to deceive and mislead the public into believing that Defendants' websites, casino software, gaming pages, and affiliate programs are sponsored, licensed, or authorized by or affiliated, connected, or otherwise associated with SBM.

49.    Defendants' use of the Grand Monaco Casino websites and Monaco Domain Names is likely to cause consumer confusion or mistake or deceive consumers into thinking that Defendants' websites, casino software, gaming pages, and affiliate programs are authorized by, or affiliated, connected, or otherwise associated with SBM. Defendants intentionally, willfully, and in bad faith created this misimpression.

50.    Defendants' activities are likely to diminish and blur and/or tarnish the meaning of Plaintiff's famous CASINO DE MONACO mark, thereby diluting the distinctive quality of the mark.

19

51.     Defendants' activities have caused and will continue to cause Plaintiff great and irreparable harm and damage. Unless permanently restrained and enjoined by this Court, Defendants will persist in its unlawful activities, thereby causing further damage and irreparable harm to Plaintiff and to the public interest.

52.     Plaintiff has no adequate remedy at law.

### COUNT I — FEDERAL UNFAIR COMPETITION

53.     Plaintiff hereby realleges and incorporates by reference the allegations of paragraphs 1 through 52 of this Complaint.

54.     The aforesaid acts of Defendants constitute use in commerce of words, terms, names, symbols, and devices, and combinations thereof; false designations of origin; false and misleading descriptions of fact; and false and misleading representations of fact that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' services, goods, or other commercial activities by Plaintiff.

55.     The aforesaid acts of Defendants constitute use in commerce of words, terms, names, symbols, and devices, and combinations thereof; false designations of origin; false and misleading descriptions of fact; and false and misleading representations of fact in commercial advertising, or promotion that misrepresents the nature, characteristics, or qualities of Defendants' services, goods, or other commercial activities.

56.     The aforesaid acts of Defendants constitute false designation of origin and false and misleading descriptions and representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

57.    The aforesaid acts of Defendants have caused, and are causing, great and irreparable harm to Plaintiff, and unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT II —FEDERAL TRADEMARK INFRINGEMENT

58.    Plaintiff hereby realleges and incorporates by reference the allegations of paragraphs 1 through 57 of this Complaint.

59.    Defendants, without the consent of Plaintiff, have used and will continue to use in commerce marks confusingly similar to SBM's registered CASINO DE MONACO trademark in connection with the sale, offering for sale, distribution and advertising of goods and/or services with which such intended use is likely to cause confusion, or to cause mistake, or to deceive.

60.    The aforesaid acts of Defendants constitute trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

61.    The aforesaid acts of Defendants have been intentional, willful, and in bad faith.

62.    The aforesaid acts of Defendants have caused, and are causing, great and irreparable harm to Plaintiff and, unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT III — FEDERAL CYBERSQUATTING

63.    Plaintiff hereby realleges and incorporates by reference the allegations of paragraphs 1 through 62 of this Complaint.

64.    The aforesaid acts of Defendants constitute the registration, maintenance and use of numerous domain names (the Monaco Domain Names) that are virtually identical to, confusingly similar to, and dilutive of SBM's famous CASINO DE MONACO mark, knowingly and with a bad-faith intent to profit therefrom.

21

65.     The aforesaid acts of Defendants constitute unlawful cybersquatting in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

66.     The aforesaid acts of Defendants have caused, and are causing, great and irreparable harm to Plaintiff, and unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT IV — DECEPTIVE ACTS AND PRACTICES UNDER NEW YORK LAW

67.     Plaintiff hereby realleges and incorporates by reference the allegations of paragraphs 1 through 66 of this Complaint.

68.     The aforesaid acts of Defendants constitute deceptive acts or practices in the conduct of business, trade, or commerce, or in the furnishing of any service in New York State in violation of Section 349(h) of the New York General Business Law.

69.     The aforesaid acts of Defendants have caused, and are causing, great and irreparable harm to Plaintiff, and unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT V — FALSE ADVERTISING UNDER NEW YORK LAW

70.     Plaintiff hereby realleges and incorporates by reference the allegations of paragraphs 1 through 69 of this Complaint.

71.     Defendants misleadingly advertised services, in that Defendants made statements, used words, designs, devices, sounds, or combinations thereof that failed to reveal facts material in the light of such representations with respect to the subject service, or under such conditions as are customary or usual.

72.     The aforesaid acts of Defendants constitute false advertising in the conduct of business, trade, or commerce, or in the furnishing of any service in New York State in violation

22

of Section 350-e(3) of the New York General Business Law.

73.    The aforesaid acts of Defendants have caused, and are causing, great and irreparable harm to Plaintiff, and unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT VI — INJURY TO BUSINESS REPUTATION AND DILUTION UNDER NEW YORK LAW

74.    Plaintiff hereby realleges and incorporates by reference the allegations of paragraphs 1 through 73 of this Complaint.

75.    The aforesaid acts of Defendants constitute intended use beginning after the CASINO DE MONACO mark had become famous and will dilute the distinctive quality of the CASINO DE MONACO mark.

76.    The aforesaid acts of Defendants are likely to injure the business reputation of Plaintiff and to dilute the distinctive quality of Plaintiff's trademarks in violation of 360-*l* of the New York General Business Law.

77.    The aforesaid acts of Defendants have caused, and are causing, great and irreparable harm to Plaintiff, and unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT VII — COMMON LAW TRADEMARK INFRINGEMENT

78.    Plaintiff hereby realleges and incorporates by reference the allegations of paragraphs 1 through 77 of this Complaint.

79.    The aforesaid acts of Defendants constitute use that is likely to cause confusion as to the source of Defendants' goods and/or services.

80.    The aforesaid acts of Defendants constitute trademark infringement in violation of common law.

81.    The aforesaid acts of Defendants have caused, and are causing, great and irreparable harm to Plaintiff, and unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT VIII — COMMON LAW UNFAIR COMPETITION

82.    Plaintiff hereby realleges and incorporates by reference the allegations of paragraphs 1 through 81 of this Complaint.

83.    The aforesaid acts of Defendants constitute use that is likely to cause confusion as to the source of Defendants' goods and/or services.

84.    The aforesaid acts of Defendants constitute unfair competition in violation of common law.

85.    The aforesaid acts of Defendants have caused, and are causing, great and irreparable harm to Plaintiff, and unless permanently restrained by this Court, said irreparable injury will continue.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays for a judgment in its favor and against Defendants ordering:

a.    That Defendants, and each of its officers, directors, agents, servants, employees and representatives, and those persons in active concert or participation with them or any of them, be permanently enjoined and restrained from:

(1)    Using on or in connection with the promotion, advertisement, marketing, offering, operation or in any manner using gaming or gambling services, online or on land, including as a domain name or a component thereof, the Monaco Domain Names or any colorable imitations thereof or anything confusingly similar thereto; or the CASINO DE MONACO mark, or any colorable imitations thereof or anything confusingly similar

24

thereto;

(2)     Representing by any means whatsoever, directly or indirectly, or doing any other acts or things calculated or likely to cause confusion, mistake, or to deceive consumers into believing that Defendants' goods and/or services are the services or products of Plaintiff, or that there is any affiliation or connection between Plaintiff or its services and goods and Defendants or their services and products and from otherwise unfairly competing with Plaintiff;

(3)     Registering, using or transferring the Monaco Domain Names and from registering, using, copying, reproducing or imitating the CASINO DE MONACO mark, or any colorable imitations thereof or anything confusingly similar thereto;

(4)     Using any mark in a manner so as to cause the dilution of the distinctive quality of the famous CASINO DE MONACO mark;

(5)     Using any designation incorporating the designation MONACO or MONTE CARLO for casino-related products or services.

b.     That Defendants be directed to file with this Court and to serve upon Plaintiff within thirty (30) days after service upon Defendants of this Court's injunction issued in this action, a written report by Defendants under oath setting forth in detail the manner in which Defendants has complied with this injunction.

c.     That Plaintiff recover its damages sustained as a result of Defendants' federal trademark infringement, unfair competition, and cyber squatting, together with an accounting of Defendants' profits arising from such activities, and that the Court exercise its discretion and enter a judgment for such additional sums as the Court shall find to be just, according to the egregious nature of the acts of Defendant.

d.    That Plaintiff have and recover treble damages under 15 U.S.C. § 1117 by reason of the willful and deliberate acts of federal trademark infringement by Defendant.

e.    That Plaintiff have and recover treble damages under New York General Business Law §§ 349(h) and 350-d by reason of Defendants' acts of deceptive trade practices.

f.    That Plaintiff have and recover its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and New York General Business Law §§ 349(h) and 350-d.

g.    That Plaintiff have and recover Defendants' profits and/or damages by reason of Defendants' acts of trademark infringement and unfair competition under common law.

h.    That Defendants be required to recall from any and all channels of trade any and all advertising or promotional materials or other infringing matter, and to take affirmative steps to dispel any false suggestion of a connection to Plaintiff by virtue of its infringing activities, including, but not limited to, all necessary and appropriate corrective advertising measures.

i.    That Plaintiff have and recover its taxable costs and disbursements herein.

j.    That Plaintiff have such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a jury trial on all issues triable to a jury.

DATED:    New York, New York
          June 5, 2007

                                    QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP


                                    By: _____
                                        Robert L. Raskopf (RR-5022)
                                        Alan Blum (AB-6937)
                                        Lori E. Weiss (LW-7866)

                                    51 Madison Avenue, 22nd Floor
                                    New York, New York  10010
                                    Tel:  (212) 849-7000
                                    Fax:  (212) 849-7100

                                    ATTORNEYS FOR SOCIETE DES BAINS
                                    DE MER ET DU CERCLE DES
                                    ETRANGERS A MONACO

                                    *Of Counsel*:

                                    QUINN EMANUEL URQUHART OLIVER
                                    & HEDGES, LLP
                                    George R. Hedges
                                    865 S. Figueroa Street, 10th Floor
                                    Los Angeles, California 90017
                                    Tel:  (213) 443-3000
                                    Fax:  (213) 443-3100