UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

SOCIETE DES BAINS DE MER ET DU          :
CERCLE DES ETRANGERS A MONACO,          :

                        Plaintiff, :          Case No. 07 Civ. 4802
    vs.                                              (DAB)(RLE)

                               :

PLAYSHARE PLC, GRAND MONACO LTD.,       :
GAMESHARE (UK) LTD., LUCAN TOH,
MAXWELL WRIGHT, HILSTEAD LTD.,          :

                     Defendants. :

-------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM
## IN SUPPORT OF MOTION TO DISMISS

Jonathan E. Moskin (JM 9814)
Adam M. Turkel
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 819-8200
Attorney for Defendants

# TABLE OF CONTENTS

I     PRELIMINARY STATEMENT ..................................................................... 1

II    FACTUAL BACKGROUND ......................................................................... 3

III   THE COMPLAINT ...................................................................................... 5

IV   ARGUMENT .............................................................................................. 7

    (a)  Defendants Do Not Transact Business In New York Within the Meaning  of CPLR § 302(a)(1) ................................................................................................... 8
    (b)  Defendants Have Committed No Tortious Acts In the State Within the Meaning of CPLR § 302(a)(2) ................................................................................................... 13
    (c)  Defendants Have Committed No Tortious Acts Outside the State Causing Injury In New York Within the Meaning of CPLR § 302(a)(3)(ii) ................................................. 14
    (d)  The Exercise of Jurisdiction Would Be Unconstitutional ................................................ 15

V    CONCLUSION ........................................................................................... 17

# TABLE OF AUTHORITIES

## FEDERAL AND STATE CASES

Am. Network, Inc. v Access Am./Connect Atlanta, Inc.,
    975 F. Supp. 494 (S.D.N.Y. 1997)...............................................................................14

Asahi Metal Indus. v. Superior Court,
    480 U.S. 102 (1987)..............................................................................................15, 16

Bensusan Rest. Corp. v. King,
    126 F.3d 25 (2nd Cir. 1997)....................................................................10, 13, 14, 15

Best Van Lines, Inc. v. Walker,
    No. 04-3924-CV, 2007 WL 1815511 (2d Cir. Jun. 26, 2007).............................8, 9, 10

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985)..............................................................................................13, 16

Buti v. Perosa, S.R.L.,
    139 F.3d 98 (2nd Cir. 1998).........................................................................................2

Citigroup Inc. v. City Holding Co.,
    97 F. Supp. 2d 549 (S.D.N.Y. 2000)..........................................................................14

Dawn Donut Co. v. Hart's Food Stores, Inc.,
    267 F.2d 358 (2nd Cir. 1959).......................................................................................2

Feathers v. McLucas,
    15 N.Y.2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8 (1965).......................................13, 14

Hanson v. Denckla,
    357 U.S. 235 (1958)....................................................................................................16

Int'l Shoe Co. v. Washington,
    326 U.S. 310 (1945)..............................................................................................15, 16

ISI Brands, Inc. v. KCC Intern., Inc.,
    458 F. Supp. 2d 81 (E.D.N.Y. 2006) ..........................................7, 9, 10, 12, 13, 14, 16

ITC Ltd. v. Punchgini, Inc.,
    482 F.3d 135 (2d Cir. 2007).........................................................................................1

Kernan v. Kurz-Hastings, Inc.,
    175 F.3d 236 (2d Cir. 1999).........................................................................................7

Light v. Taylor,
    No. 05 CIV. 5003 WHP, 2007 WL 274798 (S.D.N.Y. Jan. 29, 2007)........................15

Merck & Co. v. Mediplan Health Consulting, Inc.,
    425 F. Supp. 2d 402 (S.D.N.Y. 2006)...........................................................................11

Metro. Life Ins. Co. v. Robertson-Ceco Corp.,
    84 F.3d 560 (2nd Cir. 1996)...........................................................................................7

Mullally v. Jones,
    No. 2:05 CV 00154-BES-GWF, 2007 WL 674294 (D. Nev. Feb. 28, 2007)........12, 13

Nat'l Football League v. Miller,
    No. 99 CIV. 11846 JSM, 2000 WL 335566 (S.D.N.Y Mar. 20, 2000) .......................14

Packer v. TDI Sys., Inc.,
    959 F. Supp. 192 (S.D.N.Y. 1997)...............................................................................11

Rosenberg v. PK Graphics,
    No. 03 CIV. 6655 (NRB), 2004 WL 1057621 (S.D.N.Y. May 10, 2004)...................10

Seldon v. Direct Response Technologies. Inc.,
    No. 03 CIV.5381(SAS), 2004 WL 691222 (S.D.N.Y. Mar. 31, 2004) ........................9

Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,
    450 F.3d 100 (2d. Cir. 2006)..........................................................................................9

Telebyte, Inc. v. Kendaco, Inc.,
    105 F. Supp. 2d 131 (E.D.N.Y. 2000) ........................................................................14

World-wide Volkswagon Corp. v. Woodson,
    444 U.S. 286 (1980)......................................................................................................16

## STATUTES

15 U.S.C. § 1125(d)(2)(A) ...............................................................................................11

15 U.S.C. § 1126................................................................................................................2, 6

15 U.S.C. § 1126(d) ..........................................................................................................2, 6

15 U.S.C. § 1126(d)(4) ........................................................................................................2

C.P.L.R. § 302 ........................................................................................................18

C.P.L.R. §302(a)(1) ...........................................................................................8, 15

C.P.L.R. §302(a)(2) .......................................................................................8, 13, 14

C.P.L.R. §302(a)(3)(ii)....................................................................................8, 14


Fed.R.Civ.P. Rule 12(b)(2) ............................................................................1, 3, 8

Defendants, PlayShare PLC, "Grand Monaco Ltd.", Gamshare (UK) Ltd., Lucan Toh,

Maxwell Wright and Hillstead Ltd., respectfully submit this memorandum in support of their

motion under Fed.R.Civ.P. Rule 12(b)(2) to dismiss for lack of personal jurisdiction.

## I. <u>PRELIMINARY STATEMENT</u>

Although the Complaint purports to be for infringement of the name, "Casino De

Monaco" (a purely descriptive term that simply means "casino of Monaco"), Societe des Bains

nowhere alleges that it has actually used the term as a trademark - in this country or anywhere

else for that matter - and as far as defendants are aware, there simply is no such business or

product or service. Even assuming some reason to believe circumstances might someday exist

under which a probability might arise that PlayShare's business name, "Grand Monaco Casino"

would cause a substantial number of consumers to believe the parties' services came from the

same source (which is the test for infringement), until there is some such use in commerce, there

can be no claim for infringement. And until that time, there simply does not appear to be a

justiciable controversy. Laying aside that descriptive terms such as "casino of Monaco" are

unprotectable without proof of acquired recognition, only three months ago, the Second Circuit

confirmed, as it has in the past, that under principles of territoriality underlying trademark law,[1]

foreign rights or registrations confer no protection in this country absent actual use in commerce.

<u>ITC Ltd.</u> v. <u>Punchgini, Inc.</u>, 482 F.3d 135, 155 (2d Cir. 2007) ("…United States trademark rights

are acquired by, and dependent upon, priority of use….The territoriality principle requires the

use to be in the United States for the owner to assert priority rights to the mark under the Lanham

---

[1] The Second Circuit recently explained:
    [B]ecause a trademark has a separate legal existence under each country's laws, ownership of a mark in one country does not automatically confer upon the owner the exclusive right to use that mark in another country. Rather, a mark owner must take the proper steps to insure that its rights to that mark are recognized in any country in which it seeks to assert them.
<u>ITC Ltd.</u> v. <u>Punchgini, Inc.</u>, 482 F.3d 135, 155 (2d Cir. 2007).

Act."). Indeed, under long-settled law, even a domestic trademark owner with a valid

registration is not permitted to enforce its mark absent use in commerce in the geographic region

where the defendant does business. Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d 358

(2d Cir. 1959). The Complaint does purport to detail various efforts to advertise and promote the

very different trademark, "Casino de Monte Carlo", but even if the name actually in issue,

Casino de Monaco, has ever been advertised or promoted here (the allegations being less than

clear but suggesting not), the Second Circuit has clarified that absent actual sales of products or

services, advertising is not use in commerce sufficient to confer any trademark rights. Buti v.

Perosa, S.R.L., 139 F.3d 98, 103 (2d Cir. 1998). Plaintiff does allege that it owns trademark

Registration No. 3,031,006 for "Casino De Monaco", but as specified in the complaint itself (Ex.

D pages 9-11), many of the domain names at issue here were registered by PlayShare (or its

predecessor in interest) before Societe des Bains' trademark registration issued on December 20,

2005.[2]

Even if Societe des Bains does begin making commercial use of the name "Casino de

Monaco", and thus acquires enforceable rights in the name, and even if it could overcome

PlayShare's prior rights, far simpler grounds exist to resolve this matter now: the lack of personal

jurisdiction over any of the defendants. Indeed, defendants not only do no business in the State

---

[2]     Societe des Bains' application was filed under 15 U.S.C. § 1126(d), based on a foreign application (not use
in commerce), and that section provides that "nothing in this subsection shall entitle the owner of a registration
granted under this section to sue for acts committed prior to the date on which his mark was registered in this
country unless the registration is based on use in commerce." 15 U.S.C. § 1126(d)(4).
        Moreover, plaintiff's one United States registration, which simply recites laundry lists of goods and
services (such as computerized video games, video cameras, data processing equipment, computer cameras, blank or
partially printed postcards, books, magazines, typewriters, rubber bands, tubs for consumer products, playing cards,
board games, gymnastic and sporting articles, decoration for Christmas trees, car racing, tennis tournaments,
swimming competitions, etc.) is probably invalid because plaintiff never had a genuine intent to sell such goods or
services under the mark; because as an applicant, to overcome the initial refusal of the Trademark Office to register
the purely descriptive, plaintiff submitted only proof of advertising and use (abroad) of the separate trademark
"Casino De Monte Carlo"; and because plaintiff has, withal, apparently abandoned any claimed rights through non-
use in the almost five years since it first applied for registration here.

of New York - under the accused name, Grand Monaco Casino, or other wise – and have no physical or other presence here, but, to the contrary, Playshare affirmatively <u>refuses</u> to allow New York residents to participate in its on-line gaming sites.  Moreover, none of the defendants has an office in New York; none has any employees here; none has any assets in this State; and none has done anything that would reasonably lead to an expectation it would be haled into court here.  One of the named defendants, Grand Monaco, Ltd., does not exist at all.  Accordingly, the Complaint should be dismissed under Fed.R.Civ.P. Rule 12(b)(2).

## II.  <u>FACTUAL BACKGROUND</u>

As set forth (correctly) in the Complaint (¶ 6), PlayShare is a United Kingdom public limited company with offices at 7 Queen Street, Mayfair, London.  However, it has no offices in New York (or elsewhere in the United States), no employees, agents, representatives or real property or other assets here and is not licensed to do business in this State. (Wright Decl. ¶ 2.) The Complaint similarly alleges (¶¶ 7, 8) that Grand Monaco Ltd. is a subsidiary of PlayShare with offices at 7 Queen Street, Mayfair, London.  In fact, there is no such entity as "Grand Monaco, Ltd."; it does not exist in New York or anywhere else.  (Wright Decl. ¶ 3.)  On November 1, 2006, Playshare did acquire the company Naden, Inc., which is not a named party. Naden had created the Grand Monaco Casino and was doing business under that name.[3] However, since mid-October 2006, PlayShare has affirmatively refused to allow New York residents to participate on its Internet gaming sites – including, after the acquisition on November 1, 2006 its Grand Monaco Casino site – by blocking their access to the services offered on the site. It has never allowed New York residents to participate on the site.  (<u>Id</u>)

---

[3] The name itself had been used (at the internet address grandmonaco.com) since 2000, seven years before the complaint was filed, two years before Societe des Bains applied to register the name Casino de Monaco and five years before the name was actually registered.  As set forth in the Complaint (Ex. D at pgs. 9-11) numerous domain name registrations used by defendants, and which are the subject of this suit, predate the issuance to Societe des Bains of Registration No. 3,031,006 for "Casino de Monaco".

The Complaint further alleges (¶ 8) that Gamshare (UK) Ltd. is a subsidiary of PlayShare with offices at 7 Queen Street, Mayfair, London.  However, Gamshare, which is based in Gibraltar, has no offices in New York (or elsewhere in the United States), no employees, agents, representatives or real property or other assets here and is not licensed to do business in this State. (Wright Decl. ¶ 4.)  Moreover, although GamShare operates the businesses PokerShare and CasinoShare, it has nothing to do with PlayShare's Grand Monaco Casino.  (Id.)

The Complaint alleges (¶ 11) that Hillstead Ltd. is United Kingdom company with offices in Gibraltar.   However, Hillstead, which is a subsidiary of Naden, Inc., simply processes financial transactions for Playshare and has no offices in New York (or elsewhere in the United States), no employees, agents, representatives or real property or other assets here and is not licensed to do business in this State. (Wright Decl. ¶ 5.)  Although it is doubtful Hillstead (given its back-office role) makes commercial use of any names, because New York residents can not participate in PlayShare's on-line gaming sites, Hillstead processes no transactions for New Yorkers and hence has no role in the use of any names in this State. (Id.)

As for the individuals, Lucan Toh and Maxwell Wright, the Complaint simply alleges (¶¶ 9, 10) that they reside in the United Kingdom, are directors of PlayShare and (in Mr. Wright's case) is also CEO of the company.  Mr. Toh in fact severed all ties with Playshare and the other corporate defendants in November 2006 and resides in the United Arab Emirates. (Wright Decl. ¶ 6.)  Neither individual has any real property or other assets in New York, nor any agents or representatives here. (Id.) For administrative purposes, Mr. Wright and Mr. Toh registered various domain names at issue in this proceeding; yet, it is only because certain of those domain name registrations have been frozen (as a result of ongoing litigation with Societe des Bains) that Mr. Toh has been unable since he severed ties with the company to transfer the registrations to PlayShare. (Id.)

The only allegation in the complaint alleging any conduct in New York (or elsewhere in the United States) was a gasoline give-away in May 2006 by PlayShare designed to promote its poker its services offered under the name PokerShare and having nothing to do with the name or mark Grand Monaco Casino. (Id. ¶ 4.) The Complaint does not allege that the name PokerShare is in any way relevant to this action.

## III. **THE COMPLAINT**

The Complaint alleges that the Court has personal jurisdiction over all defendants solely under CPLR § 302 for allegedly transacting business in New York or contracting to supply goods or services here, committing tortious conduct in this State or deliberately causing injury to Societe des Bains here. No allegation is made that general jurisdiction lies under CPLR § 301. The only allegations specifically referring to any actual conduct in New York State concerns a gasoline giveaway in May 2006. As noted, that event was designed to promote PlayShare's "PokerShare" service, not the "Grand Monaco Casino" service, which PlayShare did not at any rate acquire until November 1, 2006. (Wright Decl. ¶ 4.) The Complaint (¶ 40) elsewhere alleges (upon information and belief) that consumers in New York continue to interact with the Grand Monaco Casino website, but such speculation is incorrect. (Wright Decl. ¶ 3.)

As for its own presence in the State of New York or any injury it may have sustained here, the Complaint is less than specific. The Complaint alleges that Societe des Bains has a place of business in Monaco, and that it has an address either "operated in conjunction with the Principaute de Monaco" or "in conjunction with the Monaco tourism office" located at 565 Fifth Avenue, New York, New York." (Complaint ¶¶ 5, 23.) Plaintiff does not specify what this means or whether it has any employees here or is licensed to do business here. Moreover, the complaint nowhere specifically alleges that Societe des Bains actually uses the subject trademark

in New York or in the United States – whether at the New York address or elsewhere.  There is

no allegation, for instance, that in any given year the plaintiff sold in New York any particular

quantity of goods or services under the claimed trademark, Casino de Monaco, or even that it has

offered to sell or advertised or promoted any particular goods or services under the name Casino

de Monaco.  Indeed, there is no allegation that there exists any business anywhere in the world

called the Casino de Monaco, and defendants are not aware of any such operation.

(Wright Decl. ¶7)

The Complaint does allege that Societe des Bains promotes its Casino de Monte Carlo to

American tourists (Complaint ¶ 23); and that it (or the principality) uses the New York office in

part to promote tourism related to that casino.  (Id. ¶ 24.)   The pleading does not allege that

Societe des Bains (or the principality) promotes any such casino under the name Casino de

Monaco, but instead suggests the names Casino de Monaco and Casino de Monte Carlo are

somehow equivalent. (Id. ¶ 18.)  Likewise, in pleading that it extensively promotes its Monaco-

based casinos (id. ¶ 23), plaintiff nowhere states that there exists a Casino de Monaco to promote

or that has been promoted.   (As disclosed on plaintiff's website, casinomontecarlo.com, the only

actual casinos in Monaco are the Casino de Monte Carlo, the Sun Casino, the Café de Paris

Casino and the Sporting Monte Carlo Casino.)

The Complaint also alleges that Societe des Bains owns a United States registration for

the mark Casino de Monaco (Complaint ¶ 20), for which it applied, not based on use in

commerce in the United States, but based solely on an application it filed in Monaco itself (under

a particular treaty arrangement enacted into United States law as 15 U.S.C. § 1126(d)), as well as

a claimed intent to use the mark.  Because of the specific terms of  15 U.S.C. § 1126(d), no

statement of actual use was required and none was filed.  Although the registration recites a

lengthy list of goods and services, including computer hardware and software, various paper goods (such as postcards, magazines, menus, etc.); playing cards, board games, exercise equipment and so forth; the Complaint nowhere identifies any such product or service that has ever actually been sold in the United States or New York in particular.

Similarly, the complaint lists various domain names owned by Societe des Bains (Complaint ¶ 22), including monacograndcasino.com and casinosdemonaco.com. However, these apparently all link to only one active website: casinomontecarlo.com, and there is no suggestion that that web-site provides any gaming or other services to American or New York consumers, or that name or mark "Casino de Monaco" is used anywhere on or in connection with the site. Finally, the Complaint avers that seven years ago (two years <u>before</u> it even first claimed an intent to use the designation "Casino de Monaco"), 22% of Societe des Bains clients were "located in North America." (Id. ¶ 25.) The Complaint does not specify where on the continent any of these individuals or businesses were located or for what services they were clients.

## IV. <u>ARGUMENT</u>

Having asserted jurisdiction over out-of-state defendants, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." <u>Kernan</u> v. <u>Kurz-Hastings, Inc.</u>, 175 F.3d 236, 240 (2d Cir. 1999) (quoting <u>Metro. Life Ins. Co.</u> v. <u>Robertson-Ceco Corp.</u>, 84 F.3d 560, 566 (2d Cir 1996)); <u>ISI Brands, Inc.</u> v. <u>KCC Intern., Inc.</u>, 458 F. Supp. 2d 81, 84 (E.D.N.Y. 2006). To determine whether it may exercise personal jurisdiction over a non-domiciliary, a district court engages in a two-part analysis. First, the court must determine whether jurisdiction exists under the law of the forum state, here, New York. Second, the Court must determine whether the exercise of jurisdiction under state law satisfies federal due process requirements.

Best Van Lines, Inc. v. Walker, No. 04-3924-CV, 2007 WL 1815511, at *2 (2d Cir. Jun. 26, 2007).

The Complaint alleges that the Court has personal jurisdiction over all defendants solely under C.P.L.R. § 302 for allegedly transacting business in New York or contracting to supply goods or services here, committing tortious conduct in this State or deliberately causing injury to Societe des Bains here. The Complaint should be dismissed under Fed.R.Civ.P. Rule 12(b)(2) because none of the defendants has any meaningful contacts with or presence in New York; because the acts complained of have no connection with this State, and because the case does not arise out of any contact by defendants or plaintiff with New York.

Although the Complaint (¶15) does not name the specific subsections under C.P.L.R. Section 302 on which Plaintiff relies to sustain jurisdiction, the language of that paragraph parallels C.P.L.R. sub-sections 302(a)(1), 302(a)(2) and 302(a)(3)(ii). There does not appear to be any allegation under C.P.L.R. § 302(a)(3)(i) that defendants regularly do or solicit business in New York, engage in persistent conduct here or derive substantial revenue from goods used or services rendered in this State. The allegations, which are considered in turn, do not support a finding of personal jurisdiction.

    a) Defendants Do Not Transact Business In New York Within the Meaning
       of CPLR § 302(a)(1)

C.P.L.R. §302(a)(1) provides, in pertinent part, that as to "a cause of action arising from any of the acts enumerated in this section" a court in New York may exercise jurisdiction "over any non-domiciliary . . . who in person or through an agent[ ] transacts any business within the state or contracts anywhere to supply goods or services in the state". As the Second Circuit recently confirmed, "New York courts have held that a claim 'aris[es] from' a particular transaction when there is some 'articulable nexus between the business transacted and the cause

of action sued upon,' or when 'there is a substantial relationship between the transaction and the claim asserted.'" Best Van Lines, Inc. v. Walker, No. 04-3924-CV, 2007 WL 1815511, at *9 (2d Cir. Jun. 26, 2007), citing Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006). Consistent with general Constitutional standards (although somewhat more narrowly than the constitution permits[4]), a party "transacts business" in the State of New York by "...purposefully avail[ing] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Best Van Lines, Inc., 2007 WL 1815511, at *6.

Where the defendant's business is conducted on the internet, it is not sufficient to show merely that a website is accessible in New York; rather, the plaintiff must demonstrate that a defendant's actions amount to solicitation and transaction of business within the state. See Seldon v. Direct Response Technologies, Inc., No. 03 CIV. 5381(SAS), 2004 WL 691222, at *4 (S.D.N.Y. Mar. 31, 2004) ("jurisdiction will lie only if the [web site content] is intended to target or focus on internet users in the state where the cause of action is filed"). In general, the likelihood that personal jurisdiction can be exercised is "directly proportionate to the nature and quality of commercial activity that the website proprietor conducts over the Internet." ISI Brands, 458 F. Supp. 2d at 85 (citation omitted). However, the precedents make clear that "[c]ourts are reluctant to find personal jurisdiction unless the website specifically targets New Yorkers, or is aimed at New York users." Id. at 86.[5]

---

[4] As noted in Best Van Lines, Inc., "Some distance remains between the jurisdiction permitted by the Due Process Clause and that granted by New York's long-arm statute." 2007 WL 1815511 at * 7.
[5] Seldon summarized the main issues arising from internet commerce cases as follows:

> Courts assessing whether internet activity permits the exercise of personal jurisdiction "have identified an array of fact patterns." [Citation omitted.] At one end of the spectrum are "passive" websites which display, but do not permit an exchange of, information. "At the other end of the spectrum are cases in which the defendant clearly does business over the Internet ... Occupying the middle ground are 'interactive' websites, which permit the exchange of information between the defendant and website viewers." Id.

2004 WL 691222, at *3

Although a website that is purely "passive" in simply presenting information is plainly not a basis to sustain jurisdiction, Bensusan Rest. Corp. v. King, 126 F.3d 25 (2d Cir. 1997), whether a website is "interactive" is relevant "only insofar as it helps to decide whether the defendant 'transacts any business' in New York – that is, whether the defendant, through the website, purposefully avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." Best Van Lines, 2007 WL 1815511, at *11 (citation omitted). In all cases where a court found personal jurisdiction over a highly interactive website, "unlike here, the plaintiff first established some further contact with the forum state." ISI Brands, 458 F.Supp.2d at 86, 88 (citing Rosenberg v. PK Graphics, No. 03 CIV. 6655 (NRB), 2004 WL 1057621, at *1 (S.D.N.Y. May 10, 2004)).

In the most obvious and plain sense of the term "transacting business", none of the defendants here can be deemed subject to jurisdiction in New York because, ever since mid-October 2006 (even before they acquired the Grand Monaco Casino business), defendants have affirmatively eschewed the privilege of conducting activities within New York. No business has been "transacted" in New York under the name Grand Monaco Casino at anytime since Playshare acquired the Grand Monaco Casino. Nor have there been any attempts to advertise or promote the Grand Monaco Casino in this State.

The one promotional event cited in the Complaint, staged by defendant GamShare in May 2006 for its PokerShare website, has no "substantial relationship" or "articulable nexus" with the claimed infringement that is the subject of this suit. Indeed, because Societe des Bains makes no pretense of objecting to the name "PokerShare", the May 2006 promotion has no relationship at all to the cause of action sued upon. Just so, because GamShare is not involved in the operation of the Casino de Monaco website; because Hillstead simply processes financial transactions but is not a trading company, and because there simply is no entity "Grand Monaco

Ltd." none of the business activities of any of these corporate defendants involves the transaction of business in New York arising from the subject matter of this litigation.

Nor is there any basis for the court to sustain jurisdiction over the individual defendants, Mr. Wright and Mr. Toh, simply because Mr. Wright is and Mr. Toh was an executive with PlayShare. Indeed, <u>Merck & Co.</u> v. <u>Mediplan Health Consulting, Inc.</u>, 425 F. Supp. 2d 402 (S.D.N.Y. 2006), made clear very recently that even though "New York does not adopt the fiduciary shield doctrine [that] does not mean that a corporate officer is automatically subject to long-arm jurisdiction." <u>Id.</u> at 419, citing <u>Packer</u> v. <u>TDI Sys., Inc.</u>, 959 F. Supp. 192, 199 n. 6 (S.D.N.Y. 1997). Rather, the plaintiff must demonstrate specific facts demonstrating that the individual defendant "has transacted business in New York in his individual capacity." <u>Merck,</u> 425 F. Supp. 2d at 419. Simply offering conclusory allegations (such as the boilerplate allegation in the Complaint, made on information and belief, that the corporate defendants are mere alter egos of Mr. Wright and Mr. Toh (Complaint ¶ 33)) is insufficient to sustain jurisdiction over an individual officer or executive of a corporate defendant. <u>Merck</u>, 425 F. Supp. 2d at 419. Although it is true that the individual defendants performed the administrative function of registering the domain names at issue in this proceeding (with an Arizona registrar), the same fact was insufficient in <u>Merck</u> to support jurisdiction. <u>Id.</u> [6] Because there is no allegation that either of the individual defendants is transacting business in New York in matters arising from the subject matter of this litigation, the Court is without personal jurisdiction over either party.

---

[6] Indeed, the Lanham Act not only recognizes expressly that mere ownership of a domain name is not a basis for personal jurisdiction but provides a specific remedy where a party is otherwise unable to obtain personal jurisdiction over the domain name owner. 15 U.S.C. § 1125(d)(2)(A) (authorizing <u>in rem</u> proceedings against a domain name registered in bad faith).

In the recent decision, ISI Brands, supra, the court reviewed the existing case law on personal jurisdiction over commercial websites and refused to find that the defendant had sufficient contacts with New York, notwithstanding that neither party contested that the defendant operated a generally accessible commercial website. The court held that the plaintiff failed to allege that the defendant purposefully solicited New York customers, made mailings to New York residents, entered contracts in New York or in any other manner directed its website to New York consumers. Id. at 87. Thus, even though the defendant admittedly sold products nationally through its interactive website, and placed no restrictions on the ability of anyone in New York to access or make purchases using the website, the contacts were insufficient to justify the exercise of personal jurisdiction. Id. Defendants here have even less of a connection with the State of New York because they expressly refuse to transact business with New York residents.

Mullally v. Jones, No. 2:05 CV 00154-BES-GWF, 2007 WL 674294 (D.Nev. Feb. 28, 2007), involving on-line gaming, is instructive. There the plaintiff alleged defendants were infringing its exclusive rights to two on-line casino games. The Court rejected the contention that the defendants' maintenance of a "highly interactive" web site (which included links to several other active gaming sites) provided a basis for general or specific jurisdiction, notwithstanding that defendants employees had also attended trade shows in the state. The defendants in Mullally were foreign (primarily UK-based) online gaming sites. The plaintiff sought in Nevada to enforce his patents and ownership interest in the sites' games. "The interactive nature of a website does not automatically lead to the conclusion that general personal jurisdiction is proper," id. at *4, the court held, because basing jurisdiction solely on web site interactivity would be "untenable" given the ubiquitous nature of the Internet, which can be accessed from virtually any forum." Id. at * 5. Refusing as well to find specific jurisdiction,

<u>Mullally</u> held that "[m]aintaining a website accessible to anyone, as Defendants allegedly did in this case, is not enough to show that Defendants expressly aimed their acts at the forum state." <u>Id</u>. at * 6.  And notwithstanding that defendants had attended gaming conventions in the state, which is considerably more than any of the defendants here have done in New York,  and notwithstanding that defendants affiliated on-line casinos may have offered gaming to Nevada residents, none of the defendants' business was deemed to have been conducted in Nevada.  <u>Id</u>. at * 6. Said the court: "Accepting all of Plaintiff's contentions as true, Defendants could not reasonably anticipate being haled into court in Nevada based on their operation of a website accessible in Nevada"  <u>Id</u>. at * 7.  There, as here, "[t]o exercise jurisdiction over Defendants under these circumstances would run afoul of the requirement that '[m]inimum contacts must be 'purposeful' contacts in order to ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum.'" <u>Id.,</u> citing <u>Burger King Corp.</u> v. <u>Rudzewicz,</u> 471 U.S. 462, 472-74 (1985).  Because this case does not arise from the transaction of business in New York by PlayShare or any of the other defendants, jurisdiction is lacking.

  b)  Defendants Have Committed No Tortious Acts In the State Within the Meaning <u>of</u> <u>CPLR § 302(a)(2)</u>

  C.P.L.R. §302(a)(2) provides that as to "a cause of action arising from any of the acts enumerated in this section" a court in New York may exercise jurisdiction "over any non-domiciliary . . . who, in person or through an agent [ ] commits a tortious act within the state…" This provision "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." <u>Bensusan Rest. Corp.</u>, 126 F.3d at 28; <u>ISI Brands, Inc.</u>, 458 F. Supp. 2d at 89.  <u>See</u> <u>Feathers</u> v. <u>McLucas</u>, 15 N.Y.2d 443, 460, 209 N.E.2d 68, 261 N.Y.S.2d 8 (1965) (explaining that the language of §302(a)(2) is "plain and precise" and

confers personal jurisdiction over non-residents "when they commit acts within the state.") ISI Brands, Inc. further explains:

> The existence of a website outside New York, even one that offers a product for sale, cannot alone confer jurisdiction over the defendant under CPLR §302(a)(2). Bensusan, 126 F.3d at 29; Telebyte, 105 F.Supp.2d at 134; Citigroup, 97 F.Supp.2d 549. "Although it is in the very nature of the Internet that the allegedly infringing marks contained in these websites can be viewed anywhere, this does not mean that the infringement occurred everywhere." Citigroup, 97 F.Supp.2d 549. Courts have held that, when websites display infringing marks, the tort is committed where the website is created and/or maintained.  See id.; NFL, 2000 WL 335566, 2000 U.S. Dist. LEXIS 3929; Am. Network, Inc. v. Access America/Connect Atlanta, Inc., 975 F.Supp. 494, 497 (S.D.N.Y. 1997).

Id. at 89-90. Under any other rule, simply having a website would create nationwide if not worldwide jurisdiction. Id. at 90.

Accordingly, there can be little serious contention that defendants are amenable to suit under C.P.L.R. §302(a)(2).  With the exception of the gasoline giveaway, which occurred well before PlayShare owned the subject business and had no nexus with the claim in suit, there is no suggestion any of the defendants has done anything within the state (and certainly nothing related in any way to the claim in suit).  The servers for defendants' on-line services are located in Canada. (Wright Decl. ¶ 3.)  It is no doubt for just this reason that the complaint also alleges, with some inconsistency, that the court should entertain jurisdiction under §302(a)(3)(ii) because the defendants are <u>not</u> present within the state but have committed acts outside the state causing injury here.  That argument too is without foundation.

     c)  Defendants Have Committed No Tortious Acts Outside the State Causing Injury In New York Within the Meaning of CPLR § 302(a)(3)(ii)

C.P.L.R. §302(a)(3)(ii) provides, in pertinent part, that as to "a cause of action arising from any of the acts enumerated in this section" a court in New York may exercise jurisdiction "over any non-domiciliary . . . who, in person or through an agent ... commits a tortious act without the state causing injury to a person or property within the state  ... if he [] expects or

should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate commerce." Both elements – foreseeability and substantial revenue – must be pleaded and shown. <u>Bensusan Rest. Corp.</u>, 126 F.3d at 29; <u>Light</u> v. <u>Taylor</u>, No. 05 CIV. 5003 (WHP), 2007 WL 274798 (S.D.N.Y. Jan. 29, 2007).

Societe des Bains has satisfied neither of these factors.   The Complaint does not even allege that the foreign defendants, who are primarily engaged in foreign commerce, derive substantial revenue from interstate commerce in the United States.  And although the pleading repeatedly seeks to suggest that Societe des Bains has some business presence here, the complaint neither identifies any actual business enterprise in New York nor the sale of any products are services under the name Casino de Monaco in the state that might be adversely impacted were defendants to commence use of the name Grand Monaco Casino in this jurisdiction.  Even now, with the benefit of having read the pleading, it is neither clear nor foreseeable that any injury could be sustained in New York, even if defendants were infringing a valid trademark of Societe des Bains.  Because Societe de Bains has apparently never sold any products or services in New York (or elsewhere) under the trademark Casino de Monaco, there is also no basis for the allegation that anything Playshare may have done should have led it reasonably to expect that any injury to plaintiff was likely to result in New York.  PlayShare, in fact, was completely unaware of any business of plaintiff in this State.  (Wright Decl. ¶ 7.)

d)  <u>The Exercise of Jurisdiction Would Be Unconstitutional</u>

Not only is plaintiff unable to satisfy the requirements for personal jurisdiction under C.P.L.R. § 302, there is no jurisdiction over any of the defendants because none meets the Constitutional requirement that there be "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" <u>Int'l Shoe Co.</u> v. <u>Washington</u>, 326 U.S. 310, 316 (1945); <u>Asahi Metal Indus. Co.</u> v. <u>Superior</u>

Court, 480 U.S. 102, 113 (1987). Indeed, the minimum contacts test requires "in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). A defendant's connection with the state must be such that "it should reasonably anticipate being haled into court" in the state in the event of a dispute. World-wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 295-96 (1980). PlayShare and the other defendants have done nothing to avail themselves of the privilege of doing business in New York – to the contrary, they have erected preventive measures to preclude New Yorkers from using their online gaming services. Just as in World-wide Volkswagon, where it was not foreseeable the plaintiff would drive the car he purchased in New York to the specific state of Oklahoma (notwithstanding that cars are inherently mobile), it was not foreseeable to PlayShare that it would be sued in New York for its on-line gaming activities (offered on many continents and in many places but decidedly not the State of New York). Subjecting parties to universal jurisdiction simply for having a presence on the Internet has indeed already been determined by the courts as inherently unreasonable. ISI Brands, 458 F. Supp. 2d at 89. Nor is the fact that Societe des Bains may happen to have some minimal relationship with the forum (if indeed it does) a reason to sustain jurisdiction here given that PlayShare has done nothing specifically targeted at defendants and was entirely unaware of plaintiff's claimed connection with New York.

Burger King Corp., 471 U.S. at 476-77, sets forth various factors to consider in assessing the reasonableness of the exercise of jurisdiction over a non-resident defendant.[7] These factors do not support sustaining jurisdiction in New York. Playshare and the other defendants have

---

[7] These factors include (i) the burden on the defendants; (ii) the forum state's interest in adjudicating the matter; (iii) the plaintiff's interest in obtaining efficient resolution of the controversy; and (iv) the shared interests of the states in establishing consistent social policies.

done nothing to interject themselves purposefully in New York commerce. Its disputed website is not directed at New York consumers. Nor does Societe des Bains have any particular interest in commerce in this country or state – certainly not under the name Casino De Monaco. Plaintiff has indeed, made no apparent sales of gaming services or products under that name to any American consumers, and its New York office is apparently meant to serve the tourist trade to Monaco – not to promote any gaming services under the name Casino De Monaco. Indeed, based solely on the allegations of the complaint (and the facts of which defendants are aware), there is no apparent subject matter jurisdiction over this dispute between European entities concerning European gaming services. That defendants are all foreign entities or individuals further weighs against exercising jurisdiction in this dispute between entirely European interests.

## V. CONCLUSION

For the foregoing reasons, defendants request that the complaint be dismissed for lack of personal jurisdiction, together with such other and further relief as the Court may deem just and proper.

Dated: July 23, 2007

Respectfully submitted,

By: _____
Jonathan E. Moskin (JM 9814)
Adam M. Turkel
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
212-819-8200
Attorneys for Defendants