# EXHIBIT # 1

File Copy



# CERTIFICATE OF INCORPORATION
# OF A PRIVATE LIMITED COMPANY

## Company No.   6139639

The Registrar of Companies for England and Wales hereby certifies that

GRAND MONACO LIMITED

is this day incorporated under the Companies Act 1985 as a private
company and that the company is limited.

Given at Companies House, Cardiff, the 6th March 2007



NO 6139639T



THE OFFICIAL SEAL OF THE
REGISTRAR OF COMPANIES



*Companies House*
— *for the record* —

The above information was communicated in non-legible form and authenticated by the
Registrar of Companies under section 710A of the Companies Act 1985



Electronic statement of compliance
with requirements on application
for registration of a company
pursuant to section 12(3A) of the
Companies Act 1985

| | |
|---|---|
| Company number | 6139639 |
| Company name | GRAND MONACO LIMITED |
| I, | SWIFT INCORPORATIONS LIMITED |
| of | 1 MITCHELL LANE<br>BRISTOL<br>BS1 6BU |
| a | person named as a secretary of the company in the statement delivered to the registrar of companies under section 10(2) of the Companies Act 1985 |

make the following statement of compliance in pursuance of section
12(3A) of the Companies Act 1985

| | |
|---|---|
| Statement: | I hereby state that all the requirements of the Companies Act 1985 in respect of the registration of the above company and of matters precedent and incidental to it have been complied with. |

Confirmation of electronic delivery of information

This statement of compliance was delivered to the registrar of companies
electronically and authenticated in accordance with the registrar's
direction under section 707B of the Companies Act 1985.

WARNING: The making of a false statement could result in liability to
criminal prosecution



*Companies House*

*—— for the record ——*

# 10(ef)

> **First directors and secretary and intended situation of registered office**



XN850NL5

*Received for filing in Electronic Format on the:* **05/03/2007**

---

*Company Name in full:*  **GRAND MONACO LIMITED**

*Proposed Registered Office:*  **7 QUEEN STREET**
**MAYFAIR**
**LONDON**
**W1J 5PB**

---

*memorandum delivered by an agent for the subscriber(s):* **Yes**

*Agent's Name:*  **JORDANS LIMITED**
*Agent's Address:*  **21 ST THOMAS STREET**
**BRISTOL**
**BS1 6JS**

---

## *Company Secretary*

*Name*  **CHRISTOPHER CHARLES MORSE**

*Address:*  **THE ELMS**
**NORTH STREAM**
**MARSHSIDE**
**CANTERBURY**
**KENT**
**CT3 4EE**

*Consented to Act:* **Y**    *Date authorised* **05/03/2007**    *Authenticated:* **Y**

---

| Name | **SWIFT INCORPORATIONS LIMITED** |
|------|------|
| *Address:* | **1 MITCHELL LANE**<br>**BRISTOL**<br>**BS1 6BU** |

*Consented to Act:* **Y**    *Date authorised* **05/03/2007**    *Authenticated:* **Y**

## Director 1:

| *Name* | **MAXWELL GEORGE WRIGHT** |
|------|------|
| *Address:* | **25 BROCKHILL ROAD**<br>**SALTWOOD**<br>**HYTHE**<br>**KENT**<br>**CT21 4AE** |
| *Nationality:* | **BRITISH** |
| *Business occupation:* | **COMPANY DIRECTOR** |
| *Date of birth:* | **21/03/1979** |

*Consented to Act:* **Y**    *Date authorised* **05/03/2007**    *Authenticated:* **Y**

## Director 2:

| *Name* | **RODERICK JULIAN FREDERICK SANDYS** |
|------|------|
| *Address:* | **48 TACHBROOK STREET**<br>**LONDON**<br>**SW1V 2NA** |
| *Nationality:* | **BRITISH** |
| *Business occupation:* | **COMPANY EXECUTIVE** |
| *Date of birth:* | **15/09/1977** |

*Consented to Act:* **Y**    *Date authorised* **05/03/2007**    *Authenticated:* **Y**

## Authorisation

*Authoriser Designation:* **AGENT**  *Date Authorised:* **05/03/2007**   *Authenticated:* **Yes**

THE COMPANIES ACTS 1985 to 1989

PRIVATE COMPANY LIMITED BY SHARES

MEMORANDUM OF ASSOCIATION OF

GRAND MONACO LIMITED

1.      The Company's name is " GRAND MONACO LIMITED ".

2.      The Company's registered office is to be situated in England and Wales.

3.1     The object of the Company is to carry on business as a general commercial company.

3.2     Without prejudice to the generality of the object and the powers of the Company derived from section 3A of the Act the Company has power to do all or any of the following things:-

3.2.1   To purchase or by any other means acquire and take options over any property whatever, and any rights or privileges of any kind over or in respect of any property.

MG05i FK1456

3.2.2    To apply for, register, purchase, or by other means acquire and protect, prolong and renew, whether in the United Kingdom or elsewhere, any trade marks, patents, copyrights, trade secrets, or other intellectual property rights, licences, secret processes, designs, protections and concessions and to disclaim, alter, modify, use and turn to account and to manufacture under or grant licences or privileges in respect of the same, and to expend money in experimenting upon, testing and improving any patents, inventions or rights which the Company may acquire or propose to acquire.

3.2.3    To acquire or undertake the whole or any part of the business, goodwill, and assets of any person, firm, or company carrying on or proposing to carry on any of the businesses which the Company is authorised to carry on and as part of the consideration for such acquisition to undertake all or any of the liabilities of such person, firm or company, or to acquire an interest in, amalgamate with, or enter into partnership or into any arrangement for sharing profits, or for co-operation, or for mutual assistance with any such person, firm or company, or for subsidising or otherwise assisting any such person, firm or company, and to give or accept, by way of consideration for any of the acts or things aforesaid or property acquired, any shares, debentures, debenture stock or securities that may be agreed upon, and to hold and retain, or sell, mortgage and deal with any shares, debentures, debenture stock or securities so received.

3.2.4    To improve, manage, construct, repair, develop, exchange, let on lease or otherwise, mortgage, charge, sell, dispose of, turn to account, grant licences, options, rights and privileges in respect of, or otherwise deal with all or any part of the property and rights of the Company.

3.2.5    To invest and deal with the moneys of the Company not immediately required in such manner as may from time to time be determined and to hold or otherwise deal with any investments made.

3.2.6    To lend and advance money or give credit on any terms and with or without security to any person, firm or company (including without prejudice to the generality of the foregoing any holding company, subsidiary or fellow subsidiary of, or any other company associated in any way with, the Company), to enter into guarantees, contracts of indemnity and suretyships of all kinds, to receive money on deposit or loan upon any terms, and to secure or guarantee in any manner and upon any terms the payment of any sum of money or the performance of any obligation by any person, firm or company (including without prejudice to the generality of the foregoing any such holding company, subsidiary, fellow subsidiary or associated company as aforesaid).

3.2.7    To borrow and raise money in any manner and to secure the repayment of any money borrowed, raised or owing by mortgage, charge, standard security, lien or other security upon the whole or any part of the Company's property or assets (whether present or future), including its uncalled capital, and also by a similar mortgage, charge, standard security, lien or security to secure and guarantee the performance by the Company of any obligation or liability it may undertake or which may become binding on it.

3.2.8    To draw, make, accept, endorse, discount, negotiate, execute and issue cheques, bills of exchange, promissory notes, bills of lading, warrants, debentures, and other negotiable or transferable instruments.

3.2.9    To apply for, promote, and obtain any Act of Parliament, order, or licence of the Department of Trade or other authority for enabling the Company to carry any of its objects into effect, or for effecting any modification of the Company's constitution, or for any other purpose which may seem calculated directly or indirectly to promote the Company's interests, and to oppose any proceedings or applications which may seem calculated directly or indirectly to prejudice the Company's interests.

3.2.10    To enter into any arrangements with any government or authority (supreme, municipal, local, or otherwise) that may seem conducive to the attainment of the Company's objects or any of them, and to obtain from any such government or authority any charters, decrees, rights, privileges or concessions which the Company may think desirable and to carry out, exercise, and comply with any such charters, decrees, rights, privileges, and concessions.

3.2.11    To subscribe for, take, purchase, or otherwise acquire, hold, sell, deal with and dispose of, place and underwrite shares, stocks, debentures, debenture stocks, bonds, obligations or securities issued or guaranteed by any other company constituted or carrying on business in any part of the world, and debentures, debenture stocks, bonds, obligations or securities issued or guaranteed by any government or authority, municipal, local or otherwise, in any part of the world.

3.2.12    To control, manage, finance, subsidise, co-ordinate or otherwise assist any company or companies in which the Company has a direct or indirect financial interest, to provide secretarial, administrative, technical, commercial and other services and facilities of all kinds for any such company or companies and to make payments by way of subvention or otherwise and any other arrangements which may seem desirable with respect to any business or operations of or generally with respect to any such company or companies.

3.2.13    To promote any other company for the purpose of acquiring the whole or any part of the business or property or undertaking or any of the liabilities of the Company, or of undertaking any business or operations which may appear likely to assist or benefit the Company or to enhance the value of any property or business of the Company, and to place or guarantee the placing of, underwrite, subscribe for, or otherwise acquire all or any part of the shares or securities of any such company as aforesaid.

3.2.14    To sell or otherwise dispose of the whole or any part of the business or property of the Company, either together or in portions, for such consideration as the Company may think fit, and in particular for shares, debentures, or securities of any company purchasing the same.

3.2.15    To act as agents or brokers and as trustees for any person, firm or company, and to undertake and perform sub-contracts.

3.2.16    To remunerate any person, firm or company rendering services to the Company either by cash payment or by the allotment of shares or other securities of the Company credited as paid up in full or in part or otherwise as may be thought expedient.

3.2.17    To distribute among the members of the Company in kind any property of the Company of whatever nature.

3.2.18    To pay all or any expenses incurred in connection with the promotion, formation and incorporation of the Company, or to contract with any person, firm or company to pay the same, and to pay commissions to brokers and others for underwriting, placing, selling, or guaranteeing the subscription of any shares or other securities of the Company.

3.2.19    To support and subscribe to any charitable or public object and to support and subscribe to any institution, society, or club which may be for the benefit of the Company or its directors or employees, or may be connected with any town or place where the Company carries on business; to give or award pensions, annuities, gratuities, and superannuation or other allowances or benefits or charitable aid and generally to provide advantages, facilities and services for any persons who are or have been directors of, or who are or have been employed by, or who are serving or have served the Company, or any company which is a subsidiary of the Company or the holding company of the Company or a fellow subsidiary of the Company or the predecessors in business of the Company or of any such subsidiary, holding or fellow subsidiary company and to the wives, widows, children and other relatives and dependants of such persons; to make payments towards insurance including insurance for any director, officer or auditor against any liability in respect of any negligence, default, breach of duty or breach of trust (so far as permitted by law); and to set up, establish, support and maintain superannuation and other funds or schemes (whether contributory or non-contributory) for the benefit of any of such persons and of their wives, widows, children and other relatives and dependants; and to set up, establish, support and maintain profit sharing or share purchase schemes for the benefit of any of the employees of the Company or of any such subsidiary, holding or fellow subsidiary company and to lend money to any such employees or to trustees on their behalf to enable any such schemes to be established or maintained.

3.2.20    Subject to and in accordance with the provisions of the Act (if and so far as such provisions shall be applicable) to give, directly or indirectly, financial assistance for the acquisition of shares or other securities of the Company or of any other company or for the reduction or discharge of any liability incurred in respect of such acquisition.

3.2.21    To procure the Company to be registered or recognised in any part of the world.

3.2.22    To do all or any of the things or matters aforesaid in any part of the world and either as principals, agents, contractors or otherwise, and by or through agents, brokers, sub-contractors or otherwise and either alone or in conjunction with others.

3.2.23   To do all such other things as may be deemed incidental or conducive to the attainment of the Company's objects or any of them.

3.2.24    AND so that:-

3.2.24.1 None of the provisions set forth in any sub-clause of this clause shall be restrictively construed but the widest interpretation shall be given to each such provision, and none of such provisions shall, except where the context expressly so requires, be in any way limited or restricted by reference to or inference from any other provision set forth in such sub-clause, or by reference to or inference from the terms of any other sub-clause of this clause, or by reference to or inference from the name of the Company.

3.2.24.2 The word "company" in this clause, except where used in reference to the Company, shall be deemed to include any partnership or other body of persons, whether incorporated or unincorporated and whether domiciled in the United Kingdom or elsewhere.

3.2.24.3 In this clause the expression "the Act" means the Companies Act 1985, but so that any reference in this clause to any provision of the Act shall be deemed to include a reference to any statutory modification or re-enactment of that provision for the time being in force.

4.        The liability of the members is limited.

5.        The Company's share capital is £1000 divided into 1000 shares of £1 each.

MG05i FK1456

I, the subscriber to this Memorandum of Association, wish to be formed into a Company pursuant to this Memorandum; and I agree to take the number of shares shown opposite my name.

| Name and address of Subscriber | Number of shares taken by the Subscriber |
|---|---|
| 1     For and on behalf of<br>Instant Companies Limited<br>1 Mitchell Lane<br>BRISTOL<br>BS1 6BU | -   One |
| Total shares taken | -   1 |

Dated 05/03/2007

THE COMPANIES ACTS 1985 to 1989

PRIVATE COMPANY LIMITED BY SHARES

ARTICLES OF ASSOCIATION OF

GRAND MONACO LIMITED

1.      PRELIMINARY

1.1      The regulations contained in Table A in the Schedule to the Companies (Tables A to F) Regulations 1985 (SI 1985 No. 805) as amended by the Companies (Tables A to F) (Amendment) Regulations 1985 (SI 1985 No. 1052) and as further amended by The Companies Act 1985 (Electronic Communications) Order 2000 (SI 2000 No. 3373) (such Table being hereinafter called "Table A") shall apply to the Company save in so far as they are excluded or varied hereby and such regulations (save as so excluded or varied) and the Articles hereinafter contained shall be the Articles of Association of the Company.

1.2      In these Articles the expression "the Act" means the Companies Act 1985, but so that any reference in these Articles to any provision of the Act shall be deemed to include a reference to any statutory modification or re-enactment of that provision for the time being in force.

2.      ALLOTMENT OF SHARES

2.1      Shares which are comprised in the authorised share capital with which the Company is incorporated shall be under the control of the directors who may (subject to section 80 of the Act and to article 2.4 below) allot, grant options over or otherwise dispose of the same, to such persons, on such terms and in such manner as they think fit.

2.2      All shares which are not comprised in the authorised share capital with which the Company is incorporated and which the directors propose to issue shall first be offered to the members in proportion as nearly as may be to the number of the existing shares held by them respectively unless the Company in general meeting shall by special resolution otherwise direct.  The offer shall be made by notice specifying the number of shares offered, and limiting a period (not being less than 14 days) within which the offer, if not accepted, will be deemed to be declined. After the expiration of that period, those shares so deemed to be declined shall be offered in the proportion aforesaid to the persons who have, within the

said period, accepted all the shares offered to them; such further offer shall be made in like terms in the same manner and limited by a like period as the original offer. Any shares not accepted pursuant to such offer or further offer as aforesaid or not capable of being offered as aforesaid except by way of fractions and any shares released from the provisions of this article by any such special resolution as aforesaid shall be under the control of the directors, who may allot, grant options over or otherwise dispose of the same to such persons, on such terms, and in such manner as they think fit, provided that, in the case of shares not accepted as aforesaid, such shares shall not be disposed of on terms which are more favourable to the subscribers therefor than the terms on which they were offered to the members. The foregoing provisions of this article 2.2 shall have effect subject to section 80 of the Act.

2.3     In accordance with section 91(1) of the Act sections 89(1) and 90(1) to (6) (inclusive) of the Act shall not apply to the Company.

2.4     The directors are generally and unconditionally authorised for the purposes of section 80 of the Act to exercise any power of the Company to allot and grant rights to subscribe for or convert securities into shares of the Company up to the amount of the authorised share capital with which the Company is incorporated at any time or times during the period of five years from the date of incorporation and the directors may, after that period, allot any shares or grant any such rights under this authority in pursuance of an offer or agreement so to do made by the Company within that period. The authority hereby given may at any time (subject to the said section 80) be renewed, revoked or varied by ordinary resolution.

3.      SHARES

3.1     The lien conferred by regulation 8 in Table A shall attach also to fully paid-up shares, and the Company shall also have a first and paramount lien on all shares, whether fully paid or not, standing registered in the name of any person indebted or under liability to the Company, whether he shall be the sole registered holder thereof or shall be one of two or more joint holders, for all moneys presently payable by him or his estate to the Company. Regulation 8 in Table A shall be modified accordingly.

3.2     The liability of any member in default in respect of a call shall be increased by the addition at the end of the first sentence of regulation 18 in Table A of the words "and all expenses that may have been incurred by the Company by reason of such non-payment".

4.      GENERAL MEETINGS AND RESOLUTIONS

4.1     Every notice convening a general meeting shall comply with the provisions of section 372(3) of the Act as to giving information to members in regard to their right to appoint proxies; and notices of and other communications relating to any general meeting which any member is entitled to receive shall be sent to the directors and to the auditors for the time being of the Company.

MG05i FK1456

4.2.1    No business shall be transacted at any general meeting unless a quorum is present.  Subject to article 4.2.2 below, two persons entitled to vote upon the business to be transacted, each being a member or a proxy for a member or a duly authorised representative of a corporation, shall be a quorum.

4.2.2    If and for so long as the Company has only one member, that member present in person or by proxy or (if that member is a corporation) by a duly authorised representative shall be a quorum.

4.2.3    If a quorum is not present within half an hour from the time appointed for a general meeting the general meeting shall stand adjourned to the same day in the next week at the same time and place or to such other day and at such other time and place as the directors may determine; and if at the adjourned general meeting a quorum is not present within half an hour from the time appointed therefor such adjourned general meeting shall be dissolved.

4.2.4    Regulations 40 and 41 in Table A shall not apply to the Company.

4.3.1    If and for so long as the Company has only one member and that member takes any decision which is required to be taken in general meeting or by means of a written resolution, that decision shall be as valid and effectual as if agreed by the Company in general meeting, subject as provided in article 4.3.3 below.

4.3.2    Any decision taken by a sole member pursuant to article 4.3.1 above shall be recorded in writing and delivered by that member to the Company for entry in the Company's minute book.

4.3.3    Resolutions under section 303 of the Act for the removal of a director before the expiration of his period of office and under section 391 of the Act for the removal of an auditor before the expiration of his period of office shall only be considered by the Company in general meeting.

4.4    A member present at a meeting by proxy shall be entitled to speak at the meeting and shall be entitled to one vote on a show of hands.  In any case where the same person is appointed proxy for more than one member he shall on a show of hands have as many votes as the number of members for whom he is proxy. Regulation 54 in Table A shall be modified accordingly.

4.5    Unless resolved by ordinary resolution that regulation 62 in Table A shall apply without modification, the appointment of a proxy and any authority under which the proxy is appointed or a copy of such authority certified notarially or in some other way approved by the directors may be deposited or received at the place specified in regulation 62 in Table A up to the commencement of the meeting or (in any case where a poll is taken otherwise than at the meeting) of the taking of the poll or may be handed to the chairman of the meeting prior to the commencement of the business of the meeting.

5.    APPOINTMENT OF DIRECTORS

5.1.1    Regulation 64 in Table A shall not apply to the Company.

MG05i FK1456

5.1.2    The maximum number and minimum number respectively of the directors may be determined from time to time by ordinary resolution. Subject to and in default of any such determination there shall be no maximum number of directors and the minimum number of directors shall be one.    Whenever the minimum number of directors is one, a sole director shall have authority to exercise all the powers and discretions by Table A and by these Articles expressed to be vested in the directors generally, and regulation 89 in Table A shall be modified accordingly.

5.2    The directors shall not be required to retire by rotation and regulations 73 to 80 (inclusive) in Table A shall not apply to the Company.

5.3    No person shall be appointed a director at any general meeting unless either:-

    (a)    he is recommended by the directors; or

    (b)    not less than 14 nor more than 35 clear days before the date appointed for the general meeting, notice signed by a member qualified to vote at the general meeting has been given to the Company of the intention to propose that person for appointment, together with notice signed by that person of his willingness to be appointed.

5.4.1    Subject to article 5.3 above, the Company may by ordinary resolution appoint any person who is willing to act to be a director, either to fill a vacancy or as an additional director.

5.4.2    The directors may appoint a person who is willing to act to be a director, either to fill a vacancy or as an additional director, provided that the appointment does not cause the number of directors to exceed any number determined in accordance with article 5.1.2 above as the maximum number of directors and for the time being in force.

5.5    In any case where as the result of death or deaths the Company has no members and no directors the personal representatives of the last member to have died shall have the right by notice in writing to appoint a person to be a director of the Company and such appointment shall be as effective as if made by the Company in general meeting pursuant to article 5.4.1 above.  For the purpose of this article, where two or more members die in circumstances rendering it uncertain which of them survived the other or others, the members shall be deemed to have died in order of seniority, and accordingly the younger shall be deemed to have survived the elder.

6.    BORROWING POWERS

6.1    The directors may exercise all the powers of the Company to borrow money without limit as to amount and upon such terms and in such manner as they think fit, and subject (in the case of any security convertible into shares) to section 80 of the Act to grant any mortgage, charge or standard security over its undertaking, property and uncalled capital, or any part thereof, and to issue debentures, debenture stock, and other securities whether outright or as security for any debt, liability or obligation of the Company or of any third party.

7.    ALTERNATE DIRECTORS

7.1    Unless otherwise determined by the Company in general meeting by ordinary resolution an alternate director shall not be entitled as such to receive any remuneration from the Company, save that he may be paid by the Company such part (if any) of the remuneration otherwise payable to his appointor as such appointor may by notice in writing to the Company from time to time direct, and the first sentence of regulation 66 in Table A shall be modified accordingly.

7.2    A director, or any such other person as is mentioned in regulation 65 in Table A, may act as an alternate director to represent more than one director, and an alternate director shall be entitled at any meeting of the directors or of any committee of the directors to one vote for every director whom he represents in addition to his own vote (if any) as a director, but he shall count as only one for the purpose of determining whether a quorum is present.

8.    GRATUITIES AND PENSIONS

8.1.1    The directors may exercise the powers of the Company conferred by its Memorandum of Association in relation to the payment of pensions, gratuities and other benefits and shall be entitled to retain any benefits received by them or any of them by reason of the exercise of any such powers.

8.1.2    Regulation 87 in Table A shall not apply to the Company.

9.    PROCEEDINGS OF DIRECTORS

9.1.1    A director may vote, at any meeting of the directors or of any committee of the directors, on any resolution, notwithstanding that it in any way concerns or relates to a matter in which he has, directly or indirectly, any kind of interest whatsoever, and if he shall vote on any such resolution his vote shall be counted; and in relation to any such resolution as aforesaid he shall (whether or not he shall vote on the same) be taken into account in calculating the quorum present at the meeting.

9.1.2    Each director shall comply with his obligations to disclose his interest in contracts under section 317 of the Act.

9.1.3    Regulations 94 to 97 (inclusive) in Table A shall not apply to the Company.

10.    THE SEAL

10.1    If the Company has a seal it shall only be used with the authority of the directors or of a committee of directors.  The directors may determine who shall sign any instrument to which the seal is affixed and unless otherwise so determined it shall be signed by a director and by the secretary or second director. The obligation under regulation 6 in Table A relating to the sealing of share certificates shall apply only if the Company has a seal.  Regulation 101 in Table A shall not apply to the Company.

MG05i FK1456

10.2    The Company may exercise the powers conferred by section 39 of the Act with regard to having an official seal for use abroad, and such powers shall be vested in the directors.

11.    PROTECTION FROM LIABILITY

For the purposes of this Article a "Liability" is any liability incurred by a person in connection with any negligence, default, breach of duty or breach of trust by him in relation to the Company or otherwise in connection with his duties, powers or office and "Associated Company" shall bear the meaning referred to in section 309A(6) of the Act. Subject to the provisions of the Act and without prejudice to any protection from liability which may otherwise apply:

11.1    the directors shall have power to purchase and maintain for any director of the Company, any director of an Associated Company, any auditor of the Company and any officer of the Company (not being a director or auditor of the Company), insurance against any Liability.

11.2    every director or auditor of the Company and every officer of the Company (not being a director or auditor of the Company) shall be indemnified out of the assets of the Company against any loss or liability incurred by him in defending any proceedings in which judgment is given in his favour or in which he is acquitted or in connection with any application in which relief is granted to him by the court from any Liability.

11.3    Regulation 118 shall not apply to the Company.

12.    TRANSFER OF SHARES

12.1    The directors may, in their absolute discretion and without assigning any reason therefor, decline to register the transfer of a share, whether or not it is a fully paid share, and the first sentence of regulation 24 in Table A shall not apply to the Company.

Name and address of Subscriber

For and on behalf of
Instant Companies Limited
1 Mitchell Lane
BRISTOL
BS1 6BU

Dated 05/03/2007

# EXHIBIT # 2

# FILE COPY



# CERTIFICATE OF INCORPORATION

# OF A PUBLIC LIMITED COMPANY

Company No.    5863469

The Registrar of Companies for England and Wales hereby certifies that

PLAYSHARE PLC

is this day incorporated under the Companies Act 1985 as a public company and that the company is limited.

Given at Companies House, Cardiff, the 30th June 2006



*N05863469S*



THE OFFICIAL SEAL OF THE
REGISTRAR OF COMPANIES



*Companies House*
— *for the record* —



JORDANS

*Please complete in typescript, or in bold black capitals*

CHFP001

**12**

**Declaration on application for registration**

S863469

**Company Name in full**  PLAYSHARE PLC

**I,**  MARK DAVID ANDERSON    signing on behalf

**of**  SWIFT INCORPORATIONS LIMITED

† Please delete as appropriate

do solemnly and sincerely declare that I am a † [Solicitor engaged in the formation of the company] [person named as director or secretary of the company in the statement delivered to the Registrar under section 10 of the Companies Act 1985] and that all the requirements of the Companies Act 1985 in respect of the registration of the above company and of matters precedent and incidental to it have been complied with.

And I make this solemn Declaration conscientiously believing the same to be true and by virtue of the Statutory Declarations Act 1835.

**Declarant's signature**

**Declared at**  21 ST THOMAS STREET  BRISTOL  BS1 6JS

| Day | Month | Year |
|---|---|---|
| 3 0 | 0 6 | 2 0 0 6 |

on

* Please print name.

**before me***  GEORGE KEPPE

**Signed**                         **Date** 30 June 2006

†A Commissioner for Oaths or Notary Public or Justice of the Peace or Solicitor

Please give the name, address, telephone number and, if available, a DX number and Exchange of the person Companies House should contact if there is any query.

JORDANS LIMITED    U27126/cev

21 ST THOMAS STREET  BRISTOL

BS1 6JS    Tel    0117 923 0600

DX number    DX exchange

PUB
COMPANIES HOUSE    574
30/06/2006

When you have completed and signed the form please send it to the Registrar of Companies at:
**Companies House, Crown Way, Cardiff, CF14 3UZ  DX 33050 Cardiff**
for companies registered in England and Wales
or
**Companies House, 37 Castle Terrace, Edinburgh, EH1 2EB**
for companies registered in Scotland    **DX 235 Edinburgh**

Form revised June 1998

JREV/2000    JFL0039 / Rev 5.3  10/99



**JORDANS**

**10**

*Please complete in typescript, or in bold black capitals.*

**CHFP001**

**First directors and secretary and intended situation of registered office**

Notes on completion appear on final page    SS863469

**Company Name in full**    PLAYSHARE    PLC

**Proposed Registered Office**    7 QUEEN STREET

(PO Box numbers only, are not acceptable)    MAYFAIR

Post town    LONDON

County / Region    [blank]    Postcode    W1J 5PB

If the memorandum is delivered by an agent for the subscriber(s) of the memorandum mark the box opposite and give the agent's name and address.    **X**

Agent's Name    JORDANS LIMITED

Address    21 ST THOMAS STREET

Post town    BRISTOL

County / Region    [blank]    Postcode    BS1 6JS

Number of continuation sheets attached    3

You do not have to give any contact information in the box opposite but if you do, it will help Companies House to contact you if there is a query on the form. The contact information that you give will be visible to searchers of the public record.

JORDANS LIMITED

21 ST THOMAS STREET, BRISTOL

BS1 6JS        Tel  0117 923 0600

DX number  78161        DX exchange   BRISTOL

When you have completed and signed the form please send it to the Registrar of Companies at:
**Companies House, Crown Way, Cardiff, CF14 3UZ   DX 33050 Cardiff**
for companies registered in England and Wales
or
**Companies House, 37 Castle Terrace, Edinburgh, EH1 2EB**
for companies registered in Scotland        **DX 235 Edinburgh**

PUB
COMPANIES HOUSE        575
#P1JO7GPDK        30/06/2006

Form  April 2002

CHAD 16/07/2002

## Company Secretary (see notes 1-5)

| | | | |
|---|---|---|---|
| **NAME** | *Style / Title | | *Honours etc |
| * Voluntary details | Forename(s) | CHRISTOPHER CHARLES | |
| | Surname | MOLLE | |
| | Previous forename(s) | NONE | |
| | Previous sumame(s) | NONE | |

† Tick this box if the address shown is a service address for the beneficiary of a Confidentiality Order granted under section 723B of the Companies Act 1985 otherwise, give your usual residential address. In the case of a corporation or Scottish firm, give the registered or principal office address

| | |
|---|---|
| Address † | THE ELMS |
| | MARSHSIDE |
| Post town | NR CANTERBURY |
| County / Region | KENT |
| Postcode | CT3 4BE |
| Country | |

I consent to act as secretary of the company named on page 1

**Consent signature** _[signature]_    Date   28 JUNE 2006

## Directors (see notes 1-5)

*Please list directors in alphabetical order*

| | | | |
|---|---|---|---|
| **NAME** | *Style / Title | | *Honours etc |
| | Forename(s) | LUCAN MICHAEL | |
| | Surname | TOH | |
| | Previous forename(s) | NONE | |
| | Previous sumame(s) | NONE | |

† Tick this box if the address shown is a service address for the beneficiary of a Confidentiality Order granted under section 723B of the Companies Act 1985 otherwise, give your usual residential address. In the case of a corporation or Scottish firm, give the registered or principal office address

| | |
|---|---|
| Address † | FLAT 1, 1 DUNRAVEN STREET |
| Post town | LONDON |
| County / Region | |
| Postcode | W1K 7FG |
| Country | |

| Date of birth | Day 1 4 | Month 0 2 | Year 1 9 8 0 | Nationality | IRISH |
|---|---|---|---|---|---|

| | |
|---|---|
| Business occupation | COMPANY EXECUTIVE |
| Other directorships | AS ATTACHED LIST |
| | |

I consent to act as director of the company named on page 1

**Consent signature** _[signature]_    Date   28 JUNE 2006

CHAD 16/07/2002

**Company Secretary** (see notes 1-5)

**Form 10 Continuation Sheet**

CHFP001

Company Name | PLAYSHARE PLC

NAME | *Style / Title | | *Honours etc |

* Voluntary details

Forename(s)

Surname | SWIFT INCORPORATIONS LIMITED

Previous forename(s)

Previous surname(s)

† Tick this box if the address shown is a service address for the beneficiary of a Confidentiality Order granted under section 723B of the Companies Act 1985 otherwise, give your usual residential address. In the case of a corporation or Scottish firm, give the registered or principal office address

Address † | 1 MITCHELL LANE

Post town | BRISTOL

County / Region | | Postcode | BS1 6BU

Country | ENGLAND

I consent to act as secretary of the company named on page 1

**Consent signature** | (Authorised Signatory) | **Date** | 30 June 2006

**Directors** (see notes 1-5)
*Please list directors in alphabetical order*

NAME | *Style / Title | | *Honours etc |

Forename(s)

Surname

Previous forename(s)

Previous surname(s)

† Tick this box if the address shown is a service address for the beneficiary of a Confidentiality Order granted under section 723B of the Companies Act 1985 otherwise, give your usual residential address. In the case of a corporation or Scottish firm, give the registered or principal office address

Address †

Post town

County / Region | | Postcode |

Country

| | Day | Month | Year | |
|---|---|---|---|---|
| Date of birth | | | | Nationality |

Business occupation

Other directorships

I consent to act as director of the company named on page 1

**Consent signature** | | **Date** |

CHAD 16/07/2002

JST 10 2003 CONT.

## Directors (see notes 1-5)
*Please list directors in alphabetical order*

| | | |
|---|---|---|
| **NAME** | *Style / Title | *Honours etc |
| Forename(s) | RODERICK JULIAN FREDERICK | |
| Surname | SANDYS | |
| Previous forename(s) | NONE | |
| Previous surname(s) | NONE | |

† Tick this box if the address shown is a service address for the beneficiary of a Confidentiality Order granted under section 723B of the Companies Act 1985 otherwise, give your usual residential address. In the case of a corporation or Scottish firm, give the registered or principal office address.

| | |
|---|---|
| **Address**† | 48 TACHBROOK STREET |
| | |
| Post town | LONDON |
| County / Region | |
| Postcode | SW1V 2NA |
| Country | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date of birth | Day | | Month | | Year | | Nationality |
| | 1 | 5 | 0 | 9 | 1 9 7 7 | | BRITISH |

| | |
|---|---|
| Business occupation | COMPANY EXECUTIVE |
| Other directorships | AS ATTACHED LIST |
| | |

I consent to act as director of the company named on page 1

| | | | |
|---|---|---|---|
| **Consent signature** | R. M S... | Date | 28 JUNE 2006 |

| | | | | |
|---|---|---|---|---|
| **This section must be signed by** *Either* **an agent on behalf of all subscribers** | Signed | *(signature)* | Date | 30 - 6 - 2006 |
| *Or* the subscribers | Signed | | Date | |
| ( *i.e. those who signed as members on the memorandum of association).* | Signed | | Date | |
| | Signed | | Date | |
| | Signed | | Date | |
| | Signed | | Date | |
| | Signed | | Date | |

CHAD 16/07/2002

# Lucan Michael Toh

## Directorships Report

### Directorships

| Company Name | Appointed |
|---|---|
| TFK Investments Limited | 02/12/2005 |

### Past Directorships

| Company Name | Appointed | Resigned |
|---|---|---|
| Casinoshare.com Limited | 03/10/2005 | 13/02/2006 |
| Gamshare (UK) Limited | 02/12/2005 | 13/02/2006 |
| Poker Burger Limited | 13/05/2005 | 01/08/2005 |
| Poker Chicken Limited | 13/05/2005 | 01/08/2005 |
| Poker Ribs Limited | 13/05/2005 | 01/08/2005 |
| Pokershare 2005 Limited | 30/06/2005 | 13/02/2006 |
| Pokershare.com Limited | 02/12/2005 | 13/02/2006 |
| Share Support Limited | 17/01/2006 | 13/02/2006 |
| TFK Investments Limited | 13/05/2005 | 01/08/2005 |

# Roderick Julian Frederick Sandys

### Directorships Report

## Directorships

| Company Name | Appointed |
|---|---|
| Casinoshare.com Limited | 13/02/2006 |
| Gamshare (UK) Limited | 13/05/2005 |
| Poker Burger Limited | 13/05/2005 |
| Pokershare 2005 Limited | 13/05/2005 |
| Pokershare.com Limited | 13/02/2006 |
| Share Support Limited | 17/01/2006 |
| TFK Investments Limited | 13/05/2005 |

S863469

THE COMPANIES ACTS 1985 to 1989



PUBLIC COMPANY LIMITED BY SHARES

MEMORANDUM OF ASSOCIATION OF

PLAYSHARE PLC

1.      The Company's name is "PLAYSHARE PLC".

2.      The Company is to be a public company.

3.      The Company's registered office is to be situated in England and Wales.

4.1     The object of the Company is to carry on business as a general commercial company.

4.2     Without prejudice to the generality of the object and the powers of the Company derived from section 3A of the Act the Company has power to do all or any of the following things:-

Jordans Limited
21 St Thomas Street
Bristol
BS1 6JS

PLCG05i

4.2.1    To purchase or by any other means acquire and take options over any property whatever, and any rights or privileges of any kind over or in respect of any property.

4.2.2    To apply for, register, purchase, or by other means acquire and protect, prolong and renew, whether in the United Kingdom or elsewhere, any trade marks, patents, copyrights, trade secrets, or other intellectual property rights, licences, secret processes, designs, protections and concessions and to disclaim, alter, modify, use and turn to account and to manufacture under or grant licences or privileges in respect of the same, and to expend money in experimenting upon, testing and improving any patents, inventions or rights which the Company may acquire or propose to acquire.

4.2.3    To acquire or undertake the whole or any part of the business, goodwill, and assets of any person, firm, or company carrying on or proposing to carry on any of the businesses which the Company is authorised to carry on and as part of the consideration for such acquisition to undertake all or any of the liabilities of such person, firm or company, or to acquire an interest in, amalgamate with, or enter into partnership or into any arrangement for sharing profits, or for co-operation, or for mutual assistance with any such person, firm or company, or for subsidising or otherwise assisting any such person, firm or company, and to give or accept, by way of consideration for any of the acts or things aforesaid or property acquired, any shares, debentures, debenture stock or securities that may be agreed upon, and to hold and retain, or sell, mortgage and deal with any shares, debentures, debenture stock or securities so received.

4.2.4    To improve, manage, construct, repair, develop, exchange, let on lease or otherwise, mortgage, charge, sell, dispose of, turn to account, grant licences, options, rights and privileges in respect of, or otherwise deal with all or any part of the property and rights of the Company.

4.2.5    To invest and deal with the moneys of the Company not immediately required in such manner as may from time to time be determined and to hold or otherwise deal with any investments made.

4.2.6    To lend and advance money or give credit on any terms and with or without security to any person, firm or company (including without prejudice to the generality of the foregoing any holding company, subsidiary or fellow subsidiary of, or any other company associated in any way with, the Company), to enter into guarantees, contracts of indemnity and suretyships of all kinds, to receive money on deposit or loan upon any terms, and to secure or guarantee in any manner and upon any terms the payment of any sum of money or the performance of any obligation by any person, firm or company (including without prejudice to the generality of the foregoing any such holding company, subsidiary, fellow subsidiary or associated company as aforesaid).

4.2.7    To borrow and raise money in any manner and to secure the repayment of any money borrowed, raised or owing by mortgage, charge, standard security, lien or other security upon the whole or any part of the Company's property or assets (whether present or future), including its uncalled capital, and also by a similar mortgage, charge, standard security, lien or security to secure and

PLCG05i

guarantee the performance by the Company of any obligation or liability it may undertake or which may become binding on it.

4.2.8    To draw, make, accept, endorse, discount, negotiate, execute and issue cheques, bills of exchange, promissory notes, bills of lading, warrants, debentures, and other negotiable or transferable instruments.

4.2.9    To apply for, promote, and obtain any Act of Parliament, order, or licence of the Department of Trade or other authority for enabling the Company to carry any of its objects into effect, or for effecting any modification of the Company's constitution, or for any other purpose which may seem calculated directly or indirectly to promote the Company's interests, and to oppose any proceedings or applications which may seem calculated directly or indirectly to prejudice the Company's interests.

4.2.10    To enter into any arrangements with any government or authority (supreme, municipal, local, or otherwise) that may seem conducive to the attainment of the Company's objects or any of them, and to obtain from any such government or authority any charters, decrees, rights, privileges or concessions which the Company may think desirable and to carry out, exercise, and comply with any such charters, decrees, rights, privileges, and concessions.

4.2.11    To subscribe for, take, purchase, or otherwise acquire, hold, sell, deal with and dispose of, place and underwrite shares, stocks, debentures, debenture stocks, bonds, obligations or securities issued or guaranteed by any other company constituted or carrying on business in any part of the world, and debentures, debenture stocks, bonds, obligations or securities issued or guaranteed by any government or authority, municipal, local or otherwise, in any part of the world.

4.2.12    To control, manage, finance, subsidise, co-ordinate or otherwise assist any company or companies in which the Company has a direct or indirect financial interest, to provide secretarial, administrative, technical, commercial and other services and facilities of all kinds for any such company or companies and to make payments by way of subvention or otherwise and any other arrangements which may seem desirable with respect to any business or operations of or generally with respect to any such company or companies.

4.2.13    To promote any other company for the purpose of acquiring the whole or any part of the business or property or undertaking or any of the liabilities of the Company, or of undertaking any business or operations which may appear likely to assist or benefit the Company or to enhance the value of any property or business of the Company, and to place or guarantee the placing of, underwrite, subscribe for, or otherwise acquire all or any part of the shares or securities of any such company as aforesaid.

4.2.14    To sell or otherwise dispose of the whole or any part of the business or property of the Company, either together or in portions, for such consideration as the Company may think fit, and in particular for shares, debentures, or securities of any company purchasing the same.

4.2.15   To act as agents or brokers and as trustees for any person, firm or company, and to undertake and perform sub-contracts.

4.2.16   To remunerate any person, firm or company rendering services to the Company either by cash payment or by the allotment of shares or other securities of the Company credited as paid up in full or in part or otherwise as may be thought expedient.

4.2.17   To distribute among the members of the Company in kind any property of the Company of whatever nature.

4.2.18   To pay all or any expenses incurred in connection with the promotion, formation and incorporation of the Company, or to contract with any person, firm or company to pay the same, and to pay commissions to brokers and others for underwriting, placing, selling, or guaranteeing the subscription of any shares or other securities of the Company.

4.2.19   To support and subscribe to any charitable or public object and to support and subscribe to any institution, society, or club which may be for the benefit of the Company or its directors or employees, or may be connected with any town or place where the Company carries on business; to give or award pensions, annuities, gratuities, and superannuation or other allowances or benefits or charitable aid and generally to provide advantages, facilities and services for any persons who are or have been directors of, or who are or have been employed by, or who are serving or have served the Company, or any company which is a subsidiary of the Company or the holding company of the Company or a fellow subsidiary of the Company or the predecessors in business of the Company or of any such subsidiary, holding or fellow subsidiary company and to the wives, widows, children and other relatives and dependants of such persons; to make payments towards insurance including insurance for any director, officer or auditor against any liability in respect of any negligence, default, breach of duty or breach of trust (so far as permitted by law); and to set up, establish, support and maintain superannuation and other funds or schemes (whether contributory or non-contributory) for the benefit of any of such persons and of their wives, widows, children and other relatives and dependants; and to set up, establish, support and maintain profit sharing or share purchase schemes for the benefit of any of the employees of the Company or of any such subsidiary, holding or fellow subsidiary company and to lend money to any such employees or to trustees on their behalf to enable any such schemes to be established or maintained.

4.2.20   Subject to and in accordance with the provisions of the Act (if and so far as such provisions shall be applicable) to give, directly or indirectly, financial assistance for the acquisition of shares or other securities of the Company or of any other company or for the reduction or discharge of any liability incurred in respect of such acquisition.

4.2.21   To procure the Company to be registered or recognised in any part of the world.

4.2.22   To do all or any of the things or matters aforesaid in any part of the world and either as principals, agents, contractors or otherwise, and by or through

agents, brokers, sub-contractors or otherwise and either alone or in conjunction with others.

4.2.23    To do all such other things as may be deemed incidental or conducive to the attainment of the Company's objects or any of them.

4.2.24    AND so that:-

4.2.24.1 None of the provisions set forth in any sub-clause of this clause shall be restrictively construed but the widest interpretation shall be given to each such provision, and none of such provisions shall, except where the context expressly so requires, be in any way limited or restricted by reference to or inference from any other provision set forth in such sub-clause, or by reference to or inference from the terms of any other sub-clause of this clause, or by reference to or inference from the name of the Company.

4.2.24.2 The word "company" in this clause, except where used in reference to the Company, shall be deemed to include any partnership or other body of persons, whether incorporated or unincorporated and whether domiciled in the United Kingdom or elsewhere.

4.2.24.3 In this clause the expression "the Act" means the Companies Act 1985, but so that any reference in this clause to any provision of the Act shall be deemed to include a reference to any statutory modification or re-enactment of that provision for the time being in force.

5.       The liability of the members is limited.

6.       The Company's share capital is £100,000 divided into 100,000,000 shares of £0.001 each.

WE, the subscribers to this Memorandum of Association, wish to be formed into a Company pursuant to this Memorandum; and we agree to take the number of shares shown opposite our respective names.

---

Names and addresses of Subscribers            Number of shares taken
by each Subscriber

---

1.       For and on behalf of                              -       One
       Instant Companies Limited
       1 Mitchell Lane
       Bristol  BS1 6BU

2.       For and on behalf of                              -       One
       Swift Incorporations Limited
       1 Mitchell Lane
       Bristol  BS1 6BU

---

                     Total shares taken       -       Two

---

Dated 30 June 2006

Witness to the above Signatures:-      Glenys Copeland 
                                              1 Mitchell Lane
                                              Bristol  BS1 6BU

THE COMPANIES ACTS 1985 to 1989

PUBLIC COMPANY LIMITED BY SHARES

ARTICLES OF ASSOCIATION OF

PLAYSHARE PLC

1.      PRELIMINARY

1.1     The regulations contained in Table A in the Schedule to the Companies (Tables A to F) Regulations 1985 (SI 1985 No. 805) as amended by the Companies (Tables A to F) (Amendment) Regulations 1985 (SI 1985 No. 1052) and as further amended by The Companies Act 1985 (Electronic Communications) Order 2000 (SI 2000 No. 3373) (such Table being hereinafter called "Table A") shall apply to the Company save in so far as they are excluded or varied hereby and such regulations (save as so excluded or varied) and the Articles hereinafter contained shall be the Articles of Association of the Company.

1.2     In these Articles the expression "the Act" means the Companies Act 1985, but so that any reference in these Articles to any provision of the Act shall be deemed to include a reference to any statutory modification or re-enactment of that provision for the time being in force.

2.      ALLOTMENT OF SHARES

2.1     Shares which are comprised in the authorised but unissued share capital of the Company shall be under the control of the directors who may (subject to sections 80 and 89 of the Act and to articles 2.2 and 2.3 below) allot, grant options over or otherwise dispose of the same, to such persons, on such terms and in such manner as they think fit.

2.2     The directors are generally and unconditionally authorised for the purposes of section 80 of the Act to exercise any power of the Company to allot and grant rights to subscribe for or convert securities into shares of the Company up to the amount of the authorised share capital with which the Company is incorporated at any time or times during the period of five years from the date of incorporation and the directors may, after that period, allot any shares or grant any such rights under this authority in pursuance of an offer or agreement so to do made by the Company within that period. The authority hereby given may at any time (subject to the said section 80) be renewed, revoked or varied by ordinary resolution.

2.3     The directors are empowered to allot and grant rights to subscribe for or convert securities into shares of the Company pursuant to the authority conferred under article 2.2 above as if section 89(1) of the Act did not apply.  This power shall enable the directors so to allot and grant rights to subscribe for or convert securities into shares of the Company after its expiry in pursuance of an offer or agreement so to do made by the Company before its expiry.

2.4     Save as authorised by the Act, the Company shall not give, whether directly or indirectly, any financial assistance for the acquisition of shares or other securities of the Company or of its holding company (as defined by section 736 of the Act).

2.5     Save as permitted by section 101(2) of the Act, no shares of the Company shall be allotted except as paid up at least as to one quarter of their nominal value and the whole of any premium.

3.      SHARES

3.1     The liability of any member in default in respect of a call shall be increased by the addition at the end of the first sentence of regulation 18 in Table A of the words "and all expenses that may have been incurred by the Company by reason of such non-payment".

4.      GENERAL MEETINGS AND RESOLUTIONS

4.1     Every notice convening a general meeting shall comply with the provisions of section 372(3) of the Act as to giving information to members in regard to their right to appoint proxies; and notices of and other communications relating to any general meeting which any member is entitled to receive shall be sent to the directors and to the auditors for the time being of the Company.

4.2.1   If a quorum is not present within half an hour from the time appointed for a general meeting the general meeting shall stand adjourned to the same day in the next week at the same time and place or to such other day and at such other time and place as the directors may determine; and if at the adjourned general meeting a quorum is not present within half an hour from the time appointed therefor such adjourned general meeting shall be dissolved.

4.2.2   Regulation 41 in Table A shall not apply to the Company.

4.3     Resolutions under section 303 of the Act for the removal of a director before the expiration of his period of office and under section 391 of the Act for the removal of an auditor before the expiration of his period of office shall only be considered by the Company in general meeting.  Regulation 53 in Table A shall be read and construed accordingly.

4.4     A member present at a meeting by proxy shall be entitled to speak at the meeting and shall be entitled to one vote on a show of hands.  In any case where the same person is appointed proxy for more than one member he shall on a show of hands have as many votes as the number of members for whom he is proxy. Regulation 54 in Table A shall be modified accordingly.

PLCG05i

4.5     Unless resolved by ordinary resolution that regulation 62 in Table A shall apply without modification, the appointment of a proxy and any authority under which the proxy is appointed or a copy of such authority certified notarially or in some other way approved by the directors may be deposited or received at the place specified in regulation 62 in Table A up to the commencement of the meeting or (in any case where a poll is taken otherwise than at the meeting) of the taking of the poll or may be handed to the chairman of the meeting prior to the commencement of the business of the meeting.

5.      APPOINTMENT OF DIRECTORS

5.1.1   Regulation 64 in Table A shall not apply to the Company.

5.1.2   The maximum number and minimum number respectively of the directors may be determined from time to time by ordinary resolution. Subject to and in default of any such determination there shall be no maximum number of directors and the minimum number of directors shall be two.

5.2     The directors shall not be required to retire by rotation and regulations 73 to 80 (inclusive) in Table A shall not apply to the Company.

5.3     No person shall be appointed a director at any general meeting unless either:-

        (a)      he is recommended by the directors; or

        (b)      not less than 14 nor more than 35 clear days before the date appointed for the general meeting, notice signed by a member qualified to vote at the general meeting has been given to the Company of the intention to propose that person for appointment, together with notice signed by that person of his willingness to be appointed.

5.4.1   Subject to article 5.3 above, the Company may by ordinary resolution appoint any person who is willing to act to be a director, either to fill a vacancy or as an additional director.

5.4.2   The directors may appoint a person who is willing to act to be a director, either to fill a vacancy or as an additional director, provided that the appointment does not cause the number of directors to exceed any number determined in accordance with article 5.1.2 above as the maximum number of directors and for the time being in force.

6.      BORROWING POWERS

6.1     The directors may exercise all the powers of the Company to borrow money without limit as to amount and upon such terms and in such manner as they think fit, and subject (in the case of any security convertible into shares) to section 80 of the Act to grant any mortgage, charge or standard security over its undertaking, property and uncalled capital, or any part thereof, and to issue debentures, debenture stock, and other securities whether outright or as security for any debt, liability or obligation of the Company or of any third party.

PLCG05i

7.    ALTERNATE DIRECTORS

7.1    Unless otherwise determined by the Company in general meeting by ordinary resolution an alternate director shall not be entitled as such to receive any remuneration from the Company, save that he may be paid by the Company such part (if any) of the remuneration otherwise payable to his appointor as such appointor may by notice in writing to the Company from time to time direct, and the first sentence of regulation 66 in Table A shall be modified accordingly.

7.2    A director, or any such other person as is mentioned in regulation 65 in Table A, may act as an alternate director to represent more than one director, and an alternate director shall be entitled at any meeting of the directors or of any committee of the directors to one vote for every director whom he represents in addition to his own vote (if any) as a director, but he shall count as only one for the purpose of determining whether a quorum is present.

8.    GRATUITIES AND PENSIONS

8.1.1    The directors may exercise the powers of the Company conferred by its Memorandum of Association in relation to the payment of pensions, gratuities and other benefits and shall be entitled to retain any benefits received by them or any of them by reason of the exercise of any such powers.

8.1.2    Regulation 87 in Table A shall not apply to the Company.

9.    PROCEEDINGS OF DIRECTORS

9.1.1    A director may vote, at any meeting of the directors or of any committee of the directors, on any resolution, notwithstanding that it in any way concerns or relates to a matter in which he has, directly or indirectly, any kind of interest whatsoever, and if he shall vote on any such resolution his vote shall be counted; and in relation to any such resolution as aforesaid he shall (whether or not he shall vote on the same) be taken into account in calculating the quorum present at the meeting.

9.1.2    Each director shall comply with his obligations to disclose his interest in contracts under section 317 of the Act.

9.1.3    Regulations 94 to 97 (inclusive) in Table A shall not apply to the Company.

10.    THE SEAL

10.1    If the Company has a seal it shall only be used with the authority of the directors or of a committee of directors.  The directors may determine who shall sign any instrument to which the seal is affixed and unless otherwise so determined it shall be signed by a director and by the secretary or second director. The obligation under regulation 6 in Table A relating to the sealing of share certificates shall apply only if the Company has a seal.  Regulation 101 in Table A shall not apply to the Company.

PLCG05i

10.2    The Company may exercise the powers conferred by section 39 of the Act with regard to having an official seal for use abroad, and such powers shall be vested in the directors.

11.    PROTECTION FROM LIABILITY

For the purposes of this article a "Liability" is any liability incurred by a person in connection with any negligence, default, breach of duty or breach of trust by him in relation to the Company or otherwise in connection with his duties, powers or office and "Associated Company" shall bear the meaning referred to in section 309A(6) of the Act. Subject to the provisions of the Act and without prejudice to any protection from liability which may otherwise apply:

11.1    the directors shall have power to purchase and maintain for any director of the Company, any director of an Associated Company, any auditor of the Company and any officer of the Company (not being a director or auditor of the Company), insurance against any Liability.

11.2    every director or auditor of the Company and every officer of the Company (not being a director or auditor of the Company) shall be indemnified out of the assets of the Company against any loss or liability incurred by him in defending any proceedings in which judgment is given in his favour or in which he is acquitted or in connection with any application in which relief is granted to him by the court from any Liability.

11.3    regulation 118 in Table A shall not apply to the Company.

---

Names and addresses of Subscribers

---

1.     For and on behalf of
       Instant Companies Limited
       1 Mitchell Lane
       Bristol  BS1 6BU

2.     For and on behalf of
       Swift Incorporations Limited
       1 Mitchell Lane
       Bristol  BS1 6BU

---

Dated 30 June 2006

Witness to the above Signatures:-     Glenys Copeland
                                      1 Mitchell Lane
                                      Bristol  BS1 6BU

# EXHIBIT # 3



# Current Appointments Report for:
# PLAYSHARE PLC
# 05863469

## Created: 24/05/2007

# Company Register Information

| | | |
|---|---|---|
| Company Number: | 05863469 | Date of Incorporation:30/06/2006 |
| Company Name: | PLAYSHARE PLC | |
| Registered Office: | 7 QUEEN STREET | |
| | LONDON | |
| | W1J 5PB | |
| Company Type: | Public Limited Company | |
| Country of Origin: | United Kingdom | |
| Status: | Active | |
| Nature Of Business (SIC(92)): | None Supplied | |
| Mortgage: Number of Charges: | ( 0 outstanding / 0 part satisfied / 0 satisfied) | |

## Previous Names

No previous name information has been recorded over the last 20 years.

## Key Filing Dates

| | |
|---|---|
| Accounting Reference Date: | 31/12 |
| Last Accounts Made Up To: | (NO ACCOUNTS FILED) |
| Next Accounts Due: | 31/07/2007 |
| Last Return Made Up To: | |
| Next Return Due: | 28/07/2007 |
| Last Bulk Shareholders List: | Not available |

# Current Appointments

**Number of current appointments: 5**

---

| | | |
|---|---|---|
| SECRETARY: | MORSE, CHRISTOPHER CHARLES | |
| Appointed: | 30/06/2006 | Date of Birth: 01/11/1950 |
| Nationality: | BRITISH | |
| No. of Company appointments: | 151 | |
| Address: | THE ELMS | |
| | MARSHSIDE | |
| | CANTERBURY | |
| | KENT | |
| | CT3 4EE | |

---

| | | |
|---|---|---|
| DIRECTOR: | PATERSON BROWN, TIMOTHY | |
| Appointed: | 18/08/2006 | Date of Birth: 27/09/1960 |
| Nationality: | BRITISH | |
| No. of Company appointments: | 14 | |
| Address: | 33 ASHLEY GARDENS | |
| | AMBROSDEN AVENUE | |
| | LONDON | |
| | SW1P 1QE | |

---

| | | |
|---|---|---|
| DIRECTOR: | SANDYS, RODERICK JULIAN FREDERICK | |
| Appointed: | 30/06/2006 | Date of Birth: 15/09/1977 |
| Nationality: | BRITISH | |
| No. of Company appointments: | 9 | |
| Address: | 48 TACHBROOK STREET | |
| | LONDON | |
| | SW1V 2NA | |

---

| | | |
|---|---|---|
| DIRECTOR: | SMEDLEY, STEPHEN | |
| Appointed: | 30/01/2007 | Date of Birth: 28/01/1975 |
| Nationality: | BRITISH | |

| | |
|---|---|
| **No. of Company appointments:** | 1 |
| **Address:** | NO 1 THE MEADOWS |
| | ALCAIDESA |
| | CADIZ |
| | 11300 |
| | SPAIN |
| | FOREIGN |

---

| | |
|---|---|
| **DIRECTOR:** | WRIGHT, MAXWELL GEORGE |
| **Appointed:** | 02/10/2006        Date of Birth: 21/03/1979 |
| **Nationality:** | BRITISH |
| **No. of Company appointments:** | 8 |
| **Address:** | 25 BROCKHILL ROAD |
| | HYTHE |
| | KENT |
| | CT21 4AE |

**This Report excludes resignations**

*4*

# Recent Filing History

**Documents filed since 30/06/2006**

| FILING DATE | FORM | DESCRIPTION |
|---|---|---|
| 20/02/2007 | 288a | DIRECTOR APPOINTED |
| 20/02/2007 | 288b | DIRECTOR RESIGNED |
| 29/01/2007 | 288b | DIRECTOR RESIGNED |
| 11/01/2007 | 288c | DIRECTOR'S PARTICULARS CHANGED |
| 11/01/2007 | 225 | ACC. REF. DATE SHORTENED FROM 30/06/07 TO 31/12/06 |
| 02/01/2007 | 288c | DIRECTOR'S PARTICULARS CHANGED |
| 07/12/2006 | 288b | DIRECTOR RESIGNED |
| 19/10/2006 | 288a | DIRECTOR APPOINTED |
| 21/09/2006 | 288a | DIRECTOR APPOINTED |
| 08/09/2006 | 122 | CONSO03/07/06 |
| 08/09/2006 | RES10 | CONSOLIDATED 03/07/06;AUTH ALLOT OF SECURITY 03/07/06 |
| 01/09/2006 | 288a | DIRECTOR APPOINTED |
| 17/08/2006 | 288a | DIRECTOR APPOINTED |
| 13/07/2006 | CERT8 | AUTHORISATION TO COMMENCE BUSINESS AND BORROW |
| 13/07/2006 | 117 | APPLICATION COMMENCE BUSINESS |
| 10/07/2006 | 288b | SECRETARY RESIGNED |
| 30/06/2006 | NEWINC | INCORPORATION DOCUMENTSCERTIFICATE OF INCORPORATIONSTATEMENT OF DIRECTORS & REGISTERED OFFICEDECLARATION OF COMPLIANCEMEMORANDUM OF ASSOCIATIONARTICLES OF ASSOCIATION |

**This Report excludes 88(2) Share Allotment documents**

# EXHIBIT # 4



# 363a

**Please complete in typescript, or in bold black capitals.**

CHFP010

## Annual Return

| | |
|---|---|
| **Company Number** | 5451906 |
| **Company Name in full** | Gamshare (UK) Limited |

### Date of this return

The information in this return is made up to

| Day | Month | Year |
|---|---|---|
| 1 3 | 0 5 | 2 0 0 6 |

### Date of next return

If you wish to make your next return to a date earlier than the anniversary of this return please show the date here. Companies House will then send a form at the appropriate time.

| Day | Month | Year |
|---|---|---|
| | | |

### Registered Office

Show here the address **at the date of this return.**

*Any change of registered office must be notified on form 287.*

| | |
|---|---|
| | 7 Queen Street, Mayfair |
| Post town | London |
| County / Region | |
| UK Postcode | W1J 5PB |

### Principal business activities

Show trade classification code number(s) for the principal activity or activities.

9271

If the code number cannot be determined, give a brief description of principal a...



A26    *RAX21JG1R*    254
COMPANIES HOUSE    06/06/2006

A48    *RTCS9FRI*    301
COMPANIES HOUSE    17/05/2006

When you have completed and signed the form please send it to the Registrar of Companies at:
**Companies House, Crown Way, Cardiff, CF14 3UZ    DX 33050 Cardiff**
for companies registered in England and Wales
**or**
**Companies House, 37 Castle Terrace, Edinburgh, EH1 2EB**
for companies registered in Scotland    **DX 235 Edinburgh**

Company No 5451906

## Register of members

If the register of members is not kept at the registered office, state here where it is kept.

7 Queen Street, Mayfair

Post town | London

County / Region | _____ UK Postcode | W1J 5PB

## Register of Debenture holders

If there is a register of debenture holders, or a duplicate of any such register or part of it, which is not kept at the registered office, state where it is kept.

Post town | _____

County / Region | _____ UK Postcode | _____

## Company type

| | | |
|---|---|---|
| Public limited company | ☐ | |
| Private company limited by shares | ☒ X | |
| Private company limited by guarantee without share capital | ☐ | |
| Private company limited by shares exempt under section 30 | ☐ | Please tick the appropriate box |
| Private company limited by guarantee exempt under section 30 | ☐ | |
| Private unlimited company with share capital | ☐ | |
| Private unlimited company without share capital | ☐ | |

## Company Secretary

**Details of a new company secretary must be notified on form 288a.**

(Please photocopy this area to provide details of joint secretaries).

* Voluntary details.

If a partnership give the names and addresses of the partners or the name of the partnership and office address.

*Usual residential address* must be given. In the case of a corporation, give the registered or principal office address.

**Name**

* Style / Title | _____

Forename(s) | Christopher Charles

Surname | Morse

**Address** | The Elms, Marshside

| _____

Post town | Nr. Canterbury

County / Region | Kent    UK Postcode | CT3 4EE

Country | _____

BLUEPRINT

Company No 5451906

## Directors
*Please list directors in alphabetical order.*

**Details of new directors must be notified on form 288a**

**Name**

**Directors** In the case of a director that is a corporate or a Scottish firm, the name is the corporate or firm name.

* Style / Title |

|                | Day | Month | Year |
| Date of birth  | 0 8 | 1 0 | 1 9 7 5 |

Forename(s) | Satyaswaroop

Surname | Mahapatra

**Address** | 8 Anchor Terrace, Cephas Avenue

**Usual residential address** must be given. In the case of a corporation, give the registered or principal office address.

Post town | London

County / Region | | UK Postcode | E1 4BA

Country | | Nationality | British

Business occupation | Company Director

* Voluntary details.

**Name**

**Directors** In the case of a director that is a corporate or a Scottish firm, the name is the corporate or firm name.

* Style / Title |

|                | Day | Month | Year |
| Date of birth  | 1 5 | 0 9 | 1 9 7 7 |

Forename(s) | Roderick Julian Frederick

Surname | Sandys

**Address** | 48 Tachbrook Street

**Usual residential address** must be given. In the case of a corporation, give the registered or principal office address.

Post town | London

County / Region | | UK Postcode | SW1V 2NA

Country | | Nationality | British

Business occupation | Management Assistant

B L U E P R I N T

Company No 5451906

## Directors
*Please list directors in alphabetical order.*

**Details of new directors must be notified on form 288a**

| | | |
|---|---|---|
| **Name** | * Style / Title | |

**Directors** In the case of a director that is a corporate or a Scottish firm, the name is the corporate or firm name.

| | Day | Month | Year |
|---|---|---|---|
| Date of birth | 2  1 | 0  3 | 1  9  7  9 |

Forename(s)　Maxwell George

Surname　Wright

**Address**　25 Brockhill Road, Saltwood

**Usual residential address** must be given. In the case of a corporation, give the registered or principal office address.

Post town　Hythe

County / Region　Kent　　UK Postcode　CT21 4AE

Country　　　　Nationality　British

Business occupation　Company Director

* Voluntary details.

| | | |
|---|---|---|
| **Name** | * Style / Title | |

**Directors** In the case of a director that is a corporate or a Scottish firm, the name is the corporate or firm name.

| | Day | Month | Year |
|---|---|---|---|
| Date of birth | | | |

Forename(s)

Surname

**Address**

**Usual residential address** must be given. In the case of a corporation, give the registered or principal office address.

Post town

County / Region　　　UK Postcode

Country　　　　Nationality

Business occupation

BLUEPRINT

Company No 5451906

## Issued share capital

Enter details of all the shares in issue at the date of this return.

| | Class (e.g. Ordinary/Preference) | Number of shares issued | Aggregate Nominal Value (i.e. Number of shares issued multiplied by nominal value per share, or total amount of stock) |
|---|---|---|---|
| Ordinary | | 1 | £1.00 |
| | | | |
| | | | |
| | | | |
| **Totals** | | 1 | 1.00 |

## List of past and present shareholders

(use attached schedule where appropriate)

A full list is required if one was not included with either of the last two returns.

| | on paper | in another format |
|---|---|---|
| There were no changes in the period | ☐ | |
| A list of changes is enclosed | ☐ | ☐ |
| A full list of shareholders is enclosed | X | ☐ |

## Certificate

I certify that the information given in this return is true to the best of my knowledge and belief.

**Signed** _(signature)_     **Date** 15/5/06

† a director / secretary

† Please delete as appropriate.

When you have signed the return send it with the fee to the Registrar of Companies.
Cheques should be made payable to **Companies House.**

This return includes [ 1 ] continuation sheets.

(enter number)

Please give the name, address, telephone number and, if available, a DX number and Exchange of the person Companies House should contact if there is any query.

The Secretary, 7 Queen Street, Mayfair, London,

W1J 5PB

Tel

DX number            DX exchange

BLUEPRINT

# BLUEPRINT
## 2000

**List of past and present shareholders**
**Schedule to form 363a**

CHFP010    **Company Number**    5451906

**Company Name in full**    Gamshare (UK) Limited

> Changes to shareholders particulars or details of the amount of stock or shares transferred must be completed each year
> You must provide a "full list" of all the company shareholders on:
> * The company's first annual return following the incorporation;
> * Every third annual return after a full list has been provided
> List the company shareholders in alphabetical order or provide an index
> List joint shareholders consecutively

| Shareholders' details | Class and number of shares or amount of stock held | Shares or amount of stock transferred *(if appropriate)* | |
|---|---|---|---|
| | | Class and number of shares or amount of stock transferred | Date of registration of transfer |
| **Name** Instant Companies Limited **Address** 1 Mitchell Lane, Bristol  Shares Held 0 **UK postcode** BS1 6BU | £1.00 Ordinary | 1 | 13/05/2005 |
| **Name** Prime Nominees Limited **Address** Suite 2b, Centre Plaza, Main Street, Gibraltar  Shares Held 1 **UK postcode** | £1.00 Ordinary | | |
| **Name**  **Address**  **UK postcode** | | | |

# EXHIBIT # 5



This service will be available on S
and Sunday 26th August from 7a

Home |     Bookmark site |     Links

About us | Forms | Press Desk | Careers | Contact us     (i) Info and guidance on     Tool

Login | My Account | My Download | My Order     Please select     Please se

## Company Details

The WebCHeck service is available from Monday to Saturday 7.00am to 12 Midnight UK Time

HELP     I

Name & Registered Office:
**PLAYSHARE PLC**
**7 QUEEN STREET**
**LONDON**
**W1J 5PB**
**Company No. 05863469**

**Status**: Active
**Date of Incorporation**: 30/06/2006

**Country of Origin**: United Kingdom

**Company Type**: Public Limited Company
**Nature of Business (SIC(03))**:
None Supplied

**Accounting Reference Date**: 31/12
**Last Accounts Made Up To**: (NO ACCOUNTS FILED)
**Next Accounts Due**: 31/07/2007 OVERDUE
**Last Return Made Up To**:
**Next Return Due**: 28/07/2007 OVERDUE

**Previous Names**:
No previous name information has been recorded over the last 20 years.

**Branch Details**
There are no branches associated with this company.

**Oversea Company Info**
There are no Oversea Details associated with this company.

**System Requirements**

**Return to search page**

Order information c

company

SEARCH FOR ANOTHER COMPA

**Tell Us**

▸ Are you satisfied with c

▸ Have you got a questio

· Top

Contact Centre : +44 (0)870 33 33 636  available 08:30 to 18:00 (UK time)    .  Email:
enquiries@companies-house.gov.uk

Disclaimer  |  Privacy Statement  |  Acceptable use
statement  |  Use of cookies  |  © Crown Copyright 2003







This service will be available on S
and Sunday 26th August from 7a

Home |    Bookmark site |    Links

🏠About us   ♦Forms   ♦Press Desk   ♦Careers   ♦Contact us   ℹ️ **Info and guidance on**   🔍 **Tool**

Login | My Account | My Download | 🖥️ My Order    Please select    Please se

## Company Details

The WebCHeck service is available from Monday to Saturday 7.00am to 12 Midnight UK Time

┌─────────┐ ┌
│  HELP   │ │
└─────────┘ └

Name & Registered Office:
**GRAND MONACO LIMITED**
7 QUEEN STREET
MAYFAIR
LONDON
W1J 5PB
**Company No. 06139639**

**Status**: Active
**Date of Incorporation**: 06/03/2007

**Country of Origin**: United Kingdom

**Company Type**: Private Limited Company
**Nature of Business (SIC(03))**:
None Supplied

**Accounting Reference Date**: 31/03
**Last Accounts Made Up To**:  (NO ACCOUNTS FILED)
**Next Accounts Due**: 06/01/2009
**Last Return Made Up To**:
**Next Return Due**: 03/04/2008

**Previous Names:**
No previous name information has been recorded over the last 20 years.

**Branch Details**
There are no branches associated with this company.

**Oversea Company Info**
There are no Oversea Details associated with this company.

**System Requirements**

**Return to search page**

Order information o
**company**

┌──────────────────────────┐
│ SEARCH FOR ANOTHER COMPA │
└──────────────────────────┘

**Tell Us**

‣ Are you satisfied with c

‣ Have you got a questio

Case 1:07-cv-04802-DAB-RLE    Document 15-2    Filed 08/24/2007    Page 57 of 69

Top

Contact Centre : +44 (0)870 33 33 636  available 08:30 to 18:00 (UK time)     Email: enquiries@companies-house.gov.uk

Disclaimer  |  Privacy Statement  |  Acceptable use statement  |  Use of cookies  |  © Crown Copyright 2003

  



Home | Bookmark site | Links

This service will be available on £
and Sunday 26th August from 7a

About us | Forms | Press Desk | Careers | Contact us    Info and guidance on    Tools

Login | My Account | My Download | My Order    Please select    Please se

## Company Details

The WebCHeck service is available from Monday to Saturday 7.00am to 12 Midnight UK
Time

HELP

Name & Registered Office:
**GAMSHARE (UK) LIMITED**
7 QUEEN STREET
MAYFAIR
LONDON
W1J 5PB
**Company No. 05451906**

**Status**: Active
**Date of Incorporation**: 13/05/2005

**Country of Origin**: United Kingdom

**Company Type**: Private Limited Company
**Nature of Business (SIC(03))**:
9271 - Gambling and betting activities

**Accounting Reference Date**: 31/05
**Last Accounts Made Up To**: (NO ACCOUNTS FILED)
**Next Accounts Due**: 13/03/2007 OVERDUE
**Last Return Made Up To**: 13/05/2006
**Next Return Due**: 10/06/2007 OVERDUE

**Last Members List**: 13/05/2006

**Previous Names:**
**Date of change**       **Previous Name**
21/12/2005       TFK INVESTMENTS LIMITED

**Branch Details**
There are no branches associated with this company.

**Oversea Company Info**
There are no Oversea Details associated with this company.

**System Requirements**

Order information c

company

SEARCH FOR ANOTHER COMPA

**Tell Us**

‣ Are you satisfied with c

‣ Have you got a questio

**Return to search page**

Top

Contact Centre : +44 (0)870 33 33 636  available 08:30 to 18:00 (UK time)    ·  Email:
enquiries@companies-house.gov.uk

Disclaimer  |  Privacy statement  |  Acceptable use
statement  |  Use of cookies  |  © Crown Copyright 2003

  

# EXHIBIT # 6



A member of the PlayShare Group

# GRAND MONACO

TOTAL JACKPOT
PROGRESSIVES
**$3,870,072.13**

*Big Wins, More Action!*

Home | Getting Started | Promotions | Grand Club Monaco | Cashier | About Us | Help

Bookmark this site | Become an Affiliate

Customer Support | Live Help



**NEW**

## $150 FREE & 150 FREE SPINS

NEW IMPROVED CASINO KIT

**DOWNLOAD**

OPENING OFFER
100% MATCH

NEW GAMES
OVER 300 GAMES

BLACKJACK    VIDEO POKER    SLOTS    ROULETTE    KAHNAWAKE GAMING COMMISSION    OVER 18 ONLY

CLICK HERE TO PLAY INSTANT FLASH - NO DOWNLOAD REQUIRED

PERCENTAGE PAYOUT REVIEWED BY INDEPENDENT AUDITORS

### GETTING STARTED

1. **Download** and Register
2. Purchase and Wager on Slots, get a 100% match up to $150
   Purchase and Wager on Casino Games, get a 100% match up to $75
3. **Claim**
4. Get your Opening Offer and Casino Kit
5. Make a second purchase
6. Get up to 150 **FREE Spins**

### GRAND WINNERS

**$18,046**

Adrian K. Switzerland May
14 Feature Slot - Witch Dr
€3,898

ECO
SPAM   PURCHASE WITH    VISA    ukash

Grand Monaco

Home| Promotions | Grand Club Monaco | Cashier | About Us | Contact Us | Games | Winners | Affiliate Program
Getting Started | Spam Policy | Privacy Policy | Subscribe/Unsubscribe | Disclaimer | Flash Casino
Terms and Conditions | Responsible Gaming | Transaction History | Site Map





Grand Monaco is a Hillstead Limited, Gibraltar site - now a member of the PlayShare group
**Grand Monaco is in NO way associated with the Principality of Monaco, nor ANY of the
land-based casino operations located in that jurisdiction. Grand Monaco is an independent operation.**

# EXHIBIT # 7

A member of the PlayShare Group





**TOTAL JACKPOT
PROGRESSIVES**
**$4,898,563.88**

Big Wins, More Action!

| Home | Getting Started | Promotions | Grand Club Monaco | Cashier | About Us | Help |

Bookmark this site | Become an Affiliate                    Customer Support | Live He



# Who We Are

**Hi, my name is Frank Thompson and I am the Casino Manager at
Grand Monaco. I just want to take a moment and tell you a little
about our operation.**

Grand Monaco is a world-class casino that launched in July 2006.

While we are a new online casino, our management team is made up of
seasoned online and land-based casino veterans with more than 35 years
combined experience! Besides, it is not the age of the casino that's
important, it's the quality of the service you receive and the relationships we
have with our customers.

In essence – we are proud to offer one of the largest online casinos in the
world with over 250 games. Our mission is to redefine, build, and grow an
unparalleled world-class casino experience – nothing short of exceeding your
expectations.

**Why should you choose us when we look like just yet another online
casino...?**

Grand Monaco is committed to providing world-class gambling with the most
exciting casino games and customer service available. Our management
team searched the casinos of Las Vegas, Atlantic City, and Monaco to bring
you the best casino entertainment in the world.

In this effort, we have 5 core customer service beliefs which make YOU the
center of our universe.

**1) Casino Action**
**2) Huge Wins**
**3) Service Hospitality**
**4) Unbreakable Trust**
**5) Security and Privacy**



Casino Action
▼
Huge Wins
▼
Service Hospitality
▼
Unbreakable Trust
▼
Security & Privacy
▼

Our Customers

## Casino Action

With over 35 years of industry leading knowledge, we have assembled the
largest selection of casino slots and games with over 250 unique gaming
products – and only a click away. Grand Monaco provides the most innovative
monthly promotions around so your casino action lasts longer and takes you
to new highs.

## Huge Wins

Our casino is powered by the most trusted online games provider in the
world: Microgaming. What does this mean for you? This means you have a
shot at record breaker online progressive jackpots. That's right, Microgaming
progressive games hold the world record for the largest and most frequent
jackpots ever, therefore our games have given away more progressive
jackpots than any other online company. We bring these record sized
jackpots directly to you, so come find out why Grand Monaco is known for Big
Wins, More Action!

## Service Hospitality

Providing the best customer service starts with listening. Our casino support
agents can be reached 24/7/365 through a number of convenient methods:
Toll-free numbers, Instant Live Chat, and super-quick email response allow
us to provide the comfort of having help whenever you need us! Our goal is
to build personal relationships with our customers and treat you like one of
the family. Our service philosophy is supported with our G3 Rewards Club
and cashback rewards – conveniently available at your fingertips.

## Unbreakable Trust

Grand Monaco is licensed by the Kahnawake Gaming Commission of the Mohawk Territory of Kahnawake, Canada. We operate our casino under Kahnawake guidelines having passed an in-depth investigation of our management team and financial stability.

Our casino is reviewed monthly by independent auditors and we publish the payout percentages of our games on our website. We encourage our players to view these reviews at any time.

## Security and Privacy

Show you the money! We hear you loud and clear, so we make sure your purchases and cash-in hassle free. We offer a variety of convenient deposit options and your financial integrity is never compromised. We use the latest and most effective 128-bit SSL encryption software available to ensure your privacy and safety. Your personal details are always under our protection and will never be sold.

Remember that when you play at Grand Monaco, you can expect...

**Big Wins, More Action!**

*Frank Thompson*

Casino Manager

**Back to top**



Home| Promotions | Grand Club Monaco | Cashier | About Us | Contact Us | Games | Winners | Affiliate Program
Getting Started | Spam Policy | Privacy Policy | Subscribe/Unsubscribe | Disclaimer | Flash Casino
Terms and Conditions | Responsible Gaming | Transaction History | Site Map



Grand Monaco is a Hillstead Limited, Gibraltar site - now a member of the PlayShare group
**Grand Monaco is in NO way associated with the Principality of Monaco, nor ANY of the
land-based casino operations located in that jurisdiction. Grand Monaco is an independent operation.**

# EXHIBIT # 8

A member of the PlayShare Group





**TOTAL JACKPOT PROGRESSIVES**
$4,898,547.29

*Big Wins, More Action!*

| Home | Getting Started | Promotions | Grand Club Monaco | Cashier | About Us | Help |

Bookmark this site | Become an Affiliate

 Customer Support | Live He



CHOOSE YOUR BONUS
**$150 FREE**
Slot Only Bonus
OR
**$75 FREE**
Casino Games Bonus
Tell me more

DOWNLOAD
CASINO

24/7 SUPPORT
LIVE HELP
INSTANT CHAT

INSTANT PLAY
NO DOWNLOAD

## Grand Monaco Promise

From the senior management team and all the staff at Grand Monaco, we promise:

### Top Service from the Top Team:

Our management team has over 35 years of experience in servicing casino customers and operating the some of the most well known land-based and online casinos in the world.

- Our focus starts and ends with YOU, the customer
- We strive to provide the best services, games, promotions and overall casino experience possible.

That noise you hear in the background is us cheering for you!

### Fast Cash-ins:

We know that one of the most exciting aspects of the gaming experience is hitting the big win! The last thing we want to do is destroy that winning feeling with a slow cash-in, so our team is committed to processing your winnings fast.

### The Best Games:

In order to give you the best games available on the net, we have partnered with Microgaming, a world leader in casino game software. Our offering includes over 300 of the top casino slots and games.

### Fair Play:

Our payouts are reviewed monthly by an independent auditor and we publish the results of their findings on our site. That's right; we tell you how loose our games are! And boy, are they loose…

Players can check their wagering and gaming history using Playcheck and their banking transactions using Cashcheck. These unique features are built into our award winning software, so you can conveniently monitor your

gaming experience.

## To Listen:

Providing you the best gaming experience starts by listening to your feedback – positive or negative. Please send us your thoughts and let us know how we are living up to our promises. We want to make sure our service exceeds your expectations, and your experience at Grand Monaco keeps on getting better.

Email us at **feedback@grandmonacosupport.com** , or call us toll free. We are here for you all day and night, every day of the year

**...we promise.**

**Back to top**

 

Home| Promotions | Grand Club Monaco | Cashier | About Us | Contact Us | Games | Winners | Affiliate Program
Getting Started | Spam Policy | Privacy Policy | Subscribe/Unsubscribe | Disclaimer | Flash Casino
Terms and Conditions | Responsible Gaming | Transaction History | Site Map

 



Grand Monaco is a Hillstead Limited, Gibraltar site - now a member of the PlayShare group
**Grand Monaco is in NO way associated with the Principality of Monaco, nor ANY of the
land-based casino operations located in that jurisdiction. Grand Monaco is an independent operation.**