# EXHIBIT # 44

**ORGANISATION MONDIALE**
**DE LA PROPRIÉTÉ INTELLECTUELLE**

Centre d'arbitrage et de médiation de l'OMPI



**WORLD INTELLECTUAL**
**PROPERTY ORGANIZATION**

WIPO Arbitration and Mediation Center

June 11, 2007

Re:  Case No.  D2007-0249
<casinograndmonaco.com
casinograndmonaco.net
casinograndmonaco.org
deutschesgrandmonaco.com
grandmonacoayda.com
grandmonacoayuda.com
grandmonacobingo.com
grandmonacobingo.net
grandmonacocasinoclub.com
grandmonacocasinoclub.net
grandmonacocasinoclub.org
grand-monaco-casino.com
grandmonacocasino.com
grandmonacocasino.net
grandmonacocasino.org
grandmonacoclub.com
grand-monaco.com
grandmonaco.com
grandmonacocraps.com
grandmonacogames.com
grandmonacogames.net
grandmonacogaming.com
grandmonacogaming.net
grandmonacohost.com
grandmonacohosts.com
grandmonacolottery.com
grandmonacolottery.net
grandmonacolotto.com
grandmonacolounge.com
grandmonacomahjong.com
grandmonacomillions.com
grandmonacomillions.net
grandmonacomillions.org
grandmonaco.net
grandmonaconews.com
grandmonacoonlinecasino.com
grandmonacoonlinegaming.com
grandmonacoonlinepoker.com

grandmonaco.org
grandmonacopartners.com
grandmonacoplayersclub.com
grandmonacoplayersclub.net
grandmonacopokerclub.com
grandmonacopokerclub.net
grandmonacopokerclub.org
grand-monaco-poker.com
grandmonacopoker.com
grandmonacopoker.net
grandmonacopoker.org
grandmonacopromotions.com
grandmonacoracebook.com
grandmonacoracebook.net
grandmonacoracebook.org
grandmonacorewards.com
grandmonacoskillgames.com
grandmonacoskillgames.net
grandmonacoslots.com
grandmonacosportsbook.com
grandmonacosportsbook.net
grandmonacosports.com
grandmonacosports.net
grandmonacostore.com
grandmonacosupport.com
grandmonacovideopoker.com
pokergrandmonaco.net
pokergrandmonaco.org>
**Notification of Decision**

Please find attached the full text of the decision issued on **May 25, 2007** by the Administrative Panel in the above-referenced case.

The Administrative Panel's finding is as follows:

For all the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the domain names

<casinograndmonaco.com>
<casinograndmonaco.net>
<casinograndmonaco.org>
<deutschesgrandmonaco.com>
<grandmonacoayda.com>
<grandmonacoayuda.com>
<grandmonacobingo.com>
<grandmonacobingo.net>
<grandmonacocasinoclub.com>
<grandmonacocasinoclub.net>
<grandmonacocasinoclub.org>

<grand-monaco-casino.com>
<grandmonacocasino.com>
<grandmonacocasino.net>
<grandmonacocasino.org>
<grandmonacoclub.com>
<grand-monaco.com>
<grandmonaco.com>
<grandmonacocraps.com>
<grandmonacogames.com>
<grandmonacogames.net>
<grandmonacogaming.com>
<grandmonacogaming.net>
<grandmonacohost.com>
<grandmonacohosts.com>
<grandmonacolottery.com>
<grandmonacolottery.net>
<grandmonacolotto.com>
<grandmonacolounge.com>
<grandmonacomahjong.com>
<grandmonacomillions.com>
<grandmonacomillions.net>
<grandmonacomillions.org>
<grandmonaco.net>
<grandmonaconews.com>
<grandmonacoonlinecasino.com>
<grandmonacoonlinegaming.com>
<grandmonacoonlinepoker.com>
<grandmonaco.org>
<grandmonacopartners.com>
<grandmonacoplayersclub.com>
<grandmonacoplayersclub.net>
<grandmonacopokerclub.com>
<grandmonacopokerclub.net>
<grandmonacopokerclub.org>
<grand-monaco-poker.com>
<grandmonacopoker.com>
<grandmonacopoker.net>
<grandmonacopoker.org>
<grandmonacopromotions.com>
<grandmonacoracebook.com>
<grandmonacoracebook.net>
<grandmonacoracebook.org>
<grandmonacorewards.com>
<grandmonacoskillgames.com>
<grandmonacoskillgames.net>
<grandmonacoslots.com>
<grandmonacosportsbook.com>
<grandmonacosportsbook.net>
<grandmonacosports.com>
<grandmonacosports.net>
<grandmonacostore.com>

&lt;grandmonacosupport.com&gt;
&lt;grandmonacovideopoker.com&gt;
&lt;pokergrandmonaco.net&gt;&gt;
&lt;pokergrandmonaco.org&gt;

**be transferred to the Complainant.**

Pursuant to Paragraph 4(k) of the Uniform Domain Name Dispute Resolution Policy, the Registrar identified below shall proceed to implement the above decision on the tenth business day (as observed in the location of that Registrar's principal office) after receiving this notification.  The concerned Registrar will not implement the decision if, before the 10-day waiting period has expired, the Respondent submits official documentation (such as a copy of a complaint, file-stamped by the clerk of the court) to the Registrar demonstrating that it has commenced a legal proceeding against the Complainant in a jurisdiction to which the Complainant has submitted under Paragraph 3(b)(xiii) of the Rules for Uniform Domain Name Dispute Resolution Policy (the *Rules*).

Pursuant to Rules, Paragraph 16(a), the Registrar is directed to inform the Complainant, the Respondent, the Internet Corporation for Assigned Names and Numbers (ICANN) and the WIPO Arbitration and Mediation Center as soon as possible of the specific date on which the Administrative Panel's decision will be implemented, absent a notification by the Respondent in accordance with the above.

Yours sincerely,

Youri Porohovski
Case Manager

## **COMMUNICATIONS**

This notification is being communicated to the Complainant in accordance with the following contact details:

    Julien Horn
    De Gaulle Fleurance & Associés
    11 rue Portalis
    75008 Paris
    France
    33156640000 (Office telephone)
    33156640001 (Office FAX)
    E-mail: jhorn@dgfla.com

By the following methods:

[X]  Post/Courier (with original enclosure)
[X]  E-mail (with attachment)

This notification is being communicated to the Respondent in accordance with the following contact details:

    Warner Jerrard
    Hamilton Downing Quinn Solicitors
    Ruskin House
    40/41 Museum Street
    London WC1A 1LT
    United Kingdom of Great Britain and Northern Ireland
    44(0)20 7831 8939 (Office telephone)
    44(0)20 7831 8798 (Office FAX)
    E-mail: warnerj@hamd.co.uk

By the following methods:

[X]  Post/Courier (with original enclosure)
[X]  E-mail (with attachment)

A copy has also been communicated to the Registrar listed below:

                  Go Daddy Software

By the following methods:

[X]  E-mail (with attachment)



# WIPO Arbitration and Mediation Center

## ADMINISTRATIVE PANEL DECISION

### Société des Bains de Mer et du Cercle des Étrangers à Monaco v. Lucan Toh and Max Wright

### Case No. D2007-0249

## 1. The Parties

The Complainant is Société des Bains de Mer et du Cercle des Étrangers à Monaco of Monte Carlo, Monaco, represented by De Gaulle Fleurance & Associés, France.

The Respondents are Lucan Toh and Max Wright of London, United Kingdom of Great Britain and Northern Ireland, represented by Hamilton Downing Quinn Solicitors, United Kingdom of Great Britain and Northern Ireland.

## 2. The Domain Names and Registrar

The disputed domain names

<casinograndmonaco.com>
<casinograndmonaco.net>
<casinograndmonaco.org>
<deutschesgrandmonaco.com>
<grandmonacoayda.com>
<grandmonacoayuda.com>
<grandmonacobingo.com>
<grandmonacobingo.net>
<grandmonacocasinoclub.com>
<grandmonacocasinoclub.net>
<grandmonacocasinoclub.org>
<grand-monaco-casino.com>
<grandmonacocasino.com>
<grandmonacocasino.net>
<grandmonacocasino.org>
<grandmonacoclub.com>
<grand-monaco.com>
<grandmonaco.com>
<grandmonacocraps.com>

<grandmonacogames.com>
<grandmonacogames.net>
<grandmonacogaming.com>
<grandmonacogaming.net>
<grandmonacohost.com>
<grandmonacohosts.com>
<grandmonacolottery.com>
<grandmonacolottery.net>
<grandmonacolotto.com>
<grandmonacolounge.com>
<grandmonacomahjong.com>
<grandmonacomillions.com>
<grandmonacomillions.net>
<grandmonacomillions.org>
<grandmonaco.net>
<grandmonaconews.com>
<grandmonacoonlinecasino.com>
<grandmonacoonlinegaming.com>
<grandmonacoonlinepoker.com>
<grandmonaco.org>
<grandmonacopartners.com>
<grandmonacoplayersclub.com>
<grandmonacoplayersclub.net>
<grandmonacopokerclub.com>
<grandmonacopokerclub.net>
<grandmonacopokerclub.org>
<grand-monaco-poker.com>
<grandmonacopoker.com>
<grandmonacopoker.net>
<grandmonacopoker.org>
<grandmonacopromotions.com>
<grandmonacoracebook.com>
<grandmonacoracebook.net>
<grandmonacoracebook.org>
<grandmonacorewards.com>
<grandmonacoskillgames.com>
<grandmonacoskillgames.net>
<grandmonacoslots.com>
<grandmonacosportsbook.com>
<grandmonacosportsbook.net>
<grandmonacosports.com>
<grandmonacosports.net>
<grandmonacostore.com>
<grandmonacosupport.com>
<grandmonacovideopoker.com>
<pokergrandmonaco.net>
<pokergrandmonaco.org>

are registered with Go Daddy Software.

### 3.    Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on February 20, 2007. On February 23, 2007, the Center first transmitted by email to Go Daddy Software a request for registrar verification in connection with the domain names at issue. On March 15, 2007, Go Daddy Software transmitted by fax to the Center its verification response confirming that the Respondent Lucan Toh is listed for eleven of the domain names as the registrant and providing the contact details for the administrative and technical contact, while stating that the balance of the domain names is registered to the Respondent Max Wright, also providing the contact details for the administrative and technical contact. Go Daddy Software further stated that the domain name registrants have submitted in their Registration Agreements to the jurisdiction at the location of the principal office of the Registrar for court adjudication of disputes concerning or arising from the use of the domain names.

In response to a notification by the Center dated March 19, 2007 that the Complaint was administratively deficient, the Complainant filed an amendment to the Complaint on March 21, 2007. The Center verified that the Complaint together with the amendment to the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with paragraphs 2(a) and 4(a) of the Rules, the Center formally notified the Respondents of the Complaint, and the proceedings commenced on March 26, 2007. In accordance with paragraph 5(a) of the Rules, the original due date for Response was April 15, 2007. The due date was later on extended to May 1, 2007, with the consent of the Complainant. The Response as well as a statement by the Respondent Max Wright were filed with the Center on April 27, 2007.

The Center appointed Brigitte Joppich as the sole panelist in this matter on May 11, 2007. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with paragraph 7 of the Rules.

On May 11, 2007, the Complainant filed a supplemental communication with the Center (the "Reply"). On May 14, 2007, the Respondents objected to the submission of the Reply and supporting documents. The Complainant replied by arguing why its supplemental submission should be accepted on May 15, 2007, and the Respondents replied by sending two e-mails on May 16, 2007.

### 4.    Factual Background

The Complainant has been operating a casino under the name "Casino de Monte-Carlo" in Monaco for more than 140 years. It is the founder and manager of the Casino of Monte-Carlo. Since April 2, 1863, it has been granted a monopoly for casino and gambling industries for the territory of the Principauté de Monaco by the authorities of the Principauté de Monaco.

The Complainant is the owner amongst others of the international mark CASINO DE MONACO registered on December 19, 2002, filed originally with the Monaco

Trademark Office and enjoying a priority of July 1, 2002. The Complainant also owns the mark CASINO DE MONTE-CARLO which is well- known and enjoys a substantial reputation.

The Respondents and their businesses offer online gambling services. The disputed domain names were registered by the Respondents' predecessor in interest between October 23, 2004 and August 23, 2006. The Respondents' company, PlayShare.com PLC, acquired these domain names as part of an established business with effect from November 1, 2006. The disputed domain name <grandmonaco.com> had been adopted and used for online gambling purposes by a third party as early as 2000.

**5.    Parties' Contentions**

**A.    Complainant**

The Complainant contends that each of the three elements specified in paragraph 4(a) of the Policy are given in the present case:

(i)    The domain names are confusingly similar to the Complainant's mark CASINO DE MONACO as they all contain the terms "Grand" and "Monaco" and many of them include an additional term. The Complainant groups the disputed domain names according to their composition as follows, leaving aside the top level domain name in each case:

-    The confusing similarity of the domain names composed of the terms "Grand", "Monaco" and "Casino" results from the fact that they incorporate both nouns "Monaco" and "Casino" of the Complainant's trademarks, while the addition of the generic term "grand", frequently associated with the casino business, does not detract from such similarity.

-    The confusing similarity of the domain names composed of the terms "Grand", "Monaco", "Casino" and the generic terms "club" or "online" is based on the same line of arguments, strengthened by such additional generic terms that can easily be associated with the Complainant's activities.

-    The domain names composed of the terms "Grand" and "Monaco" also point to the Casino in Monte-Carlo and, as a result, to the Complainant. They are therefore confusingly similar to the Complainant's mark CASINO DE MONACO.

-    The domain names composed of the terms "Grand" and "Monaco" and a generic term related to the casino business as "bingo", "poker", "craps", "games", "lottery", "rewards", "slots", "millions" or other, which strengthens the association with the Complainant's famous casino, are to be considered confusingly similar as well. This also applies to the domain names in this category containing the generic terms "sports" or "sportsbook".

-    The domain names composed of the terms "Grand", "Monaco" and a generic term unrelated to the casino business as "host", "club", "promotions", "store" or other are to be judged like the domain names composed only of the terms "Grand" and "Monaco" as such additional

generic terms have no distinctive value. They are confusingly similar to the Complainant's marks as well.

- This also accounts for the domain name <deutschesgrandmonaco.com>, pointing to a German-language casino website, as "deutsches" simply means "German" in German language.

(ii)    The Complainant further contends that the Respondents have no rights or legitimate interests in respect of the domain names as they do not enjoy rights in trademarks including the words "Grand" and "Monaco", have no geographical link with the Principauté de Monaco, have not been licensed or authorized by the Complainant and are not allowed to operate a casino in Monaco.

(iii)   The Complainant finally contends that the domain names were registered and are being used in bad faith as the Respondents are professionals in the gambling business as managers of gaming companies within the PlayShare Group, which is seeking to become one of the top five gaming companies worldwide in the near future. The strong notoriety and world renown of the Complainant's marks can therefore not have gone unknown by the Respondents. This impression is supported by the disclaimer inserted at the bottom of each page under the disputed domain names, pointing out that such site is not related to the Principality of Monaco or any of the land-based casino operations located there. Furthermore, the Respondents are supposed to pass off on the Complainant's trademarks and renown in order to attract Internet users for commercial gain, thus creating a risk of confusion, which is evidence of bad faith registration and use. Most of the disputed domain names point to the same casino website. To the extent that they are inactive, the Respondents must have acquired them to prevent the Complainant from using them – such passive use is also supposed to demonstrate bad faith use and registration under the Policy as use in a legitimate manner cannot be imagined.

The Complainant designates the courts of the United States of America where the Registrar is located as courts of Mutual Jurisdiction under paragraph 3(b)(xiii) of the Rules. The location of the Registrar is Scottsdale, Arizona, United Sates of America.

## B.    Respondent

As the Statement by the Respondent Maxwell G. Wright was filed with the Center together with the Response and is referred to therein, the Panel will treat it as part of the Response.

The Respondents contend that none of the three elements specified in paragraph 4(a) of the Policy are given in the present case:

(i)     The domain names are neither confusingly similar to the Complainant's mark CASINO DE MONTE-CARLO nor to the Complainant's mark CASINO DE MONACO as they all include the word "Grand", making them significantly different from the Complainant's marks. Furthermore, none of disputed domain names incorporates the word "Monte Carlo", while some of them refer to "Monaco" as a geographical term distinct from Monte Carlo. The mark CASINO DE MONACO, however, is *prima facie* unregistrable and has not acquired a secondary meaning. It is not a well-known mark either. On the other side, the disputed domain name <grandmonaco.com> has acquired an independent reputation on account of extensive use for online gambling purposes since it was

first registered in 2000. It must also be taken into account that the Respondents are engaged in online gambling, a very different field of gambling as compared to the Complainant's business. Even to the extent the disputed domain names incorporate the word "casino" they are not confusingly similar to the Complainant's marks. However, the Respondents would agree to the cancellation of such domain names after a period of grace of one month. The Respondents also contend that the Complainant's monopoly to operate casinos in Monaco is not sufficiently known to the Internet users visiting the Respondents' website, who would not expect a connection between this monopoly and such website, and that this monopoly lasted only until April 1, 2007.

(ii)   The Respondents further contend that they do have rights and legitimate interests in respect of the domain names as the domain names have been in legitimate, albeit intermittent, use for gaming purposes since at least July 2000 (in particular, the domain name <grandmonaco.com> was in use for some time in 2000). The Respondents further state that their company PlayShare.com PLC bought the domain names in good faith with effect from November 1, 2006 as part of Grand Gaming Group, an established business that had been trading extensively since June 25, 2006, and that PlayShare.com PLC and its predecessors have made extensive use of the primary names <grandmonaco.com> and <deutschesgrandmonaco.com>, thereby building up a reputation among its customers as proprietors of the name "Grand Monaco", including a network of relationships with agencies and affiliated third parties. The disputed domain names are vital to the Respondents' business and the Respondents would not have acquired Grand Gaming Group had they known of any risk related to the underlying domain names. Finally, the Respondents contend that no adverse inference should be drawn from the disclaimer, which was put in place by the previous owners of the domain names on October 7, 2006.

(iii)   The Respondents finally contend that the domain names were neither registered nor being used in bad faith as there is no reference on the websites under the domain names to the Complainant's business, in particular not its casino. The Respondents claim to enjoy an independent reputation in the name "Grand Monaco", which had been on the Register without being challenged for six years and had been used extensively at various times during such period before the Respondents acquired the disputed domain names. The disputed domain names are based on the geographical word "Monaco" which is not (part of) the Complainant's name. Even if they are part of a registered trademark, geographical names may not be monopolized, especially not if they are particularly attractive because of the glamorous associations they evoke as in the present case.

With regard to subsequent litigation, the Respondents contend that the only courts of Mutual Jurisdiction under paragraph 3(b)(xiii) of the Rules are the courts of England and Wales. They argue that they have not entered into a registration agreement with the registrar but only a *transfer agreement*, which does not include a submission to the courts of the Registrar's location for disputes concerning or arising from the use of the domain name, while the definition of Mutual Jurisdiction as in paragraph 1 of the Rules stipulates that the domain name holder must have submitted in its *registration agreement* to the jurisdiction of the principal office of the Registrar for court adjudication of this type of disputes.

### 6. Discussion and Findings

The first point to be dealt with is the admissibility of the Complainant's Reply and the relevance of the correspondence stimulated by such supplemental submission.

The Rules do not allow the parties to file supplemental submissions on their own volition and paragraph 12 provides that a Panel may in its sole discretion request further statements or documents from either of the parties. Thus, no party has the right to insist upon the admission of additional arguments or evidence.

Grounds justifying new submissions are above all the existence of new pertinent facts that did not arise until after the complaint was filed. For instance, if the respondent raises objections that could not have been anticipated when the complaint was filed, the panel can give the complainant a right to reply to the submission or may accept the complainant's unsolicited additional submission (see *Universal City Studios, Inc. v. G.A.B. Enterprises*, WIPO Case No. D2000-0416 - <fieldofdreams.com>; *QNX Software Systems Ltd. v. Future Media Architects, Inc. and Thunayan K AL-Ghanim*, WIPO Case No. D2003-0921 - <qnx.info>; *Goldline International, Inc. v. Gold Line*, WIPO Case No. D2000-1151 - <goldline.com>).

The Complainant does not cite any exceptional circumstances necessitating further submissions, nor does the Reply itself disclose any relevant new facts or legal authority not available at the time the Complaint was submitted. Instead, the Complainant appears to have submitted the Reply solely to reciprocate the arguments presented in the Response. Such a reply is not justified under the Rules.

Therefore, the Panel elects not to accept the Complainant's supplemental submission and supporting documents and has not relied on them in reaching this decision. The same applies to the subsequent submissions by both parties.

Second, the Respondents initiated an argument on the competent court of Mutual Jurisdiction. When contending that only the transfer agreement with the Registrar is relevant in this regard, they ignore the fact that the continued registration of disputed domain names with Go Daddy Software is subject to such registrar's registration agreement. According to the Panel's own research, the Transfer Agreement includes a provision submitting transferees to the original domain name registration agreement, as its section 7 reads as follows: "You understand that this is a request for a domain name transfer of registrars. By acceptance of this Transfer Agreement, you are requesting that the domain name registration be transferred from the current registrar to Go Daddy. As the current authorized Registrant of the domain name(s), you agree to authorize this transfer by notifying your Administrative contact of his/her responsibilities with respect to this transfer. You acknowledge that you and Go Daddy have entered into a Domain Name Registration Agreement (hereinafter referred to as 'Registration Agreement'). You have read, understood, and agree to be legally bound by the agreements that govern all domain names registered through Go Daddy as found on the legal agreements page, including the Domain Name Registration Agreement; the dispute policy; this Agreement; any Go Daddy policies and procedures that are or may be published from time to time by Go Daddy, ICANN, and/or the Registry Administrator chosen by ICANN." The registration agreement, in turn, establishes the registrar's location as possible Mutual Jurisdiction, which has therefore validly been selected by the Complainant in this case and confirmed by Go Daddy Software in its communication with the Center dated March 15, 2007. As a result, Mutual Jurisdiction under paragraph 3(b)(xiii) of the Rules lies with the courts of Scottsdale, Arizona, United States of America.

Under paragraph 4(a) of the Policy, the Complainant must prove that each of the following three elements are present:

(i)  the domain name is identical or confusingly similar to the Complainant's trademark; and

(ii)  the Respondent has no rights or legitimate interests in respect of the domain name; and

(iii)  the domain name has been registered and is being used in bad faith.

## A.    Identical or Confusingly Similar

The Respondents question the inherent registrability of the Complainant's mark CASINO DE MONACO. However, as the Complainant submitted evidence of the registration of this mark, its possibly descriptive character is not relevant with respect to the requirements of paragraph 4(a)(i) of the Policy. It is not for the Panel to judge the validity of a trademark registered with an official trademark office (cf. *La Société Anonyme des Bains de Mer et du Cercle des Étrangers à Monaco v. Thomas Proud*, WIPO Case No. D2000-1316 - <casinodemonaco.com>).

In order to compare the disputed domain names to the Complainant's marks, both designations must be compared as a whole (cf. *La Société des Bains de Mer et du Cercle des Étrangers à Monaco v. Martini Bt.*, WIPO Case No. D2000-1318 - <casino-monaco.com>). However, the specific top level domain name is to be left out as it is not an element of distinctiveness that can be taken into consideration when evaluating the identity and similarity of the Complainant's trademark and the disputed domain name (cf. *Magnum Piering, Inc. v. The Mudjackers and Garwood S. Wilson, Sr.*, WIPO Case No. D2000-1525 - <magnumpiering.com> et al.; *Phenomedia AG v. Meta Verzeichnis Com*, WIPO Case No. D2001-0374 - <moor-huhn.com>).

While the Complainant does not enjoy trademark rights in the geographical locations "Monaco" or "Monte-Carlo" as such, it is the combination of these with the term "casino" that distinguishes the Complainant's marks and points to the Complainant's famous casino.

Next to the word "Monaco", the disputed domain names all contain the additional element "grand" that is strongly linked to the gambling industry and, next to the location Monaco, evokes the Casino of Monte-Carlo (cf. *Société des Bains de Mer et du Cercle des Étrangers à Monaco v. None*, WIPO Case No. D2004-0415 - <monte-carlogrand.com> et al.; *Société des Bains de Mer et du Cercle des Étrangers à Monaco v. Corril Holding N.V.*, WIPO Case No. D2005-1342 - <montecarlograndcasino.com>). It is a conceptual similarity that exists here between the Complainant's marks and the disputed domain names. As a general principle, such similarity can be sufficient to find for confusing similarity, even in the absence of a strong visual or phonetical similarity, based on the idea a certain phrase suggests. The domain names <grand-monaco.com>, <grandmonaco.com>, <grandmonaco.net> and <grandmonaco.org> are therefore confusingly similar to the Complainant's mark CASINO DE MONACO.

The rest of the disputed domain names contain further elements. Where the word "casino" is added, the conceptual, visual and phonetical similarity with the Complainant's mark CASINO DE MONACO is even stronger. Thus, the domain names <casinograndmonaco.com>, <casinograndmonaco.net>,

<casinograndmonaco.org>, <grandmonacocasinoclub.com>,
<grandmonacocasinoclub.net>, <grandmonacocasinoclub.org>,
<grand-monaco-casino.com>, <grandmonacocasino.com>, <grandmonacocasino.net>
and <grandmonacocasino.org> are also confusingly similar to the Complainant's mark
CASINO DE MONACO.

Finally, there are the disputed domain names containing "Monaco", "grand" and
additional generic elements, i.e. <deutschesgrandmonaco.com>,
<grandmonacoayda.com>, <grandmonacoayuda.com>, <grandmonacobingo.com>,
<grandmonacobingo.net>, <grandmonacoclub.com>, <grandmonacocraps.com>,
<grandmonacogames.com>, <grandmonacogames.net>, <grandmonacogaming.com>,
<grandmonacogaming.net>, <grandmonacohost.com>, <grandmonacohosts.com>,
<grandmonacolottery.com>, <grandmonacolottery.net>, <grandmonacolotto.com>,
<grandmonacolounge.com>, <grandmonacomahjong.com>,
<grandmonacomillions.com>, <grandmonacomillions.net>,
<randmonacomillions.org>, <grandmonaconews.com>,
<grandmonacoonlinecasino.com>, <grandmonacoonlinegaming.com>,
<grandmonacoonlinepoker.com>, <grandmonacopartners.com>,
<grandmonacoplayersclub.com>, <grandmonacoplayersclub.net>,
<grandmonacopokerclub.com>, <grandmonacopokerclub.net>,
<grandmonacopokerclub.org>, <grand-monaco-poker.com>,
<grandmonacopoker.com>, <grandmonacopoker.net>, <grandmonacopoker.org>,
<grandmonacopromotions.com>, <grandmonacoracebook.com>,
<grandmonacoracebook.net>, <grandmonacoracebook.org>,
<grandmonacorewards.com>, <grandmonacoskillgames.com>,
<grandmonacoskillgames.net>, <grandmonacoslots.com>,
<grandmonacosportsbook.com>, <grandmonacosportsbook.net>,
<grandmonacosports.com>, <grandmonacosports.net>, <grandmonacostore.com>,
<grandmonacosupport.com>, <grandmonacovideopoker.com>,
<pokergrandmonaco.net> and <pokergrandmonaco.org>. In no case does the addition
of the descriptive term destroy the conceptual similarity between the disputed domain
name and the Complainant's mark as described above, regardless of whether the
generic term added is related to gambling or not and regardless of whether the
descriptive term includes a typographical error as in <grandmonacoayda.com> (instead
of "ayuda" which is Spanish and means "help"). As a result, these domain names are
confusingly similar to the Complainant's mark CASINO DE MONACO as well.

The Panel wishes to point out that confusing similarity is also given between all of the
disputed domain names and the Complainant's well-known mark CASINO DE
MONTE-CARLO. As many previous UDRP panels have found, Monte-Carlo is
commonly associated with the State of Monaco (cf. *Société des Bains de Mer et du
Cercle des Étrangers à Monaco v. Empire Online Ltd.*, WIPO Case No. D2006-0289 -
<monacogoldcasino.com> with further references). The geographical locations
"Monaco" and "Monte-Carlo" are therefore interchangeable if used together with the
noun "casino".

It is undisputed that the Complainant's mark CASINO DE MONTE-CARLO is well-
known and enjoys a substantial reputation. This is in the view of the Panel regardless
of whether the Complainant's exclusive concession for gambling in Monaco ended in
April 2007 or not.

As a result, the domain names are confusingly similar to the Complainant's trademark
CASINO DE MONACO as well as to the Complainant's trademark CASINO DE
MONTE-CARLO under paragraph 4(a)(i) of the Policy.

**B.  Rights or Legitimate Interests**

Paragraph 4(c) of the Policy sets out three illustrative circumstances as examples which, if established by the respondent, shall demonstrate its rights to or legitimate interests in the domain name for purposes of paragraph 4(a)(ii) of the Policy, i.e.

(i)  before any notice to the respondent of the dispute, the use by the respondent of, or demonstrable preparations to use, the domain name or a name corresponding to the domain name in connection with a *bona fide* offering of goods or services;  or

(ii)  the respondent (as an individual, business or other organization) has been commonly known by the domain name, even if the respondent has acquired no trademark or service mark rights;  or

(iii)  the respondent is making a legitimate non-commercial or fair use of the domain name, without intent for commercial gain to misleadingly divert customers or to tarnish the service marks at issue.

As the Respondents wish to rely on paragraph 4(c)(i) of the Policy, the question is whether they used the disputed domain names in connection with a *bona fide* offering of goods or services. It is hard to imagine that they did not know about the Complainant and its activities with a view to the disclaimer on the websites under all of the active disputed domain names and the fact that the Respondent Max Wright explicitly acknowledges the "substantial reputation in the name "Casino de Monte Carlo'" and that such "is the name by which the Complainant's main Casino is known the world over". Even if the Respondents wrongly assumed that the disputed domain names were not confusingly similar to the Complainant's mark CASINO DE MONTE –CARLO, this erroneous legal conclusion would not be sufficient to consider the Respondents' offering of services as being in good faith, as they were well aware of the underlying facts. It is a general legal principle that a mistake or error of law (as opposed to an error of fact) is, at least where it can be avoided, not a justification or an exculpation and therefore irrelevant. The buyer of a domain name must always anticipate the possibility of cyber squatting procedures. Moreover, at the time of the acquisition of the domain names in 2006, the Respondents would have found many decisions against holders of domain names very similar to the disputed domain names had they done any searches. They have therefore not offered their services in good faith.

Whether any of the Respondents' predecessors used (some of) the disputed domain names in good faith at some earlier stage is not relevant here, as the Respondents themselves must have acted *bona fide* and they can only have done so after the acquisition of the disputed domain names. Nor does it make any difference that the Respondents' business will allegedly suffer damages in case the domain names are transferred to the Complainant – the mere fact that the Respondents incurred expenses and have invested a sum of money in the domain names does not confer a legitimate right or interest onto them (cf. *Société des Bains de Mer et du Cercle des Étrangers à Monaco v. Javier Llorens*, WIPO Case No. D2000-1319 - <casinomonaco.net>).

To sum up, the Respondents did not use the domain names in connection with a *bona fide* offering of goods or services under paragraph 4(c)(i) of the Policy.

The Respondents further contend that PlayShare and its predecessors have built up an independent reputation of the name "Grand Monaco", thus referring to paragraph 4(c)(ii) of the Policy. However, this allegation is not supported by any

evidence whatsoever, and the mere allegation is not sufficient to meet the Respondents' burden of proof after the Complainant has established *prima facie* that the Respondents do not enjoy rights to or legitimate interests in the disputed domain names. Therefore, the Respondents cannot rely on paragraph 4(c)(ii) of the Policy either.

As a result, the Respondents cannot claim rights to or legitimate interests in the disputed domain names under paragraph 4(a)(ii) of the Policy.

## C.   Registered and Used in Bad Faith

Paragraph 4(b) of the Policy sets out four illustrative circumstances, which, though not exclusive, shall be evidence of the registration and use of the domain name in bad faith for purposes of paragraph 4(a)(iii) of the Policy, i.e.

(i)    circumstances indicating that the respondent has registered or acquired the domain name primarily for the purpose of selling, renting or otherwise transferring the domain name registration to the complainant who is the owner of the trademark or service mark or to a competitor of that complainant, for valuable consideration in excess of the respondent's documented out-of-pocket costs directly related to the domain name; or

(ii)   the respondent has registered the domain name in order to prevent the owner of the trademark or service mark from reflecting the mark in a corresponding domain name, provided that the respondent has engaged in a pattern of such conduct; or

(iii)  the respondent has registered the domain name primarily for the purpose of disrupting the business of a competitor; or

(iv)   by using the domain name, the respondent has intentionally attempted to attract, for commercial gain, Internet users to its website or other on-line location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of the respondent's website or location or of a product or service on its website or location.

The circumstances mentioned in paragraph 4(b) of the Policy are not exclusive, while the two elements of the third requirement of the Policy are cumulative conditions: the Complainant must show that the domain name was registered in bad faith and is being used in bad faith.

As outlined above, the Respondents (professionals in the gambling business) were well aware of the Complainant's rights in the name and trademark CASINO DE MONTE-CARLO when they registered (acquired) the disputed domain names, which were therefore registered in bad faith.

To the extent that the disputed domain names resolve to an active website (as most of them do), they all lead Internet users to the same site, where visitors can play online casino games by downloading casino software. This type of bad faith use is addressed by paragraph 4(b)(iv) of the Policy - the Respondents intentionally attempt to attract, for commercial gain, Internet users to their website by creating a likelihood of confusion with the Complainant's mark as to the source, sponsorship, affiliation, or endorsement of the Respondents' website. Again, this is regardless of whether the Respondents arrived at the correct legal conclusion regarding confusing similarity between the disputed domain names and the Complainant's mark CASINO DE

MONTE-CARLO: The disputed domain names attract Internet users due to their suggestion of affiliation with the Complainant's well-known mark of which the Respondents have always been aware.

To the extent, however, that the Respondents have not yet constructed websites under the disputed domain names (as is the case for some of them, which are parked "courtesy of GoDaddy.com"), this behavior is to be considered as a case of passive holding, which corresponds to an active use (cf. *Telstra Corporation Limited v. Nuclear Marshmallows*, WIPO Case No. D2000-0003 - <telstra.org>; *American Home Products Corporation v. Haymont Veterinary Clinic*, WIPO Case No. D2000-0502 - <etogesic.com>; *Jupiters Limited v. Aaron Hall*, WIPO Case No. D2000-0574 - <jupiters-casino.com>; *Teledesic LLC v. McDougal Design*, WIPO Case No. D2000-0620 - <internet-in-the-sky.org> with further references), mainly for two reasons: the strong reputation of the Complainant's CASINO DE MONTE-CARLO mark on the one hand and the fact that it is impossible to conceive a good faith use of such domain names by the Respondents that would not be illegitimate on the other hand.

All disputed domain names are therefore being used in bad faith pursuant to paragraph 4(a)(iii) of the Policy.

As a result, the requirements of paragraph 4(a)(iii) of the Policy have also been fulfilled.

7.    **Decision**

For all the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the domain names

<casinograndmonaco.com>
<casinograndmonaco.net>
<casinograndmonaco.org>
<deutschesgrandmonaco.com>
<grandmonacoayda.com>
<grandmonacoayuda.com>
<grandmonacobingo.com>
<grandmonacobingo.net>
<grandmonacocasinoclub.com>
<grandmonacocasinoclub.net>
<grandmonacocasinoclub.org>
<grand-monaco-casino.com>
<grandmonacocasino.com>
<grandmonacocasino.net>
<grandmonacocasino.org>
<grandmonacoclub.com>
<grand-monaco.com>
<grandmonaco.com>
<grandmonacocraps.com>
<grandmonacogames.com>
<grandmonacogames.net>
<grandmonacogaming.com>
<grandmonacogaming.net>
<grandmonacohost.com>

&lt;grandmonacohosts.com&gt;
&lt;grandmonacolottery.com&gt;
&lt;grandmonacolottery.net&gt;
&lt;grandmonacolotto.com&gt;
&lt;grandmonacolounge.com&gt;
&lt;grandmonacomahjong.com&gt;
&lt;grandmonacomillions.com&gt;
&lt;grandmonacomillions.net&gt;
&lt;grandmonacomillions.org&gt;
&lt;grandmonaco.net&gt;
&lt;grandmonaconews.com&gt;
&lt;grandmonacoonlinecasino.com&gt;
&lt;grandmonacoonlinegaming.com&gt;
&lt;grandmonacoonlinepoker.com&gt;
&lt;grandmonaco.org&gt;
&lt;grandmonacopartners.com&gt;
&lt;grandmonacoplayersclub.com&gt;
&lt;grandmonacoplayersclub.net&gt;
&lt;grandmonacopokerclub.com&gt;
&lt;grandmonacopokerclub.net&gt;
&lt;grandmonacopokerclub.org&gt;
&lt;grand-monaco-poker.com&gt;
&lt;grandmonacopoker.com&gt;
&lt;grandmonacopoker.net&gt;
&lt;grandmonacopoker.org&gt;
&lt;grandmonacopromotions.com&gt;
&lt;grandmonacoracebook.com&gt;
&lt;grandmonacoracebook.net&gt;
&lt;grandmonacoracebook.org&gt;
&lt;grandmonacorewards.com&gt;
&lt;grandmonacoskillgames.com&gt;
&lt;grandmonacoskillgames.net&gt;
&lt;grandmonacoslots.com&gt;
&lt;grandmonacosportsbook.com&gt;
&lt;grandmonacosportsbook.net&gt;
&lt;grandmonacosports.com&gt;
&lt;grandmonacosports.nct&gt;
&lt;grandmonacostore.com&gt;
&lt;grandmonacosupport.com&gt;
&lt;grandmonacovideopoker.com&gt;
&lt;pokergrandmonaco.net&gt;&gt;
&lt;pokergrandmonaco.org&gt;

be transferred to the Complainant.

Brigitte Joppich
Sole Panelist

Dated: May 25, 2007

# EXHIBIT # 45

Cynthia Dawn Beck - #022345
SCHMEISER, OLSEN & WATTS, LLP
18 E. University Drive, Suite 101
Mesa, Arizona 85201
Telephone: (480) 655-0073

Attorney for Plaintiffs

### UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| PLAYSHARE PLC, a UK corporation,<br>LUCAN TOH, an individual; and<br>MAX WRIGHT, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>SOCIETE DES BAINS DE MER ET<br>DU CERCLE DES ETRANGERS A<br>MONACO, a foreign corporation,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR<br>DECLARATORY JUDGMENT** |

Plaintiffs, by and through undersigned counsel, bring this Complaint against

Defendant Societe Des Bains De Mer Et Du Cercle Des Etrangers A Monaco ("SBM")

alleges as follows:

### INTRODUCTION

1.      This action is requesting a declaration that Plaintiffs are entitled to the use

of the disputed domain names listed below and that there has been no infringement of

U.S. Trademark Registration Number 3,031,006 (hereinafter, the "'006" Mark, attached

hereto as Exhibit A) and no infringement of the unregistered mark "CASINO DE

1  MONTE-CARLO" (hereinafter "CDM Mark", collectively the "Marks") owned by

2  Defendant SBM, and that the Marks are invalid and/or unenforceable.  This action

3  arises under the Declaratory Judgment Act, 28 United States Code §§ 2201 and 2202;

4  the Anticybersquatting Consumer Protection Act, 15 United States Code § 1114 and 28

5  United States Code § 1331 (hereinafter "ACPA"; the trademark laws of the United

6  States Title 15 USC § 1051, *et seq.*; and the Uniform Dispute Resolution Policy

7  paragraph 4(K) (hereinafter "Policy").

8  

9           casinograndmonaco.com
10          casinograndmonaco.net
            casinograndmonaco.org
11          deutschesgrandmonaco.com
            grandmonacoayda.com
12          grandmonacoayuda.com
            grandmonacobingo.com
13          grandmonacobingo.net
            grandmonacocasinoclub.com
14          grandmonacocasinoclub.net
            grandmonacocasinoclub.org
15          grand-monaco-casino.com
            grandmonacocasino.com
16          grandmonacocasino.net
            grandmonacocasino.org
17          grandmonacoclub.com
            grand-monaco.com
18          grandmonaco.com
            grandmonacocraps.com
19          grandmonacogames.com
            grandmonacogames.net
20          grandmonacogaming.com
            grandmonacogaming.net
21          grandmonacohosts.com
            grandmonacohosts.com
22          grandmonacolottery.com
            grandmonacolottery.net
23          grandmonacolotto.com
            grandmonacolounge.com
24  

25  

                                    − 2 −

grandmonacomahjong.com
grandmonacomillions.com
grandmonacomillions.net
grandmonacomillions.org
grandmonaco.net
grandmonaconews.com
grandmonacoonlinecasino.com
grandmonacoonlinegaming.com
grandmonacoonlinepoker.com
grandmonaco.org
grandmonacopartners.com
grandmonacoplayersclub.net
grandmonacopokerclub.com
grandmonacopokerclub.net
grandmonacopokerclub.org
grand-monaco-poker.com
grandmonacopoker.com
grandmonacopoker.net
grandmonacopoker.org
grandmonacopromotions.com
grandmonacoracebook.com
grandmonacoracebook.net
grandmonacoracebook.org
grandmonacorewards.com
grandmonacoskillgames.com
grandmonacoskillgames.net
grandmonacoslots.com
grandmonacosportsbook.com
grandmonacosportsbook.net
grandmonacosports.com
grandmonacosports.net
grandmonacostore.com
grandmonacosupport.com
grandmonacovideopoker.com

(Hereinafter collectively "Subject Domain Names".)

## THE PARTIES

2.      Plaintiff Lucan Toh is a foreign national residing in the United Arab Emirates.

- 3 -

3.      Plaintiff Max Wright is a foreign national residing in the United Kingdom

4.      Plaintiff PlayShare PLC is a foreign corporation organized under the laws of the United Kingdom.

5.      Upon information and belief, Defendant SBM is a foreign corporation organized under the laws of the Principality of Monaco.

6.      Plaintiffs Lucan Toh or Max Wright own/owned and have registered the Subject Domain Names with GoDaddy.com, Inc on behalf of PlayShare PLC.  Plaintiff PlayShare PLC, acquired the rights in the Subject Domain Names from the individual registrants effective November 1, 2006.  Plaintiff Lucan Toh resigned as a director of Playshare PLC in November 2006 and commenced the process of transferring all domain names to Plaintiff Max Wright.

7.      Plaintiffs Max Wright and Playshare PLC  offer online gambling services.

8.      Upon information and belief, Defendant operates a casino under the name "CASINO DE MONTE-CARLO."  Defendant owns the registration of the '006 Mark and claims ownership of the unregistered mark CDM Mark.

10.     GoDaddy.com, Inc. is an Arizona corporation in good standing, with a principal place of business located at 14455 North Hayden Road, #219, Scottsdale, Arizona 85260.  GoDaddy.com, Inc. is an Internet Corporation for Assigned Names and Numbers (hereinafter "ICANN") accredited Registrar.

**JURISDICTION AND VENUE**

11.     Jurisdiction of this Court arises under the Federal Declaratory Judgments Act, Title 28, United States Code, Sections 2201 and 2202; the ACPA, 15 United States

- 4 -

Code § 1114 and 28 United States Code § 1331; Title 28, United States Code, Section 1338(a) and 15 United States Code, Section 1121.

12.     Venue properly lies in this district pursuant to 28 U.S.C. §§ 1391(b).

## BACKGROUND

13.     On or between October 23, 2004 and October 23, 2006, Plaintiffs Lucan Toh and Max Wright acquired the Subject Domain Name registrations on behalf of PlayShare PLC and its predecessors.

14.     On February 20, 2007, Defendant filed an action with the World Intellectual Property Organization (hereinafter "WIPO") Arbitration and Mediation Center alleging that the Subject Domain Names are all confusingly similar to its Marks.

15.     A WIPO panel ruled against Plaintiffs PlayShare PLC, Lucan Toh and Max Wright and ordered that all of the Subject Domain Names be transferred to SBM.

## COUNT I

## DECLARATORY JUDGMENT THAT PLAINTIFFS' USE OF THE SUBJECT DOMAIN NAMES IS IN COMPLIANCE WITH THE ACPA

16.     Plaintiffs incorporate each of the statements and allegations set forth in paragraphs 1-15 above as if fully set forth herein.

17.     SBM's attempt to acquire the Subject Domain Names constitutes Reverse Domain Name Hijacking under the ACPA for the following reasons:

(a)     Plaintiffs are the registrants of the Subject Domain Names.

(b)     Plaintiffs' domain names were ordered transferred pursuant to the WIPO arbitration proceeding to SBM.

- 5 -

(c)    SBM has notice of the claim concurrent herewith.

(d)    Plaintiffs' use of the Subject Domain Names is not unlawful, as the Subject Domain Names are not confusingly similar to the Marks and the use of the Subject Domain Names is not in bad faith.

18.    Plaintiffs are entitled to a declaration that their use of the Subject Domain Names is in compliance with the ACPA.

## COUNT II

### DECLARATORY JUDGMENT OF INVALIDITY AND UNENFORCEABILITY OF THE '006 MARK AND NON-INFRINGEMENT

20.    Plaintiffs incorporate each of the statements and allegations set forth in paragraphs 1-19 above as if fully set forth herein.

21.    The '006 Mark is invalid, unenforceable, and void or that Plaintiffs' use of the Subject Domain Names does not infringe the '006 Mark, for one or more of the following reasons:

(a)    The '006 Mark is invalid due to repeated fraud on the United States Patent and Trademark Office (hereinafter "USPTO") without which the trademark registration would not have issued.

(b)    The '006 Mark is invalid due to repeated misuse of the trademark through Defendant's repeated attempts to enforce a trademark that it knows to be invalid due to fraud on the United States Trademark Office.

(c)    The '006 Mark is invalid due to SBM's failure to disclaim the geographically descriptive term "MONACO" apart from its use within the '006 Mark as a whole.

(d)    The '006 Mark is invalid due to SBM's failure to use the mark in commerce as defined under the trademark laws of the United States.

(e)    The Subject Domain Names do not infringe the Mark as the Subject Domain Names are not confusingly similar to the '006 Mark.

(f)    The Subject Domain Names do not infringe the '006 Mark as the Subject Domain Names and the Mark are not used in conjunction with similar services or products.

(g)    Defendant's fraud on the USPTO and/or failure to use the '006 Mark in commerce renders it unenforceable.

22.    Because the '006 Mark is invalid and/or unenforceable, the Plaintiffs are entitled to use of the Subject Domain Names.

23.    Because the Subject Domain Names do not infringe the '006 Mark, the Plaintiffs are entitled to use of the Subject Domain Names.

<u>**COUNT III**</u>

**DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE CDM MARK AND NON-INFRINGEMENT**

24.    Plaintiffs incorporate each of the statements and allegations set forth in paragraphs 1-23 above as if fully set forth herein.

25.    The CDM Mark is unenforceable in the United States because SBM does not use the CDM Mark in commerce as required under 15 USC §§ 1051, 1127.

26.    Even if SBM could show "use in commerce", the Subject Domain Names do not infringe the Mark as the Subject Domain Names are not confusingly similar to the CDM Mark.

27.    Even if SBM could show "use in commerce", the Subject Domain Names do not infringe the CDM Mark as the Subject Domain Names and the Mark are not used in conjunction with similar services or products.

28.    Because the CDM Mark is unenforceable, the Plaintiffs are entitled to use of the Subject Domain Names.

29.    Because the Subject Domain Names do not infringe the CDM Mark, the Plaintiffs are entitled to use of the Subject Domain Names.

**WHEREFORE**, Plaintiffs pray for the following relief:

(a)    Entry of judgment that said Defendant is without right or authority to threaten or to maintain suit against Plaintiffs for alleged infringement of the Marks.

(b)    Entry of judgment that Plaintiffs' use of the Subject Domain Names is in compliance with the ACPA.

(c)    Entry of judgment that the '006 Mark is invalid, unenforceable, and void in law; and that said Mark is not infringed by Plaintiffs because of the making, selling, or using of the Subject Domain Names.

1

2          (d)    Entry of judgment that the CDM Mark is unenforceable and that said

3    Mark is not infringed by Plaintiffs because of the making, selling, or using of the

4    Subject Domain Names.

5          (e)    Entry of judgment that the Plaintiffs are entitled to the use of the Subject

6    Domain Names and for suspension of the WIPO Judgment ordering transfer of the

7    domain names to SBM.

8          (f)    Entry of judgment for Plaintiffs' costs and reasonable attorney fees

9    incurred herein.

10          (g)    For such other and further relief as the Court may deem appropriate.

11                                            SCHMEISER, OLSEN & WATTS LLP

12

13

14                                            By:

15

16                                                  /s/
                                              _____
17                                            CYNTHIA D. BECK
                                              Attorney for Plaintiffs
18

19

20

21

22

23

24

25

# EXHIBIT # 46

1  Cynthia Dawn Beck - #022345
2  SCHMEISER, OLSEN & WATTS, LLP
   18 E. University Drive, Suite 101
3  Mesa, Arizona 85201
   Telephone: (480) 655-0073
4
   Attorney for Plaintiffs
5
6                    UNITED STATES DISTRICT COURT
7                          DISTRICT OF ARIZONA
8  PLAYSHARE PLC, a UK corporation,
   LUCAN TOH, an individual; and
9  MAX WRIGHT, an individual          Case No.  2:07-CV-1203 PGR

10         Plaintiffs,                      **MOTION TO STAY
                                         DEFENDANT'S MOTION TO
11     vs.                               TRANSFER OR, IN THE
                                         ALTERNATIVE, TO DISMISS**
12  SOCIETE DES BAINS DE MER ET
13  DU CERCLE DES ETRANGERS A
    MONACO, a foreign corporation,
14
15         Defendant.
16

17         Plaintiffs Playshare PLC, Lucan Toh and Max Wright (hereinafter "Playshare"),

18  through undersigned counsel, move the court for an order staying the pending Motion to

19  Transfer or, in the Alternative, To Dismiss, and base said motion upon the following

20  grounds:

21
        1.    That there is an action pending in the Southern District of New York, cause
22
              number 07-Civ-4802 (DAB) (RLE) ("New York Action"), which concerns
23
              the same parties and in which the same issues are raised as are raised in the
24
              instant litigation.
25

                                      – 1 –

2. That the New York Action was filed prior to the Complaint in the instant litigation.

3. That Defendants in the New York Action (Playshare) have a pending motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2).

4. That Playshare filed an action for declaratory judgment in the District of Arizona, the court designated as the court of mutual jurisdiction by Societe des Bains de Mer et du Cercle des Etrangers a Monaco (hereinafter "SBM") and the World Intellectual Property Organization (hereinafter "WIPO"), in order to stay implementation of the WIPO judgment dated June 11, 2007.

5. That Defendant in the instant action, SBM, requests that venue be transferred to New York or, alternatively, to dismiss.

6. That by reason of the pendency of said Motion to Dismiss in the New York Action, and its potential dispositive effect on SBM's pending request for transfer of venue in this jurisdiction, it is improper and contrary to the comity of the courts and to the precedents of Federal practice that this court should concurrently litigate such closely related subject-matter, but, on the other hand, it should grant an order staying the pending motion herein until said issues have been tried and determined by the Southern District of New York and then ascertain whether or not any issues presented in the present action are available for consideration by this court.

This motion will be based upon this notice, upon the complaint on file in this action, upon the Memorandum of Law in Support of the Motion to Stay filed concurrently herewith.

RESPECTFULLY SUBMITTED this 1st day of August, 2007.


SCHMEISER, OLSEN & WATTS LLP


By:

_signature_

CYNTHIA D. BECK
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on this 1st day of August, 2007, I electronically transmitted the attached documents to the Clerk's Office using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

John C. West, Esq.

I further certify that on this 31st day of August, 2006, I served the attached document by hand-delivery to:

The Honorable Paul G. Rosenblatt
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 621
401 West Washington Street, SPC 56
Phoenix, Arizona 85003-2118


_signature_


- 3 -

Cynthia Dawn Beck - #022345
SCHMEISER, OLSEN & WATTS, LLP
18 E. University Drive, Suite 101
Mesa, Arizona 85201
Telephone: (480) 655-0073

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| PLAYSHARE PLC, a UK corporation, LUCAN TOH, an individual; and MAX WRIGHT, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>SOCIETE DES BAINS DE MER ET DU CERCLE DES ETRANGERS A MONACO, a foreign corporation,<br><br>Defendant. | Case No. 2:07-CV-1203 PGR<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO STAY DEFENDANT'S MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS** |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.    INTRODUCTION

There are presently two separate proceedings concerning whether Plaintiffs Playshare PLC, Lucan Toh and Max Wright (hereinafter "Playshare") are entitled to the use of the following domain names:

casinograndmonaco.com
casinograndmonaco.net
casinograndmonaco.org
deutschesgrandmonaco.com
grandmonacoayda.com
grandmonacoayuda.com

- 1 -

grandmonacobingo.com
grandmonacobingo.net
grandmonacocasinoclub.com
grandmonacocasinoclub.net
grandmonacocasinoclub.org
grand-monaco-casino.com
grandmonacocasino.com
grandmonacocasino.net
grandmonacocasino.org
grandmonacoclub.com
grand-monaco.com
grandmonaco.com
grandmonacocraps.com
grandmonacogames.com
grandmonacogames.net
grandmonacogaming.com
grandmonacogaming.net
grandmonacohosts.com
grandmonacohosts.com
grandmonacolottery.com
grandmonacolottery.net
grandmonacolotto.com
grandmonacolounge.com
grandmonacomahjong.com
grandmonacomillions.com
grandmonacomillions.net
grandmonacomillions.org
grandmonaco.net
grandmonaconews.com
grandmonacoonlinecasino.com
grandmonacoonlinegaming.com
grandmonacoonlinepoker.com
grandmonaco.org
grandmonacopartners.com
grandmonacoplayersclub.net
grandmonacopokerclub.com
grandmonacopokerclub.net
grandmonacopokerclub.org
grand-monaco-poker.com
grandmonacopoker.com
grandmonacopoker.net
grandmonacopoker.org
grandmonacopromotions.com

1
2
3
4
5
6
7
8
9

        grandmonacoracebook.com
        grandmonacoracebook.net
        grandmonacoracebook.org
        grandmonacorewards.com
        grandmonacoskillgames.com
        grandmonacoskillgames.net
        grandmonacoslots.com
        grandmonacosportsbook.com
        grandmonacosportsbook.net
        grandmonacosports.com
        grandmonacosports.net
        grandmonacostore.com
        grandmonacosupport.com
        grandmonacovideopoker.com

(Hereinafter collectively "Subject Domain Names".)

One of these proceedings is the litigation in which this brief is being filed. The other proceeding is an action pending in the Southern District of New York, 07-Civ-4802 (DAB) (RLE) ("New York Action"). The parties in that case are virtually the same[1] and both cases request declaratory relief, centering around whether Playshare's use of the Subject Domain Names infringes any intellectual property right of SBM.

The New York Action was filed on or about June 6, 2007. Thereafter, the defendants (Playshare) filed a Motion to Dismiss on July 23, 2007 alleging that the Southern District of New York does not have personal jurisdiction over any of the

_____

[1] The New York Action is entitled Societe Des Bains De Mer Et Du Cercle Des Etrangers A Monaco v. Playshare, PLC, Grand Monaco, Ltd., Gameshare (UK) Ltd., Lucan Toh, Max Wright, Hillstead Ltd. However, "Grand Monaco, Ltd." does not exist, "Gameshare (UK) Ltd." does not operate, nor is affiliated with the operation of, any of the Subject Domain Names, and "Hillstead, Ltd." merely processes financial transactions for Playshare and does not make any commercial use of the Subject Domain Names. (See Playshare's Memorandum in Support of Motion to Dismiss in the New York Action pp. 3-4, July 23, 2007, attached hereto as Exhibit 1; See also Declaration of Maxwell Wright in Support of Motion to Dismiss ¶¶ 3-5, July 20, 2007, attached hereto as Exhibit 2.) Thus, the real parties in interest in both cases are identical.

- 3 -

defendants to the action (plaintiffs here), all of whom are foreign entities and/or

individuals. (Exhibit 1, pp. 3-5, 7-17.)

The instant litigation was commenced on June 19, 2007. Thereafter, SBM filed a

Motion to Transfer, requesting that venue be moved to the United States District Court

for the Southern District of New York (SBM's Motion to Transfer or, in the Alternative,

to Dismiss 1:15-18; 6:24-14:1, July 18, 2007 (incorporated herein by reference)), which

motion is still pending. SBM alternatively moves to dismiss Counts II and III of the

Complaint alleging, in part, that the District of Arizona lacks personal jurisdiction over

SBM with regard to those counts of the Complaint. (SBM's Mot. Transfer 1:18-21;

14:6-15:4.) Undersigned counsel contacted counsel for SBM to request that the parties

stipulate to a stay of SBM's pending Motion to Dismiss; however, that request was

denied.

It is expected that hearings on the Motion to Dismiss in the Southern District of

New York will be conducted shortly, which will determine whether that court has

personal jurisdiction to litigate that dispute. The resolution of that motion, when ruled

upon, will determine whether there is a venue to which this matter may be transferred,

and may also be determinative of the jurisdiction issue pled in the alternative in the

instant case.

Because the same parties are involved, the same issues are involved and the

resolution of the pending Motion to Dismiss in the New York Action will, if granted,

dispose of SBM's pending Motion to Transfer or, if denied, may speak to the pending

- 4 -

jurisdictional issues pled in the alternative here, the District Court should stay the present litigation pending the outcome of the pending motion in the first-filed case.

## II.     BACKGROUND

PlayShare is a United Kingdom public limited company with offices at 7 Queen Street, Mayfair, London.  The individual Plaintiffs, Lucan Toh and Max Wright, registered the Subject Domain Names, rights to which were acquired by Playshare on November 1, 2006.  Plaintiff Max Wright is employed by Playshare, which offers online gambling services.

Upon information and belief, SBM is a foreign corporation in the business of operating casinos solely in the Principality of Monaco.  SBM owns U.S. Trademark Registration Number 3,031,006 (hereinafter, the "'006" Mark) for CASINO DE MONACO and currently has an application pending in the United States Patent & Trademark Office (hereinafter "USPTO") for the mark CASINO DE MONTE-CARLO, serial number 76/479,351 (the "CDM" Mark).

It is undisputed that SBM initiated a proceeding against Messrs. Toh and Wright with the World Intellectual Property Organization (hereinafter "WIPO") seeking transfer of the Subject Domain Names.  In its preliminary ruling, the WIPO panel decided in favor of SBM and ordered the Subject Domain Names transferred.  (WIPO Administrative Panel Decision ¶ 7, May 25, 2007, attached hereto as Exhibit 3.)  In that preliminary ruling, and to determine the matter with finality, the WIPO panel noted that SBM designated the "courts of the United States of America where the Registrar is

- 5 -

located as courts of Mutual Jurisdiction under paragraph 3(b)(xiii) of the Rules. The location of the Registrar is Scottsdale, Arizona, United States of America." (Exhibit 3 ¶ 5.) On June 11, 2007, WIPO ordered transfer of the Subject Domain Names within ten business days unless, within the 10-day waiting period, Playshare commenced a legal proceeding against SBM in a court within the mutual jurisdiction selected by SBM. (WIPO Order p. 4, June 11, 2007, attached hereto as Exhibit 4.)

Prior to being served with the Summons and Complaint in this lawsuit, SBM filed its Motion to Transfer or, in the Alternative, to Dismiss on July 18, 2007, which motion is still pending. As noted above, that motion requests a transfer of venue to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), *forum non conveniens* "and the 'first-to-file' rule." (SBM's Mot. Transfer ¶ 1.) Alternatively, the Motion requests dismissal of Counts II and III, only, based in part on a lack of personal jurisdiction over SBM as to those counts.

## III.   ANALYSIS

### A.   Because The Pending Motion In The Southern District Of New York Will Have A Determinative Effect On SBM's Motion To Transfer, The Present Pending Motion Should Be Stayed To Await That Outcome.

It is well settled that motions to stay are within the discretion of the District Court.

A motion to stay is addressed to the sound discretion of the court, and the denial or grant of a stay is predicated upon the inherent power of a court to control its docket. . . [However, t]here is no sound reason why litigation between the same parties and embracing common issues be prosecuted simultaneously. Not only is an economic hardship imposed upon the parties, but litigation in two tribunals at the same time is a luxury not compatible with the efficient administration of justice.

- 6 -

1

2  *Research Corp. v. Radio Corp. of America*, 181 F. Supp. 709, 710-711(D. Del. 1960);

3  *see also Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972)). Where a stay is

4  proposed, the competing interests that will be affected by granting or refusing to grant

5  the stay should be weighed. *Filtrol Corp.*, 467 F.2d at 244.

6

7  > Among these competing interests are the possible damage which may
> result from the granting of a stay, the hardship or inequity which a party
> may suffer in being required to go forward, and the orderly course of

8  > justice measured in terms of the simplifying or complicating of issues,
> proof, and questions of law which could be expected to result from a stay.

9

10  *Id.*

11       In the present litigation, Playshare is seeking a declaration that there has been no

12  infringement of either the '006 Mark or the CDM Marks by Playshare's use of its

13  Domain Names. Prior to the instant suit, SBM brought suit in the New York Action

14  alleging, among other claims, unfair competition, trademark infringement and

15  cybersquatting, based upon Playshare's use of the Subject Domain Names.

16

17       In the first-filed case in New York, Playshare moved to dismiss the action

18  arguing that the Southern District of New York does not have personal jurisdiction over

19  any of the named defendants. In this action, SBM is seeking to transfer venue to the

20  Southern District of New York. However, should Playshare's motion in the New York

21  case be granted, it will render the motion to transfer venue in this case moot. Similarly,

22  many of the arguments raised in Playshare's motion to dismiss in the New York Action

23  are the same, or similar to, the personal jurisdiction issues raised in SBM's alternatively

24  pled motion to dismiss in the instant case. Thus, should Playshare's motion to dismiss

25

in the New York Action be denied, it may have a determinative effect on the alternatively pled motion to dismiss in the Arizona case.

Because resolution of the pending motion to dismiss in the New York Action could potentially resolve, or at least narrow or simplify, the issues raised in SBM's pending Motion to Transfer, requiring Playshare to simultaneously litigate the motion pending in Arizona would be imposing needless and significant hardship on Playshare and require significant duplication of effort by the parties and this Court.

A stay, however, would not inflict harm on SBM. Apparently, SBM's venue of preference is the Southern District of New York. The resolution of the motion pending in New York will establish whether or not a case may lie in that preferred jurisdiction, resolving or – at worst – narrowing the issues pending in its Motion to Transfer. Additionally, as the personal jurisdiction issues pending in both motions turn on whether the foreign entities and individuals have sufficient contacts in the United States to maintain suit here, resolution of the motion pending in the New York Action will narrow or simplify the personal jurisdiction issues pending here. Therefore, if the pending New York motion resolves some or all of the issues in the Motion to Transfer, SBM will have saved all of the money that would be required to litigate in two parallel actions. A stay of the pending Arizona motion would not cause harm, let alone irreparable harm, to SBM.

Although SBM peremptorily denied Playshare's request that it consent to the stay requested by the motion, weighing all of the competing interests herein, the District

of Arizona Court should impose a stay on the present Motion to Transfer pending the outcome of the Motion to Dismiss in the New York Action.

**B.    The Pending Motion In The Arizona Jurisdiction Should Be Stayed Pursuant To The First To "First-To-File" Rule.**

Playshare concedes (as argued by SBM) that staying proceedings in a later-filed lawsuit in which the parties, claims and legal issues are substantially identical, is required pursuant to the "first-to-file" rule. *In re Salomon Smith Barney Mutual Fund Fees Litigation*, 441 F. Supp. 2d 579, 608 (S.D. N.Y. 2006). "Where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience . . . or . . . special circumstances . . . giving priority to the second." *Id.* (quoting *First City Nat'l Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989). Considerations of judicial administration and conservation of resources require deference to the first filing. *Id.*

In this case, the New York Action is the first-filed case and the outcome of pending motions there – where they are substantially identical to those in the instant case – should be given deference under the first-to-file rule. There can be no showing of balance of convenience in this case to give priority to the second case, as SBM asserts in its Motion to Transfer that New York is a more convenient forum. As there are no countervailing hardships imposed, nor any other special circumstances present, priority should rest with the first-filed case.

Pursuant to the first-to-file rule, then, SBM's Motion to Transfer pending in Arizona should be stayed pending the outcome of the motion pending in the New York Action.

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that SBM's Motion to Transfer or, In the Alternative, to Dismiss be stayed pending the outcome of the motions in the New York Action.

RESPECTFULLY SUBMITTED this 1st day of August, 2007.

SCHMEISER, OLSEN & WATTS LLP

By:

CYNTHIA D. BECK
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on this 1st day of August, 2007, I electronically transmitted the attached documents to the Clerk's Office using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

John C. West, Esq.

I further certify that on this 1st day of August, 2007, I served the attached document by hand-delivery to:

The Honorable Paul G. Rosenblatt
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 621
401 West Washington Street, SPC 56
Phoenix, Arizona 85003-2118

- 10 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SOCIETE DES BAINS DE MER ET DU          :
CERCLE DES ETRANGERS A MONACO,          :
                                        :
                              Plaintiff, :       Case No. 07 Civ.
                                                 4802(DAB)(RLE)
                     vs.                 :
                                         :
                                         :
PLAYSHARE PLC, GRAND MONACO LTD.,        :       NOTICE OF MOTION
GAMESHARE (UK) LTD., LUCAN TOH,          :
MAXWELL WRIGHT, HILSTEAD LTD.,           :
                                         :
                            Defendants. :
-----------------------------------------------------------x

 

**PLEASE TAKE NOTICE THAT**, upon the accompanying Memorandum in Support of

Motion to Dismiss, the annexed Declaration of Maxwell Wright, sworn to July 20, 2007, and all

of the pleadings and proceedings had herein, Defendants PlayShare PLC, "Grand Monaco Ltd.",

Gameshare (UK) Ltd., Lucan Toh, Maxwell Wright and Hillstead Ltd., by their attorneys, White

& Case LLP, hereby move before the Honorable Deborah A. Batts, United States District Judge,

at the U.S. Courthouse, 500 Pearl St., Room 2510, New York, NY 10007, for an Order

dismissing Plaintiff's Complaint in its entirety pursuant to Rule 12(b)(2) of the Federal Rules of

Civil Procedure for lack of personal jurisdiction over any of the defendants, and for such other

and further relief as the Court may deem just and proper.

Dated: New York, New York                        WHITE & CASE LLP
     July  23, 2007

                                  Jonathan E. Moskin (JM 9814)
                                  Adam M. Turkel
                                  WHITE & CASE LLP
                                  1155 Avenue of the Americas
                                  New York, NY 10036
                                  (212) 819-8200

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of July, 2007, I served a copy of **NOTICE OF MOTION** on the attorneys for the Plaintiff, as designated below, by ECF Filing as follows:

> Robert L. Raskopf
> Alan Blum
> Lori E. Weiss
> QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
> 51 Madison Avenue, 22nd Floor
> New York, NY 10010

> s\Jonathan Moskin
> Jonathan E. Moskin
> WHITE & CASE LLP
> 1155 Avenue of the Americas
> New York, New York 10036

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

SOCIETE DES BAINS DE MER ET DU        :
CERCLE DES ETRANGERS A MONACO,        :

                            Plaintiff, :        Case No. 07 Civ. 4802
                                                    (DAB)(RLE)
            vs.
                                      :

PLAYSHARE PLC, GRAND MONACO LTD.,     :
GAMESHARE (UK) LTD., LUCAN TOH,
MAXWELL WRIGHT, HILSTEAD LTD.,        :

                          Defendants. :
-------------------------------------------------------x


# DEFENDANTS' MEMORANDUM
## IN SUPPORT OF MOTION TO DISMISS

Jonathan E. Moskin (JM 9814)
Adam M. Turkel
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 819-8200
Attorney for Defendants

# TABLE OF CONTENTS

I      PRELIMINARY STATEMENT ........................................................................ 1

II     FACTUAL BACKGROUND .......................................................................... 3

III    THE COMPLAINT ...................................................................................... 5

IV    ARGUMENT ............................................................................................... 7

    (a) Defendants Do Not Transact Business In New York Within the Meaning of CPLR § 302(a)(1) ........................................................................................... 8
    (b) Defendants Have Committed No Tortious Acts In the State Within the Meaning of CPLR § 302(a)(2) ........................................................................................... 13
    (c) Defendants Have Committed No Tortious Acts Outside the State Causing Injury In New York Within the Meaning of CPLR § 302(a)(3)(ii) ......................................... 14
    (d) The Exercise of Jurisdiction Would Be Unconstitutional ............................... 15

V     CONCLUSION .......................................................................................... 17

TABLE OF AUTHORITIES

FEDERAL AND STATE CASES

Am. Network, Inc. v Access Am./Connect Atlanta, Inc.,
    975 F. Supp. 494 (S.D.N.Y. 1997)...............................................................14

Asahi Metal Indus. v. Superior Court,
    480 U.S. 102 (1987)........................................................................15, 16

Bensusan Rest. Corp. v. King,
    126 F.3d 25 (2nd Cir. 1997).........................................10, 13, 14, 15

Best Van Lines, Inc. v. Walker,
    No. 04-3924-CV, 2007 WL 1815511 (2d Cir. Jun. 26, 2007)...........................8, 9, 10

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985)....................................................................13, 16

Buti v. Perosa, S.R.L.,
    139 F.3d 98 (2nd Cir. 1998)...............................................................2

Citigroup Inc. v. City Holding Co.,
    97 F. Supp. 2d 549 (S.D.N.Y. 2000)...................................................14

Dawn Donut Co. v. Hart's Food Stores, Inc.,
    267 F.2d 358 (2nd Cir. 1959)...............................................................2

Feathers v. McLucas,
    15 N.Y.2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8 (1965).........................13, 14

Hanson v. Denckla,
    357 U.S. 235 (1958).......................................................................16

Int'l Shoe Co. v. Washington,
    326 U.S. 310 (1945)....................................................................15, 16

ISI Brands, Inc. v. KCC Intern., Inc.,
    458 F. Supp. 2d 81 (E.D.N.Y. 2006) ..................................7, 9, 10, 12, 13, 14, 16

ITC Ltd. v. Punchgini, Inc.,
    482 F.3d 135 (2d Cir. 2007)................................................................1

Kernan v. Kurz-Hastings, Inc.,
    175 F.3d 236 (2d Cir. 1999).................................................................7

Light v. Taylor,
    No. 05 CIV. 5003 WHP, 2007 WL 274798 (S.D.N.Y. Jan. 29, 2007)........................15

Merck & Co. v. Mediplan Health Consulting, Inc.,
    425 F. Supp. 2d 402 (S.D.N.Y. 2006)................................................................11

Metro. Life Ins. Co. v. Robertson-Ceco Corp.,
    84 F.3d 560 (2nd Cir. 1996)...............................................................................7

Mullally v. Jones,
    No. 2:05 CV 00154-BES-GWF, 2007 WL 674294 (D. Nev. Feb. 28, 2007)........12, 13

Nat'l Football League v. Miller,
    No. 99 CIV. 11846 JSM, 2000 WL 335566 (S.D.N.Y Mar. 20, 2000) ......................14

Packer v. TDI Sys., Inc.,
    959 F. Supp. 192 (S.D.N.Y. 1997)......................................................................11

Rosenberg v. PK Graphics,
    No. 03 CIV. 6655 (NRB), 2004 WL 1057621 (S.D.N.Y. May 10, 2004)...................10

Seldon v. Direct Response Technologies, Inc.,
    No. 03 CIV.5381(SAS), 2004 WL 691222 (S.D.N.Y. Mar. 31, 2004) .......................9

Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,
    450 F.3d 100 (2d. Cir. 2006)...............................................................................9

Telebyte, Inc. v. Kendaco, Inc.,
    105 F. Supp. 2d 131 (E.D.N.Y. 2000) ................................................................14

World-wide Volkswagon Corp. v. Woodson,
    444 U.S. 286 (1980)..........................................................................................16

**STATUTES**

15 U.S.C. § 1125(d)(2)(A)....................................................................................11

15 U.S.C. § 1126.............................................................................................2, 6

15 U.S.C. § 1126(d)........................................................................................2, 6

15 U.S.C. § 1126(d)(4) ........................................................................................2

C.P.L.R. § 302 ................................................................................................18

C.P.L.R. §302(a)(1) ..................................................................................8, 15

C.P.L.R. §302(a)(2) ..............................................................................8, 13, 14

C.P.L.R. §302(a)(3)(ii)..........................................................................8, 14

Fed.R.Civ.P. Rule 12(b)(2) ..............................................................1, 3, 8

Defendants, PlayShare PLC, "Grand Monaco Ltd.", Gamshare (UK) Ltd., Lucan Toh, Maxwell Wright and Hillstead Ltd., respectfully submit this memorandum in support of their motion under Fed.R.Civ.P. Rule 12(b)(2) to dismiss for lack of personal jurisdiction.

## I. PRELIMINARY STATEMENT

Although the Complaint purports to be for infringement of the name, "Casino De Monaco" (a purely descriptive term that simply means "casino of Monaco"), Societe des Bains nowhere alleges that it has actually used the term as a trademark - in this country or anywhere else for that matter - and as far as defendants are aware, there simply is no such business or product or service. Even assuming some reason to believe circumstances might someday exist under which a probability might arise that PlayShare's business name, "Grand Monaco Casino" would cause a substantial number of consumers to believe the parties' services came from the same source (which is the test for infringement), until there is some such use in commerce, there can be no claim for infringement. And until that time, there simply does not appear to be a justiciable controversy. Laying aside that descriptive terms such as "casino of Monaco" are unprotectable without proof of acquired recognition, only three months ago, the Second Circuit confirmed, as it has in the past, that under principles of territoriality underlying trademark law,[1] foreign rights or registrations confer no protection in this country absent actual use in commerce. ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 155 (2d Cir. 2007) ("...United States trademark rights are acquired by, and dependent upon, priority of use....The territoriality principle requires the use to be in the United States for the owner to assert priority rights to the mark under the Lanham

---

[1] The Second Circuit recently explained:
[B]ecause a trademark has a separate legal existence under each country's laws, ownership of a mark in one country does not automatically confer upon the owner the exclusive right to use that mark in another country. Rather, a mark owner must take the proper steps to insure that its rights to that mark are recognized in any country in which it seeks to assert them.
ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 155 (2d Cir. 2007).

Act."). Indeed, under long-settled law, even a domestic trademark owner with a valid registration is not permitted to enforce its mark absent use in commerce in the geographic region where the defendant does business. Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d 358 (2d Cir. 1959). The Complaint does purport to detail various efforts to advertise and promote the very different trademark, "Casino de Monte Carlo," but even if the name actually in issue, Casino de Monaco, has ever been advertised or promoted here (the allegations being less than clear but suggesting not), the Second Circuit has clarified that absent actual sales of products or services, advertising is not use in commerce sufficient to confer any trademark rights. Buti v. Perosa, S.R.L., 139 F.3d 98, 103 (2d Cir. 1998). Plaintiff does allege that it owns trademark Registration No. 3,031,006 for "Casino De Monaco", but as specified in the complaint itself (Ex. D pages 9-11), many of the domain names at issue here were registered by PlayShare (or its predecessor in interest) before Societe des Bains' trademark registration issued on December 20, 2005.[2]

Even if Societe des Bains does begin making commercial use of the name "Casino de Monaco", and thus acquires enforceable rights in the name, and even if it could overcome PlayShare's prior rights, far simpler grounds exist to resolve this matter now: the lack of personal jurisdiction over any of the defendants. Indeed, defendants not only do no business in the State

---

[2]    Societe des Bains' application was filed under 15 U.S.C. § 1126(d), based on a foreign application (not use in commerce), and that section provides that "nothing in this subsection shall entitle the owner of a registration granted under this section to sue for acts committed prior to the date on which his mark was registered in this country unless the registration is based on use in commerce." 15 U.S.C. § 1126(d)(4).
    Moreover, plaintiff's one United States registration, which simply recites laundry lists of goods and services (such as computerized video games, video cameras, data processing equipment, computer cameras, blank or partially printed postcards, books, magazines, typewriters, rubber bands, tubs for consumer products, playing cards, board games, gymnastic and sporting articles, decoration for Christmas trees, car racing, tennis tournaments, swimming competitions, etc.) is probably invalid because plaintiff never had a genuine intent to sell such goods or services under the mark; because as an applicant, to overcome the initial refusal of the Trademark Office to register the purely descriptive, plaintiff submitted only proof of advertising and use (abroad) of the separate trademark "Casino De Monte Carlo"; and because plaintiff has, withal, apparently abandoned any claimed rights through non-use in the almost five years since it first applied for registration here.

of New York - under the accused name, Grand Monaco Casino, or other wise -- and have no physical or other presence here, but, to the contrary, Playshare affirmatively refuses to allow New York residents to participate in its on-line gaming sites. Moreover, none of the defendants has an office in New York; none has any employees here; none has any assets in this State; and none has done anything that would reasonably lead to an expectation it would be haled into court here. One of the named defendants, Grand Monaco, Ltd., does not exist at all. Accordingly, the Complaint should be dismissed under Fed.R.Civ.P. Rule 12(b)(2).

## II. FACTUAL BACKGROUND

As set forth (correctly) in the Complaint (¶ 6), PlayShare is a United Kingdom public limited company with offices at 7 Queen Street, Mayfair, London. However, it has no offices in New York (or elsewhere in the United States), no employees, agents, representatives or real property or other assets here and is not licensed to do business in this State. (Wright Decl. ¶ 2.) The Complaint similarly alleges (¶¶ 7, 8) that Grand Monaco Ltd. is a subsidiary of PlayShare with offices at 7 Queen Street, Mayfair, London. In fact, there is no such entity as "Grand Monaco, Ltd."; it does not exist in New York or anywhere else. (Wright Decl. ¶ 3.) On November 1, 2006, Playshare did acquire the company Naden, Inc., which is not a named party. Naden had created the Grand Monaco Casino and was doing business under that name.[3] However, since mid-October 2006, PlayShare has affirmatively refused to allow New York residents to participate on its Internet gaming sites – including, after the acquisition on November 1, 2006 its Grand Monaco Casino site – by blocking their access to the services offered on the site. It has never allowed New York residents to participate on the site. (Id)

---

[3] The name itself had been used (at the internet address grandmonaco.com) since 2000, seven years before the complaint was filed, two years before Societe des Bains applied to register the name Casino de Monaco and five years before the name was actually registered. As set forth in the Complaint (Ex. D at pgs. 9-11) numerous domain name registrations used by defendants, and which are the subject of this suit, predate the issuance to Societe des Bains of Registration No. 3,031,006 for "Casino de Monaco".

The Complaint further alleges (¶ 8) that Gamshare (UK) Ltd. is a subsidiary of PlayShare with offices at 7 Queen Street, Mayfair, London. However, Gamshare, which is based in Gibraltar, has no offices in New York (or elsewhere in the United States), no employees, agents, representatives or real property or other assets here and is not licensed to do business in this State. (Wright Decl. ¶ 4.) Moreover, although GamShare operates the businesses PokerShare and CasinoShare, it has nothing to do with PlayShare's Grand Monaco Casino. (Id.)

The Complaint alleges (¶ 11) that Hillstead Ltd. is United Kingdom company with offices in Gibraltar. However, Hillstead, which is a subsidiary of Naden, Inc., simply processes financial transactions for Playshare and has no offices in New York (or elsewhere in the United States), no employees, agents, representatives or real property or other assets here and is not licensed to do business in this State. (Wright Decl. ¶ 5.) Although it is doubtful Hillstead (given its back-office role) makes commercial use of any names, because New York residents can not participate in PlayShare's on-line gaming sites, Hillstead processes no transactions for New Yorkers and hence has no role in the use of any names in this State. (Id.)

As for the individuals, Lucan Toh and Maxwell Wright, the Complaint simply alleges (¶¶ 9, 10) that they reside in the United Kingdom, are directors of PlayShare and (in Mr. Wright's case) is also CEO of the company. Mr. Toh in fact severed all ties with Playshare and the other corporate defendants in November 2006 and resides in the United Arab Emirates. (Wright Decl. ¶ 6.) Neither individual has any real property or other assets in New York, nor any agents or representatives here. (Id.) For administrative purposes, Mr. Wright and Mr. Toh registered various domain names at issue in this proceeding; yet, it is only because certain of those domain name registrations have been frozen (as a result of ongoing litigation with Societe des Bains) that Mr. Toh has been unable since he severed ties with the company to transfer the registrations to PlayShare. (Id.)

The only allegation in the complaint alleging any conduct in New York (or elsewhere in the United States) was a gasoline give-away in May 2006 by PlayShare designed to promote its poker its services offered under the name PokerShare and having nothing to do with the name or mark Grand Monaco Casino. (Id. ¶ 4.) The Complaint does not allege that the name PokerShare is in any way relevant to this action.

### III.  THE COMPLAINT

The Complaint alleges that the Court has personal jurisdiction over all defendants solely under CPLR § 302 for allegedly transacting business in New York or contracting to supply goods or services here, committing tortious conduct in this State or deliberately causing injury to Societe des Bains here.  No allegation is made that general jurisdiction lies under CPLR § 301. The only allegations specifically referring to any actual conduct in New York State concerns a gasoline giveaway in May 2006.  As noted, that event was designed to promote PlayShare's "PokerShare" service, not the "Grand Monaco Casino" service, which PlayShare did not  at any rate acquire until November 1, 2006. (Wright Decl. ¶ 4.)  The Complaint (¶ 40) elsewhere alleges (upon information and belief) that consumers in New York continue to interact with the Grand Monaco Casino website, but such speculation is incorrect.  (Wright Decl. ¶ 3.)

As for its own presence in the State of New York or any injury it may have sustained here, the Complaint is less than specific.  The Complaint alleges that Societe des Bains has a place of business in Monaco, and that it has an address either "operated in conjunction with the Principaute de Monaco" or "in conjunction with the Monaco tourism office" located at 565 Fifth Avenue, New York, New York." (Complaint ¶¶ 5, 23.)  Plaintiff does not specify what this means or whether it has any employees here or is licensed to do business here.  Moreover, the complaint nowhere specifically alleges that Societe des Bains actually uses the subject trademark

in New York or in the United States – whether at the New York address or elsewhere. There is no allegation, for instance, that in any given year the plaintiff sold in New York any particular quantity of goods or services under the claimed trademark, Casino de Monaco, or even that it has offered to sell or advertised or promoted any particular goods or services under the name Casino de Monaco. Indeed, there is no allegation that there exists any business anywhere in the world called the Casino de Monaco, and defendants are not aware of any such operation.

(Wright Decl. ¶7)

The Complaint does allege that Societe des Bains promotes its Casino de Monte Carlo to American tourists (Complaint ¶ 23); and that it (or the principality) uses the New York office in part to promote tourism related to that casino. (Id. ¶ 24.) The pleading does not allege that Societe des Bains (or the principality) promotes any such casino under the name Casino de Monaco, but instead suggests the names Casino de Monaco and Casino de Monte Carlo are somehow equivalent. (Id. ¶ 18.) Likewise, in pleading that it extensively promotes its Monaco-based casinos (id. ¶ 23), plaintiff nowhere states that there exists a Casino de Monaco to promote or that has been promoted. (As disclosed on plaintiff's website, casinomontecarlo.com, the only actual casinos in Monaco are the Casino de Monte Carlo, the Sun Casino, the Café de Paris Casino and the Sporting Monte Carlo Casino.)

The Complaint also alleges that Societe des Bains owns a United States registration for the mark Casino de Monaco (Complaint ¶ 20), for which it applied, not based on use in commerce in the United States, but based solely on an application it filed in Monaco itself (under a particular treaty arrangement enacted into United States law as 15 U.S.C. § 1126(d)), as well as a claimed intent to use the mark. Because of the specific terms of 15 U.S.C. § 1126(d), no statement of actual use was required and none was filed. Although the registration recites a

lengthy list of goods and services, including computer hardware and software, various paper goods (such as postcards, magazines, menus, etc.); playing cards, board games, exercise equipment and so forth; the Complaint nowhere identifies any such product or service that has ever actually been sold in the United States or New York in particular.

Similarly, the complaint lists various domain names owned by Societe des Bains (Complaint ¶ 22), including monacograndcasino.com and casinosdemonaco.com. However, these apparently all link to only one active website: casinomontecarlo.com, and there is no suggestion that that web-site provides any gaming or other services to American or New York consumers, or that name or mark "Casino de Monaco" is used anywhere on or in connection with the site. Finally, the Complaint avers that seven years ago (two years before it even first claimed an intent to use the designation "Casino de Monaco"), 22% of Societe des Bains clients were "located in North America." (Id. ¶ 25.) The Complaint does not specify where on the continent any of these individuals or businesses were located or for what services they were clients.

## IV. ARGUMENT

Having asserted jurisdiction over out-of-state defendants, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999) (quoting Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir 1996)); ISI Brands, Inc. v. KCC Intern., Inc., 458 F. Supp. 2d 81, 84 (E.D.N.Y. 2006). To determine whether it may exercise personal jurisdiction over a non-domiciliary, a district court engages in a two-part analysis. First, the court must determine whether jurisdiction exists under the law of the forum state, here, New York. Second, the Court must determine whether the exercise of jurisdiction under state law satisfies federal due process requirements.

Best Van Lines, Inc. v. Walker, No. 04-3924-CV, 2007 WL 1815511, at *2 (2d Cir. Jun. 26, 2007).

The Complaint alleges that the Court has personal jurisdiction over all defendants solely under C.P.L.R. § 302 for allegedly transacting business in New York or contracting to supply goods or services here, committing tortious conduct in this State or deliberately causing injury to Societe des Bains here. The Complaint should be dismissed under Fed.R.Civ.P. Rule 12(b)(2) because none of the defendants has any meaningful contacts with or presence in New York; because the acts complained of have no connection with this State, and because the case does not arise out of any contact by defendants or plaintiff with New York.

Although the Complaint (¶15) does not name the specific subsections under C.P.L.R. Section 302 on which Plaintiff relies to sustain jurisdiction, the language of that paragraph parallels C.P.L.R. sub-sections 302(a)(1), 302(a)(2) and 302(a)(3)(ii). There does not appear to be any allegation under C.P.L.R. § 302(a)(3)(i) that defendants regularly do or solicit business in New York, engage in persistent conduct here or derive substantial revenue from goods used or services rendered in this State. The allegations, which are considered in turn, do not support a finding of personal jurisdiction.

a) Defendants Do Not Transact Business In New York Within the Meaning of CPLR § 302(a)(1)

C.P.L.R. §302(a)(1) provides, in pertinent part, that as to "a cause of action arising from any of the acts enumerated in this section" a court in New York may exercise jurisdiction "over any non-domiciliary . . . who in person or through an agent[ ] transacts any business within the state or contracts anywhere to supply goods or services in the state". As the Second Circuit recently confirmed, "New York courts have held that a claim 'aris[es] from' a particular transaction when there is some 'articulable nexus between the business transacted and the cause

of action sued upon,' or when 'there is a substantial relationship between the transaction and the claim asserted.'" Best Van Lines, Inc. v. Walker, No. 04-3924-CV, 2007 WL 1815511, at *9 (2d Cir. Jun. 26, 2007), citing Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006). Consistent with general Constitutional standards (although somewhat more narrowly than the constitution permits[4]), a party "transacts business" in the State of New York by "...purposefully avail[ing] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Best Van Lines, Inc., 2007 WL 1815511, at *6.

Where the defendant's business is conducted on the internet, it is not sufficient to show merely that a website is accessible in New York; rather, the plaintiff must demonstrate that a defendant's actions amount to solicitation and transaction of business within the state. See Seldon v. Direct Response Technologies, Inc., No. 03 CIV. 5381(SAS), 2004 WL 691222, at *4 (S.D.N.Y. Mar. 31, 2004) ("jurisdiction will lie only if the [web site content] is intended to target or focus on internet users in the state where the cause of action is filed"). In general, the likelihood that personal jurisdiction can be exercised is "directly proportionate to the nature and quality of commercial activity that the website proprietor conducts over the Internet." ISI Brands, 458 F. Supp. 2d at 85 (citation omitted). However, the precedents make clear that "[c]ourts are reluctant to find personal jurisdiction unless the website specifically targets New Yorkers, or is aimed at New York users." Id. at 86.[5]

---

[4] As noted in Best Van Lines, Inc., "Some distance remains between the jurisdiction permitted by the Due Process Clause and that granted by New York's long-arm statute." 2007 WL 1815511 at * 7.

[5] Seldon summarized the main issues arising from internet commerce cases as follows:

Courts assessing whether internet activity permits the exercise of personal jurisdiction "have identified an array of fact patterns." [Citation omitted.] At one end of the spectrum are "passive" websites which display, but do not permit an exchange of, information. "At the other end of the spectrum are cases in which the defendant clearly does business over the Internet ... Occupying the middle ground are 'interactive' websites, which permit the exchange of information between the defendant and website viewers." Id.

2004 WL 691222, at *3

Although a website that is purely "passive" in simply presenting information is plainly
not a basis to sustain jurisdiction, Bensusan Rest. Corp. v. King, 126 F.3d 25 (2d Cir. 1997),
whether a website is "interactive" is relevant "only insofar as it helps to decide whether the
defendant 'transacts any business' in New York – that is, whether the defendant, through the
website, purposefully avail[ed] himself of the privilege of conducting activities within New
York, thus invoking the benefits and protections of its laws." Best Van Lines, 2007 WL
1815511, at *11 (citation omitted). In all cases where a court found personal jurisdiction over a
highly interactive website, "unlike here, the plaintiff first established some further contact with
the forum state." ISI Brands, 458 F.Supp.2d at 86, 88 (citing Rosenberg v. PK Graphics, No. 03
CIV. 6655 (NRB), 2004 WL 1057621, at *1 (S.D.N.Y. May 10, 2004)).

In the most obvious and plain sense of the term "transacting business", none of the
defendants here can be deemed subject to jurisdiction in New York because, ever since mid-
October 2006 (even before they acquired the Grand Monaco Casino business), defendants have
affirmatively eschewed the privilege of conducting activities within New York. No business has
been "transacted" in New York under the name Grand Monaco Casino at anytime since
Playshare acquired the Grand Monaco Casino. Nor have there been any attempts to advertise or
promote the Grand Monaco Casino in this State.

The one promotional event cited in the Complaint, staged by defendant GamShare in
May 2006 for its PokerShare website, has no "substantial relationship" or "articulable nexus"
with the claimed infringement that is the subject of this suit. Indeed, because Societe des Bains
makes no pretense of objecting to the name "PokerShare", the May 2006 promotion has no
relationship at all to the cause of action sued upon. Just so, because GamShare is not involved in
the operation of the Casino de Monaco website; because Hillstead simply processes financial
transactions but is not a trading company, and because there simply is no entity "Grand Monaco

Ltd." none of the business activities of any of these corporate defendants involves the transaction of business in New York arising from the subject matter of this litigation.

Nor is there any basis for the court to sustain jurisdiction over the individual defendants, Mr. Wright and Mr. Toh, simply because Mr. Wright is and Mr. Toh was an executive with PlayShare. Indeed, <u>Merck & Co.</u> v. <u>Mediplan Health Consulting, Inc.</u>, 425 F. Supp. 2d 402 (S.D.N.Y. 2006), made clear very recently that even though "New York does not adopt the fiduciary shield doctrine [that] does not mean that a corporate officer is automatically subject to long-arm jurisdiction." <u>Id.</u> at 419, citing <u>Packer</u> v. <u>TDI Sys., Inc.</u>, 959 F. Supp. 192, 199 n. 6 (S.D.N.Y. 1997). Rather, the plaintiff must demonstrate specific facts demonstrating that the individual defendant "has transacted business in New York in his individual capacity." <u>Merck</u>, 425 F. Supp. 2d at 419. Simply offering conclusory allegations (such as the boilerplate allegation in the Complaint, made on information and belief, that the corporate defendants are mere alter egos of Mr. Wright and Mr. Toh (Complaint ¶ 33)) is insufficient to sustain jurisdiction over an individual officer or executive of a corporate defendant. <u>Merck</u>, 425 F. Supp. 2d at 419. Although it is true that the individual defendants performed the administrative function of registering the domain names at issue in this proceeding (with an Arizona registrar), the same fact was insufficient in <u>Merck</u> to support jurisdiction. <u>Id.</u> [6] Because there is no allegation that either of the individual defendants is transacting business in New York in matters arising from the subject matter of this litigation, the Court is without personal jurisdiction over either party.

---

[6] Indeed, the Lanham Act not only recognizes expressly that mere ownership of a domain name is not a basis for personal jurisdiction but provides a specific remedy where a party is otherwise unable to obtain personal jurisdiction over the domain name owner. 15 U.S.C. § 1125(d)(2)(A) (authorizing <u>in rem</u> proceedings against a domain name registered in bad faith).

In the recent decision, <u>ISI Brands</u>, <u>supra</u>, the court reviewed the existing case law on personal jurisdiction over commercial websites and refused to find that the defendant had sufficient contacts with New York, notwithstanding that neither party contested that the defendant operated a generally accessible commercial website. The court held that the plaintiff failed to allege that the defendant purposefully solicited New York customers, made mailings to New York residents, entered contracts in New York or in any other manner directed its website to New York consumers. <u>Id</u>. at 87. Thus, even though the defendant admittedly sold products nationally through its interactive website, and placed no restrictions on the ability of anyone in New York to access or make purchases using the website, the contacts were insufficient to justify the exercise of personal jurisdiction. <u>Id</u>. Defendants here have even less of a connection with the State of New York because they expressly refuse to transact business with New York residents.

<u>Mullally</u> v. <u>Jones</u>, No. 2:05 CV 00154-BES-GWF, 2007 WL 674294 (D.Nev. Feb. 28, 2007), involving on-line gaming, is instructive. There the plaintiff alleged defendants were infringing its exclusive rights to two on-line casino games. The Court rejected the contention that the defendants' maintenance of a "highly interactive" web site (which included links to several other active gaming sites) provided a basis for general or specific jurisdiction, notwithstanding that defendants employees had also attended trade shows in the state. The defendants in <u>Mullally</u> were foreign (primarily UK-based) online gaming sites. The plaintiff sought in Nevada to enforce his patents and ownership interest in the sites' games. "The interactive nature of a website does not automatically lead to the conclusion that general personal jurisdiction is proper," <u>id</u>. at *4, the court held, because basing jurisdiction solely on web site interactivity would be "untenable" given the ubiquitous nature of the Internet, which can be accessed from virtually any forum." <u>Id</u>. at * 5. Refusing as well to find specific jurisdiction,

<u>Mullally</u> held that "[m]aintaining a website accessible to anyone, as Defendants allegedly did in this case, is not enough to show that Defendants expressly aimed their acts at the forum state." <u>Id.</u> at * 6. And notwithstanding that defendants had attended gaming conventions in the state, which is considerably more than any of the defendants here have done in New York, and notwithstanding that defendants affiliated on-line casinos may have offered gaming to Nevada residents, none of the defendants' business was deemed to have been conducted in Nevada. <u>Id.</u> at * 6. Said the court: "Accepting all of Plaintiff's contentions as true, Defendants could not reasonably anticipate being haled into court in Nevada based on their operation of a website accessible in Nevada" <u>Id.</u> at * 7. There, as here, "[t]o exercise jurisdiction over Defendants under these circumstances would run afoul of the requirement that '[m]inimum contacts must be 'purposeful' contacts in order to ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum.'" <u>Id.,</u> citing <u>Burger King Corp.</u> v. <u>Rudzewicz,</u> 471 U.S. 462, 472-74 (1985). Because this case does not arise from the transaction of business in New York by PlayShare or any of the other defendants, jurisdiction is lacking.

     b)  Defendants Have Committed No Tortious Acts In the State Within the Meaning of CPLR § 302(a)(2)

     C.P.L.R. §302(a)(2) provides that as to "a cause of action arising from any of the acts enumerated in this section" a court in New York may exercise jurisdiction "over any non-domiciliary . . . who, in person or through an agent [ ] commits a tortious act within the state..." This provision "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." <u>Bensusan Rest. Corp.</u>, 126 F.3d at 28; <u>ISI Brands, Inc.</u>, 458 F. Supp. 2d at 89. <u>See</u> <u>Feathers</u> v. <u>McLucas,</u> 15 N.Y.2d 443, 460, 209 N.E.2d 68, 261 N.Y.S.2d 8 (1965) (explaining that the language of §302(a)(2) is "plain and precise" and

confers personal jurisdiction over non-residents "when they commit acts within the state.") ISI

Brands, Inc. further explains:

> The existence of a website outside New York, even one that offers a product for
> sale, cannot alone confer jurisdiction over the defendant under CPLR §302(a)(2).
> Bensusan, 126 F.3d at 29; Telebyte, 105 F.Supp.2d at 134; Citigroup, 97
> F.Supp.2d 549. "Although it is in the very nature of the Internet that the allegedly
> infringing marks contained in these websites can be viewed anywhere, this does
> not mean that the infringement occurred everywhere." Citigroup, 97 F.Supp.2d
> 549. Courts have held that, when websites display infringing marks, the tort is
> committed where the website is created and/or maintained.  See id.; NFL, 2000
> WL 335566, 2000 U.S. Dist. LEXIS 3929; Am. Network, Inc. v. Access
> America/Connect Atlanta, Inc., 975 F.Supp. 494, 497 (S.D.N.Y. 1997).

Id. at 89-90. Under any other rule, simply having a website would create nationwide if not

worldwide jurisdiction. Id. at 90.

Accordingly, there can be little serious contention that defendants are amenable to suit

under C.P.L.R. §302(a)(2). With the exception of the gasoline giveaway, which occurred well

before PlayShare owned the subject business and had no nexus with the claim in suit, there is no

suggestion any of the defendants has done anything within the state (and certainly nothing

related in any way to the claim in suit). The servers for defendants' on-line services are located

in Canada. (Wright Decl. ¶ 3.) It is no doubt for just this reason that the complaint also alleges,

with some inconsistency, that the court should entertain jurisdiction under §302(a)(3)(ii) because

the defendants are not present within the state but have committed acts outside the state causing

injury here. That argument too is without foundation.

c)  Defendants Have Committed No Tortious Acts Outside the State Causing Injury In
    New York Within the Meaning of CPLR § 302(a)(3)(ii)

C.P.L.R. §302(a)(3)(ii) provides, in pertinent part, that as to "a cause of action arising

from any of the acts enumerated in this section" a court in New York may exercise jurisdiction

"over any non-domiciliary . . . who, in person or through an agent ... commits a tortious act

without the state causing injury to a person or property within the state  ... if he [] expects or

should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate commerce." Both elements – foreseeability and substantial revenue – must be pleaded and shown. Bensusan Rest. Corp., 126 F.3d at 29;  Light v. Taylor, No. 05 CIV. 5003 (WHP), 2007 WL 274798 (S.D.N.Y. Jan. 29, 2007).

Societe des Bains has satisfied neither of these factors.   The Complaint does not even allege that the foreign defendants, who are primarily engaged in foreign commerce, derive substantial revenue from interstate commerce in the United States.  And although the pleading repeatedly seeks to suggest that Societe des Bains has some business presence here, the complaint neither identifies any actual business enterprise in New York nor the sale of any products are services under the name Casino de Monaco in the state that might be adversely impacted were defendants to commence use of the name Grand Monaco Casino in this jurisdiction.  Even now, with the benefit of having read the pleading, it is neither clear nor foreseeable that any injury could be sustained in New York, even if defendants were infringing a valid trademark of Societe des Bains.  Because Societe de Bains has apparently never sold any products or services in New York (or elsewhere) under the trademark Casino de Monaco, there is also no basis for the allegation that anything Playshare may have done should have led it reasonably to expect that any injury to plaintiff was likely to result in New York.  PlayShare, in fact, was completely unaware of any business of plaintiff in this State. (Wright Decl. ¶ 7.)

   d)  The Exercise of Jurisdiction Would Be Unconstitutional

Not only is plaintiff unable to satisfy the requirements for personal jurisdiction under C.P.L.R. § 302, there is no jurisdiction over any of the defendants because none meets the Constitutional requirement that there be "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Asahi Metal Indus. Co. v. Superior

<u>Court</u>, 480 U.S. 102, 113 (1987). Indeed, the minimum contacts test requires "in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." <u>Hanson</u> v. <u>Denckla</u>, 357 U.S. 235, 253 (1958). A defendant's connection with the state must be such that "it should reasonably anticipate being haled into court" in the state in the event of a dispute. <u>World-wide Volkswagon Corp.</u> v. <u>Woodson</u>, 444 U.S. 286, 295-96 (1980). PlayShare and the other defendants have done nothing to avail themselves of the privilege of doing business in New York – to the contrary, they have erected preventive measures to preclude New Yorkers from using their online gaming services. Just as in <u>World-wide Volkswagon</u>, where it was not foreseeable the plaintiff would drive the car he purchased in New York to the specific state of Oklahoma (notwithstanding that cars are inherently mobile), it was not foreseeable to PlayShare that it would be sued in New York for its on-line gaming activities (offered on many continents and in many places but decidedly <u>not</u> the State of New York). Subjecting parties to universal jurisdiction simply for having a presence on the Internet has indeed already been determined by the courts as inherently unreasonable. <u>ISI Brands</u>, 458 F. Supp. 2d at 89. Nor is the fact that Societe des Bains may happen to have some minimal relationship with the forum (if indeed it does) a reason to sustain jurisdiction here given that PlayShare has done nothing specifically targeted at defendants and was entirely unaware of plaintiff's claimed connection with New York.

<u>Burger King Corp.</u>, 471 U.S. at 476-77, sets forth various factors to consider in assessing the reasonableness of the exercise of jurisdiction over a non-resident defendant.[7] These factors do not support sustaining jurisdiction in New York. Playshare and the other defendants have

---

[7] These factors include (i) the burden on the defendants; (ii) the forum state's interest in adjudicating the matter; (iii) the plaintiff's interest in obtaining efficient resolution of the controversy; and (iv) the shared interests of the states in establishing consistent social policies.

done nothing to interject themselves purposefully in New York commerce. Its disputed website

is not directed at New York consumers. Nor does Societe des Bains have any particular interest

in commerce in this country or state – certainly not under the name Casino De Monaco. Plaintiff

has indeed, made no apparent sales of gaming services or products under that name to any

American consumers, and its New York office is apparently meant to serve the tourist trade to

Monaco – not to promote any gaming services under the name Casino De Monaco. Indeed,

based solely on the allegations of the complaint (and the facts of which defendants are aware),

there is no apparent subject matter jurisdiction over this dispute between European entities

concerning European gaming services. That defendants are all foreign entities or individuals

further weighs against exercising jurisdiction in this dispute between entirely European interests.

## V. <u>CONCLUSION</u>

For the foregoing reasons, defendants request that the complaint be dismissed for lack of

personal jurisdiction, together with such other and further relief as the Court may deem just and

proper.

Dated: July 23, 2007

Respectfully submitted,

By:
Jonathan E. Moskin (JM 9814)
Adam M. Turkel
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
212-819-8200
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SOCIETE DES BAINS DE MER ET DU       :
CERCLE DES ETRANGERS A MONACO,       :

                           Plaintiff, :          07 Civ. 4802 (DAB) (RLE)

              vs.                     :

                                      :
PLAYSHARE PLC, GRAND MONACO LTD.,     :       **DECLARATION OF
GAMSHARE (UK) LTD., LUCAN TOH,                MAXWELL WRIGHT IN
MAXWELL WRIGHT, HILSTEAD LTD.,        :        SUPPORT OF MOTION TO
                                                    DISMISS**

                           Defendants. :
-------------------------------------------------------------x

        I, Maxwell Wright, hereby declare:

1.      I am Chief Executive Officer of defendant, Playshare PLC, and have personal knowledge

of the matters set forth herein. I make this declaration in support of the motion by defendants to

dismiss the Amended Complaint.

2.      PlayShare PLC, is a United Kingdom company that has offices at 7 Queen Street,

Mayfair, London. Although I am temporarily working out of South Africa, my principal

personal residence is in the United Kingdom, and I have no office or residence or other assets in

the State of New York (or elsewhere in the United States). Nor do I personally employ anyone

or have any agents in the State of New York. PlayShare likewise has no offices in the State of

New York or elsewhere in the United States, no employees or agents there, and no real property

or other assets there. The company is not licensed to do business in the State of New York and

(as explained more fully below) we affirmatively decline to do business in the State of New

York.

3.        Although the complaint names "Grand Monaco Ltd." as a party, there is no such

legal entity. PlayShare does do business under the name "Grand Monaco Casino", and has

acquired various domain names (including GrandMonacoCasino.com) and other related assets as

part of the acquisition of the company, Naden, Inc. on November 1, 2006. However, there is no

legal entity such as named in the complaint and, for its part, the unnamed entity, Naden, Inc.,

has no business presence in New York State. Moreover, although PlayShare does now offer on-

line gaming services under the name "Grand Monaco Casino", it expressly refuses to allow

consumers in New York State (and other states in the United States) to participate in such on-line

gaming by blocking access to anyone who attempts to log-in to the Internet site with a New York

address and by blocking any New-York-based IP addresses. Nor do we engage in any

advertising or promotion in New York State or aimed at New York State residents. The servers

for the on-line casino are based in Kahnawake Mohawk Territory, Quebec, Canada, where we

have a gaming license.

4.        The one New York-based promotion to which the complaint refers, a gasoline

giveaway in May 2006 (Complaint ¶ 39), was conducted to promote our entirely separate

PokerShare.com on-line casino. In May 2006, PlayShare had not yet even acquired the Grand

Monaco Casino business, which it did not do for another half year, and the gasoline promotion

was entirely unrelated to the Grand Monaco Casino. The PokerShare businesses (as well as

CasinoShare), are operated by PlayShare's subsidiary, GamShare. However, GamShare, which

maintains offices at Suite 2B, Centre Plaza, Main Street, Gibraltar (and is organized under

United Kingdom law), has no involvement with the Grand Monaco Casino. Moreover, it has no

offices or other assets or property in New York State, and no employees or agents there, and

since October 13, 2006, has ceased allowing any New Yorkers from using its services by

blocking access to anyone who attempts to log-in to the Internet site with a New York address and by blocking any New-York-based IP addresses.

5.        The defendant Hillstead, Ltd. is a subsidiary of Naden, Inc., but it too is not involved in the operation of the Grand Monaco Casino and does no business under that name (in New York or elsewhere).  Rather, it simply handles back-office financial transactions for PlayShare.  Because we block all New York State consumers from participating in the Grand Monaco Casino (or the PokerShare or CasinoShare casinos), Hillstead, Ltd. does no business in the State of New York.  Hillstead, Ltd. is organized under United Kingdom law and has offices in Gibralter.  It has no offices or assets in the State of New York and has no employees or agents there.  It engages in no advertising or promotion of any kind - in New York or elsewhere.

6.        Although the Complaint alleges (in paragraphs 9 and 10) that Lucan Toh and I reside in the United Kingdom and are directors of PlayShare (and, in my own case, that I am also CEO of the company), Mr. Toh, who resides in the United Arab Emirates, resigned his positions with the company and thoroughly severed his ties in November 2006.  Although he had helped register various domain names on behalf of the company, including certain of those domain names referred to in paragraph 32 of the Complaint, he has no personal interest in those domain names and, well before the Complaint was filed, had begun transferring the domain names to me in a purely administrative capacity on behalf of the company.  All of those domain names, the registrations for which have not been frozen by the registrar, GoDaddy, in connection with other litigation with Societe des Bains, have now been transferred.  Neither of us has any real property or other assets in New York State, nor any agents or representatives in the state.

7.        Although PlayShare stands accused of infringing Societe des Bains' purported trademark "Casino de Monaco", I am not aware of any business conducted by Societe des Bains

3

under that name – in the United States or anywhere else.  Societe des Bains does operate the

Casino de Monte Carlo, which is based in Monaco, but I have never heard of or encountered any

business called "Casino de Monaco".  (And except for having read the allegations of the

complaint, I was also not previously aware of any actual or purported business connection of

Societe des Bains with the State of New York.)  Moreover, although PlayShare did not acquire

the Grand Monaco Casino business until November 2006, since as early as 2000, seven years

before the complaint was filed, the name "Grand Monaco Casino" itself had been used by prior

owners of the domain name grandmonaco.com .  Moreover, as set forth in the Complaint itself

(in particular at pages 9-11 of Exhibit D), many of the domain names challenged by Societe des

Bains were registered (by Naden) before Societe des Bains obtained the trademark registration

on which it relies.  When we acquired those domain names, we had no reason to believe Societe

des Bains or any other entity would ever seek to challenge our use of the domain names or the

business name, Grand Monaco Casino.

I hereby declare under penalty of perjury under the laws of the United States of America
this 20<sup>th</sup> day of July, 2007 that the foregoing is true and correct.

Maxwell Wright

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of July, 2007, I served a copy of **DECLARATION OF MAXWELL WRIGHT** on the attorneys for the Plaintiff, as designated below, by ECF Filing as follows:

> Robert L. Raskopf
> Alan Blum
> Lori E. Weiss
> QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
> 51 Madison Avenue, 22nd Floor
> New York, NY 10010

> s\Jonathan Moskin
> Jonathan E. Moskin
> WHITE & CASE LLP
> 1155 Avenue of the Americas
> New York, New York 10036

# EXHIBIT # 47

## Regulatory Announcement

Go to market news section

| | |
|---|---|
| **Company** | Empire Online Limited |
| **TIDM** | EOL |
| **Headline** | US LEGISLATION - UPDATE |
| **Released** | 15:42 13-Oct-06 |
| **Number** | 4660K |

EMPIRE ⬤ ONLINE

13 October 2006

### Empire Online Limited

### US LEGISLATION - UPDATE

Further to Empire Online's announcement of 2 October 2006, new legislation affecting on line gaming in the USA has been introduced today. After taking extensive advice on this matter the Company will terminate its USA business with immediate affect.

This action will have a material adverse effect on Empire Online's future earnings. Currently, approximately 65% of Empire Online's revenues are generated from customers based in the USA. The Company's margins will also be affected by the loss of this revenue due to operational gearing and the higher gross margin generated from the USA business.

The Board is confident that the business will continue to generate positive Earnings before interest, tax, depreciation and amortisation (EBITDA) for 2007. In the first half of 2006 more than 55% of new real money player sign ups came from outside the USA. The Company has considerable cash resources at its disposal and the Board re affirms its intention to pay an interim dividend of 1.7cents per share.

The Company will now focus its resources on two key areas:

developing its market position in online gaming outside the USA,

leveraging its expertise in on line marketing to other sectors in which it has not previously been involved.

Enquiries:

| | |
|---|---|
| Empire Online Limited | +357 25 847 700 |
| Noam Lanir, Chief Executive Officer | |
| Andrew Burns, Chief Financial Officer | |
| | |
| Hudson Sandler | +44(0) 20 7796 4133 |

Jessica Rouleau

<div style="text-align:center">END</div>

END

Close

**London Stock Exchange plc is not responsible for and does not check content on this Website. Website users are responsible for checking content. Any news item (including any prospectus) which is addressed solely to the persons and countries specified therein should not be relied upon other than by such persons and/or outside the specified countries. Terms and conditions, including restrictions on use and distribution apply.**

©2006 London Stock Exchange plc. All rights reserved

# EXHIBIT # 48

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - -x

SOCIETE DES BAINS DE MER ET DU   :
CERCLE DES ETRANGERS A
MONACO,                            :     Case No. 07 Civ. 4802 (DAB) (RLE)

           Plaintiff,       :

          vs.            :    **NOTICE OF DEPOSITION OF**
                             **DEFENDANT MAXWELL WRIGHT**
PLAYSHARE PLC, GRAND
MONACO LTD., GAMSHARE (UK)   :
LTD., LUCAN TOH, MAXWELL
WRIGHT, HILSTEAD LTD.,      :

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - -x

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(1) of the Federal Rules of Civil

Procedure, Plaintiff Société des Bains de Mer et du Cercle des Etrangers à Monaco ("SBM"),

through its attorneys Quinn Emanuel Urquhart Oliver & Hedges, LLP, will take the deposition

upon oral examination under oath of Defendant Maxwell Wright, on _____, 2007, at the

offices of Quinn Emanuel Urquhart Oliver & Hedges, LLP, 51 Madison Avenue, New York,

New York 10010, or at such other time and place as the parties may agree upon. If the

deposition is not completed on the agreed day, it will continue until completed with such

adjournment as to time and place as may be necessary. The deposition will be taken before a

qualified notary public or before some other officer authorized by law to administer oaths. The

deposition will be recorded by stenographic, video and/or audio means.

DATED:    New York, New York
          _____, 2007

                                    QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP


                                    By: _____
                                        Robert L. Raskopf (RR-5022)
                                        Lori E. Weiss (LW-7866)

                                    51 Madison Avenue, 22nd Floor
                                    New York, New York  10010
                                    Tel:  (212) 849-7000
                                    Fax:  (212) 849-7100

                                    ATTORNEYS FOR SOCIETE DES BAINS
                                    DE MER ET DU CERCLE DES
                                    ETRANGERS A MONACO

# EXHIBIT # 49

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - -x

SOCIETE DES BAINS DE MER ET DU
CERCLE DES ETRANGERS A
MONACO,

                   Plaintiff,

         vs.

PLAYSHARE PLC, GRAND
MONACO LTD., GAMSHARE (UK)
LTD., LUCAN TOH, MAXWELL
WRIGHT, HILSTEAD LTD.,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - -x

Case No. 07 Civ. 4802 (DAB) (RLE)

**NOTICE OF DEPOSITION OF
DEFENDANT PLAYSHARE PLC**

       PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Plaintiff Société des Bains de Mer et du Cercle des Etrangers à Monaco ("SBM"),

through its attorneys Quinn Emanuel Urquhart Oliver & Hedges, LLP, will take the deposition

upon oral examination under oath of the person(s) designated by Defendant PlayShare Ltd.

("PlayShare"), on _____, 2007 at 10 a.m., at the offices of Quinn Emanuel Urquhart Oliver

& Hedges, LLP, 51 Madison Avenue, New York, New York 10010, or at such other time and

place as the parties may agree upon. If the deposition is not completed on the agreed day, it will

continue until completed with such adjournment as to time and place as may be necessary. The

deposition will be taken before a qualified notary public or before some other officer authorized

by law to administer oaths. The deposition will be recorded by stenographic, video and/or audio

means.

       The witness(es) designed by PlayShare shall be the agent(s), representative(s), and/or

employee(s) with the most knowledge of the subjects listed in Schedule A hereto.

11210/2192130.2

DATED:    New York, New York
                _____, 2007

QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP


By: _____
    Robert L. Raskopf (RR-5022)
    Lori E. Weiss (LW-7866)

51 Madison Avenue, 22nd Floor
New York, New York  10010
Tel:  (212) 849-7000
Fax:  (212) 849-7100

ATTORNEYS FOR SOCIETE DES BAINS
DE MER ET DU CERCLE DES
ETRANGERS A MONACO

## SCHEDULE A

## DEFINITIONS

1.  "All" and "each" shall be construed as all and each, respectively.

2.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3.  "Communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

4.  "Concerning," "concern," "regarding," or "relating to" shall mean in whole or in part concerning, relating to, referring to, describing, evidencing, containing, constituting, reflecting, discussing, or in any way legally, logically, or factually connected with the matter discussed.

5.  "Correspondence" shall include all written communications whether made in electronic format, or paper or otherwise.

6.  "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

7.  "Person" shall mean any natural person or any business, legal or governmental entity or association.

8.  "SBM" shall mean Société des Bains de Mer et du Cercle des Etrangers à Monaco and all of its subsidiaries, and their officers, employees, representatives, and all other persons acting or purporting to act on their behalf.

9.     "PlayShare" shall mean PlayShare Ltd. and all of its subsidiaries, and their officers, employees, representatives, and all other persons acting or purporting to act on their behalf.

10.    "Defendants" shall mean PlayShare, Maxwell Wright, Grand Monaco Ltd., Gamshare (UK) Ltd., Lucan Toh and Hilstead Ltd., collectively.

11.    "Monaco Domain Names" shall mean any and all of the domain names that any of the Defendant(s) have registered, maintained, and used containing the terms "Monaco Casino, "Monaco," or variations thereof, including, but not limited to, the following:

| | | |
|---|---|---|
| grandmonaco.com | grandmonacomillions.org | grandmonacolotto.com |
| grandmonacocasino.com | grandmonacopoker.org | grandmonacolounge.com |
| casinograndmonaco.com | grandmonacopokerclub.org | grandmonacomahjong.com |
| deutschesgrandmonaco.com | grandmonacoracebook.org | grandmonacomillions.com |
| grandmonacoayda.com | pokergrandmonaco.org | grandmonaconews.com |
| grandmonacoayuda.com | grandmonacostore.com | grandmonacoonlinecasino.com |
| grandmonacobingo.com | grandmonacosupport.com | grandmonacoonlinegaming.com |
| grand-monaco.com | grandmonacovideopoker.com | grandmonacoonlinepoker.com |
| grand-monaco-casino.com | grandmonaco.net | grandmonacopartners.com |
| grand-monaco-poker.com | casinograndmonaco.net | grandmonacoplayersclub.com |
| grandmonacocasinoclub.com | grandmonacobingo.net | grandmonacopoker.com |
| grandmonacoclub.com | grandmonacocasino.net | grandmonacopokerclub.com |
| grandmonacocraps.com | grandmonacocasinoclub.net | grandmonacopromotions.com |
| grandmonacogames.com | grandmonacogames.net | grandmonacoracebook.com |
| grandmonacogaming.com | grandmonacogaming.net | grandmonacorewards.com |
| grandmonacohost.com | grandmonacolottery.net | grandmonacoskillgames.com |
| grandmonacohosts.com | grandmonacomillions.net | grandmonacoslots.com |
| grandmonacolottery.com | grandmonacoplayersclub.net | grandmonacosports.com |
| casinograndmonaco.org | grandmonacopoker.net | grandmonacosportsbook.com |
| grandmonacocasino.org | grandmonacopokerclub.net | grandmonacosports.net |
| grandmonaco.org | grandmonacoracebook.net | grandmonacosportsbook.net |
| grandmonacocasinoclub.org | grandmonacoskillgames.net | pokergrandmonaco.net |

12.    "Grand Monaco Casino" shall mean the online gambling website accessible through any Monaco Domain Name, controlled and operated by Defendant(s).

13.     "Customer" shall mean any natural person or any business, entity, organization, or association who consists of the actual or potential visitors to the Grand Monaco Casino to engage in online gambling services.

14.     "Affiliate" shall mean any natural person or any business, entity, organization, or association who has been approved by PlayShare Affiliates, G3 Partner, or any other affiliate program operated by or associated with Defendant(s) to promote the Grand Monaco Casino on behalf of Defendant(s).

## TOPICS

1.      All of PlayShare's sales and revenues to date from the ownership or operation of the Grand Monaco Casino derived from interstate commerce, including commerce conducted within the State of New York.

2.      All of PlayShare's sales and revenues to date derived from or attributable to promotion of the Grand Monaco Casino by affiliates residing in the United States, including Affiliates residing in New York.

3.      All advertising, promotions, and any other marketing activities directed to customers, actual or potential, in the United States, including those directed to or including customers, actual or potential, residing in New York.

4.      All advertising, promotions, and any other marketing activities directed to affiliates, actual or potential, in the United States, including those directed to or including affiliates, actual or potential, residing in New York.

5.      The customers and target consumer groups, whether prospective or actual, to whom PlayShare has or will market, advertise, promote or sell goods or services in connection with the Grand Monaco Casino and/or the Monaco Domain Names, including in New York.

6.     The affiliates and target affiliate groups, whether prospective or actual, to whom PlayShare has or will market, advertise, promote or sell goods or services in connection with the Grand Monaco Casino and/or the Monaco Domain Names, including in New York.

7.     The identity and complete registration information of any individuals or entities who are registered customers or registered affiliates in connection with the Grand Monaco Casino.

8.     Oversight and verification of the registration of customers, for both guest and real accounts, and affiliates, including verification of any information provided by such customers and affiliates.

9.     The trade channels through which Defendants offers, have offered, or will offer, for sale any goods or services in connection with the Grand Monaco Casino and/or the Monaco Domain Names, including in New York.

10.    PlayShare's advertisements, marketing materials, promotional materials, sales presentations and public relations materials, including, without limitation, press releases and other communications to the public, relating to the Grand Monaco Casino and/or the Monaco Domain Names, used and/or distributed in the United States, including in New York.

11.    The nature and extent of PlayShare's relationship with Defendants, including, but not limited to, ownership, financial dependency, and marketing and operational policies of Grand Monaco Ltd., GamShare (UK) Ltd., Hillstead Ltd., or any other subsidiary.

12.    The nature of PlayShare's interest in the Monaco Domain Names.

DATED:    New York, New York
          _____, 2007

                              QUINN EMANUEL URQUHART OLIVER &
                                 HEDGES, LLP


                              By:_____
                                 Robert L. Raskopf (RR-5022)
                                 Lori E. Weiss (LW-7866)

                              51 Madison Avenue, 22nd Floor
                              New York, New York  10010
                              Tel:  (212) 849-7000
                              Fax:  (212) 849-7100

                              ATTORNEYS FOR SOCIETE DES BAINS
                              DE MER ET DU CERCLE DES
                              ETRANGERS A MONACO