UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SOCIETE DES BAINS DE MER ET DU
CERCLE DES ETRANGERS A MONACO,

                                Plaintiff,        Case No. 07 Civ. 4802
                                                          (DAB)(RLE)
      vs.

PLAYSHARE PLC, GRAND MONACO LTD.,
GAMESHARE (UK) LTD., LUCAN TOH,
MAXWELL WRIGHT, HILSTEAD LTD.,

                                Defendants.
------------------------------------------------------------x


# DEFENDANTS' REPLY MEMORANDUM
# IN FURTHER SUPPORT OF MOTION TO DISMISS


                                                     Jonathan E. Moskin (JM 9814)
                                                     E. Michelle Dean
                                                     White & Case LLP
                                                     1155 Avenue of the Americas
                                                     New York, NY 10036
                                                     (212) 819-8200
                                                     Attorney for Defendants

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT .................................................................................. 1

II. ARGUMENT ............................................................................................................... 3

   (a) Plaintiff's Efforts to Manufacture Evidence Do Not Show Defendants Transact Business In New York Within the Meaning of CPLR § 302(a)(1) ........................................... 4

   (b) Efforts to Market Services Other than the "Grand Monaco Casino" Are Irrelevant .......... 6

   (c) That the "Grand Monaco Casino" Site is Interactive Is Not a Basis for Jurisdiction ........ 9

   (d) Defendants Have Committed No Tortious Acts Outside the State Causing Injury In New York Within the Meaning of CPLR § 302(a)(3)(ii) ....................................................... 10

   (e) Societe des Bains Has Not Shown a Basis for Jurisdictional Discovery ......................... 11

V. CONCLUSION ........................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

(888) Justice, Inc. v. Just Enterprises, Inc.,
    No. 06 Civ. 6410 (GBD), 2007 WL 2398504 (S.D. N.Y. Aug. 22, 2007) ... 11

Aerotel, Ltd. v. Sprint Corp.,
    100 F. Supp. 2d 189 (S.D. N.Y. 2000) ... 12

Am. Network, Inc. v. Access America/Connect Atlanta, Inc.,
    975 F. Supp. 494 (S.D. N.Y. 1997) ... 9

Asahi Metal Indus. Co. v. Superior Court,
    480 U.S. 102 (1987) ... 6

Bensusan Restaurant Corp., v. King,
    126 F.3d 25 (2d. Cir. 1997) ... 9, 11

Best Van Lines, Inc. v. Walker,
    490 F.3d 239 (2d Cir. 2007) ... 2, 9, 10

Citigroup, Inc. v. City Holding Co.,
    97 F. Supp. 2d 549 (S.D. N.Y. 2000) ... 9

Dagen v. CFC Group Holdings Ltd.,
    No. 00 Civ. 54682 CBM, 2003 WL 21910861 (S.D. N.Y. Aug. 11, 2003) ... 12

Drake v. Lab. Corp. of Am. Holdings,
    No. 02 CV 1924 (FB)(RML), 2007 WL 1704643
    (E.D. N.Y. Jun. 13, 2007) ... 8, 11

Edberg v. Neogen Corp.,
    17 F. Supp. 2d 104 (D. Conn. 1998) ... 4

Filus v. Lot Polish Airlines,
    907 F.2d 1328 (2d. Cir. 1990) ... 11

GTFM, Inc. v. Int'l Basic Source, Inc.,
    No. 01 Civ. 6203 (RWS), 2002 WL 31050840 (S.D. N.Y. Sept. 12, 2002) ... 8

ISI Brands, Inc. v. KCC Int'l, Inc.,
    458 F. Supp. 2d 81 (E.D. N.Y. 2006) ... 4, 5, 9, 10

Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a
    Monaco, 329 F.3d 359 ... 11

Int'l Shoe Co. v. Washington,
    326 U.S. 310 (1945) ........................................................................... 6

Kernan v. Kurz-Hastings, Inc.,
    175 F.3d 236 (2d Cir. 1999) ............................................................. 3

Mattel, Inc. v. Anderson,
    No. 04 Civ. 5275, 2005 U.S. Dist. LEXIS 14404 (S.D. N.Y. Jul. 18, 2005) ........ 4

Mattel, Inc. v. Internet Dimensions Inc.,
    No. 99 Civ. 10066 (HB), 2000 WL 973745 (S.D. N.Y. Jul. 13, 2000) ............ 8

Millennium Enters., Inc. v. Millennium Music LP,
    33 F. Supp. 2d 907 (D. Or. 1999) ....................................................... 4

Merck & Co. v. Mediplan Health Consulting, Inc.,
    425 F. Supp. 2d 402 (S.D. N.Y. 2006) ............................................... 8

New Angle Pet Prods., Inc. v. MacWillie's Golf Prods., Inc.,
    No. 06 Civ. 1171 (DRH) (WDW), 2007 WL 1871345
    (E.D. N.Y. Jun. 28, 2007) .................................................................. 9

NFL v. Miller,
    No. 99 Civ. 11846 (JSM), 2000 WL 335566 (S.D. N.Y. Mar. 30, 2000) ...... 9

Obabueki v. I.B.M. Corp.,
    Nos. 99 Civ. 11262 (AGS), 99 Civ. 12486 (AGS), 2001 WL 921172
    (S.D. N.Y Aug. 14, 2001) .................................................................. 9

Rosenberg v. PK Graphics,
    No. 03 Civ. 6655 (NRB), 2004 WL 1057621 (S.D. N.Y. May 10, 2004) ...... 9

Seldon v. Direct Response Technologies, Inc.
    No. 03 Civ. 5381 (SAS), 2004 WL 691222 (S.D. N.Y. Mar. 31, 2004) ........ 5

Stewart v. Vista Point Verlag,
    No. 99 Civ. 4225, 2000 U.S. Dist. LEXIS 14236 (S.D. N.Y. Sept. 29, 2000) .... 4

Telebyte, Inc. v. Kendaco, Inc.,
    105 F. Supp. 2d 131 (E.D. N.Y. 2000) ............................................... 9

Uebler v. Boss Media, AB,
    363 F. Supp. 2d 499 (S.D. N.Y. 2005) ............................................... 9

Whitaker v. Am. Telecasting Inc.,
    261 F.3d 196 (2d Cir. 2001) ............................................................ 11

## STATUTES

C.P.L.R. §302 ........................................................................................... 2

C.P.L.R. § 302(a)(1) ................................................................................. 3

C.P.L.R. § 302(a)(2) ............................................................................. 3, 9

C.P.L.R. §302(a)(3)(ii) ............................................................ 2, 10, 11, 12

## I.     PRELIMINARY STATEMENT

Effectively conceding it had no evidence to support its allegations of jurisdiction made in the complaint, Societe des Bains, in response to the motion to dismiss, has instead sought – unsuccessfully as it happens – to manufacture evidence of jurisdiction by hiring an investigator (who gives his names as Shawn Leonardi) to try to lure PlayShare into conducting business having at least some connection with this state. Mr. Leonardi, who identifies for the Court a New York business address, accessed PlayShare's Grand Monaco Casino site – albeit from internet servers having IP addresses in Chicago, Illinois or Washington D.C. – to try to create an on-line account having some apparent connection with this state. Even if Mr. Leonardi had succeeded in engaging PlayShare in an actual business transaction in New York (which, despite his statements to the contrary, he did not), efforts by plaintiff to evade PlayShare's web-blocking technology would not prove PlayShare is purposefully seeking to avail itself of the privilege of doing business here. To the contrary, the mere fact that PlayShare has erected such safeguards – which it has never contended are completely infallible – demonstrates that no ordinary definition of the word "purposeful" permits a conclusion it is purposefully seeking to avail itself of the privilege of doing business here.

Although he does not say so, Mr. Leonardi's efforts to dodge PlayShare's web-blocking technology in fact failed, and PlayShare's screening process worked precisely as intended. Indeed, although Mr. Leonardi has been less than fully candid in disclosing what he did, in truth, when he sought to engage in an actual commercial transaction on PlayShare's website, he was refused because PlayShare identified a New York address for the credit card he provided. (Supp. Wright Decl. ¶¶ 2-5; Ex. A.) Although his declaration (and plaintiff's papers) curiously say nothing about this failure, Societe des Bains' principal argument for establishing jurisdiction is simply false.

Ignoring the further requirement of C.P.L.R. §302 that there be "some 'articulable nexus between the business transacted and the cause of action sued upon,'" or a "substantial relationship between the transaction and the claim asserted", Best Van Lines, Inc. v. Walker, No. 490 F.3d 239, 249 (2d Cir. 2007), Societe des Bains continues to focus on promotional activities engaged in by PlayShare for its PokerShare business, having nothing to do with the Grand Monaco Casino. These include the May 2006 gasoline giveaway (well before PlayShare acquired the Grand Monaco Casino) and the "Mikey the Chimp" character, which PlayShare similarly discontinued using for marketing in October 2006 (again, before it acquired the Grand Monaco Casino). Neither has any nexus with the claims in suit.

While expressly conceding that none of the defendants has any physical or other presence here, Societe des Bains, by its silence and evasive statements, also effectively concedes it too has no actual business in New York using the name that is the subject of its complaint, "Casino De Monaco".[1] Regardless whether it or the Principality of Monaco has some postal address in New York to support tourism to Monaco, or even having some connection to its Monte Carlo casino, it is quite clear Societe des Bains has never promoted the "Casino de Monaco" from New York, because there is no such thing as the "Casino de Monaco". Laying aside whether, as a result, there exists any substantive trademark controversy for this or any other U.S. court to resolve, as a practical matter Societe des Bains has no business in this jurisdiction that is at risk of being injured and thus can not show jurisdiction under C.P.L.R. §302(a)(3)(ii).

Plaintiff also now calls attention to PlayShare's affiliates program (not specified in the complaint as a basis for jurisdiction), through which third-party website owners can offer advertising for PlayShare's websites. However, PlayShare has essentially no New York affiliates. Of 389 affiliates for its Grand Monaco Casino overall, at most two have any

---

[1] Whatever Societe des Bains has been doing in New York for the past twenty years (which is entirely a mystery), it is clear that can not have been promoting or using the only name in issue "Casino de Monaco", as plaintiff does not even contend it conceived an intent to use the name until 2002.

connection with this State. (Supp Wright Decl. ¶ 6). The total business to New York thus has been an expense of $76, representing .0017% of PlayShare's total revenues from the affiliate program for its Grand Monaco Casino. (Id.) Moreover, even to the extent any affiliates happen to have contacts with New York, they are not consumers and are not at any risk of being confused as to PlayShare's relationship with Societe des Bains.

Although plaintiff grandly insists that PlayShare "must stand trial somewhere" for using a name vaguely similar to Societe des Bains' apparently fictitious trademark (Pl. Brf at 2), the simple answer to that jurisdictional challenge is that plaintiff itself has expressly consented to jurisdiction in Arizona, where PlayShare retained the services of a domain name registrar, Go Daddy Software, to register the names in issue. (See Amended Complaint Ex. D at p. 27 – App. A hereto.) Societe des Bains' consent to jurisdiction in Arizona was, indeed, a required component of its having commenced before the World Intellectual Property Organization ("WIPO") the domain name dispute that underlies the present action. Finally, in demanding discovery, plaintiff effectively concedes what is apparent on the face of the complaint: namely, that it has no present knowledge to support the allegations of jurisdiction. However, if depositions of Mr. Wright and PlayShare's 30(b)(6) designee are permitted to go forward, such depositions should occur where the witnesses reside.

## II. ARGUMENT

Plaintiff accepts that it "bears the burden of showing that the court has jurisdiction over the defendant." Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999). Plaintiff also acknowledges that there is no evidence any of the defendants has any actual presence in the State of New York. (Pl. Br. at 2.) Plaintiff thus concedes that defendants have committed no tortious acts in the state within the meaning of C.P.L.R. § 302(a)(2). Its arguments to support jurisdiction under Section 301(a)(1) or (2) are unavailing.

(a)     Plaintiff's Efforts to Manufacture Evidence Do Not Show Defendants Transact Business In New York Within the Meaning of CPLR § 302(a)(1)

In ISI Brands, Inc. v. KCC Int'l, Inc., 458 F. Supp. 2d 81 (E.D.N.Y. 2006), the court explained why efforts to manufacture jurisdiction (as Mr. Leonardi has done) are unavailing:

> It is beyond dispute that jurisdiction cannot be manufactured by the Plaintiff. [Edberg v. Neogen Corp., 17 F. Supp.2d 104, 112 (D. Conn. 1998)]; Stewart v. Vista Point Verlag, No. 99 Civ. 4225, 2000 U.S. Dist. LEXIS 14236, at *11 (S.D.N.Y. Sept. 29, 2000) (the plaintiff's allegation that the defendant accepted its direct order and indicated that it would be shipped directly to the plaintiff does not confer jurisdiction over the defendant because the contact was initiated by plaintiff)).

Id. at 89. Mattel Inc. v. Anderson, No. 04 Civ. 5275, 2005 U.S. Dist. LEXIS 14404, at *6-7 (S.D.N.Y. July 18, 2005), similarly found that an order placed on defendant's website by plaintiff's private investigator in New York was "nothing more than an attempt by plaintiff to manufacture a contact with this forum", and that, as a result, "Defendant cannot be said to have 'purposefully availed [herself] of the protections of this forum when it was an act of someone associated with plaintiff, rather than [her] web site advertising, that brought [her] products into this forum." Id. at *2 (quoting Millennium Enters. Inc. v. Millennium Music LP, 33 F. Supp. 2d 907, 911 (D.Or. 1999).[2] Mattel Inc. further clarified that because a claim for trademark infringement requires proof of likelihood of confusion, and because the plaintiff or its agents are not confused by their own litigation stratagems, such efforts are irrelevant.

Not only is the "evidence" manufactured by plaintiff's investigator, Mr. Leonardi, inadmissible as a matter of law, the fact is he and the plaintiff have been less than candid in concealing not only the actual IP addresses he used to log-on to PlayShare's website, but in obscuring his actual failure do business (in New York) with PlayShare. The key IP address Mr.

---

[2] In ISI Brands, Inc., the court likewise dismissed where "the two orders placed by the Plaintiff were 'nothing more than an attempt by plaintiff to manufacture a contact with this forum.' 458 F. Supp 2d at 88 (citing Mattel Inc.). Moreover, it was "the acts of [ISI] that brought the infringing product into the forum, not [KCC]'s promotion, advertising, or sales activities." Id. citing Edberg v. Neogen Corp., 17 F. Supp. 2d 104, 112 (D. Conn. 1998).

Leonardi used was based in either Chicago, Illinois or Washington, DC. (Supp. Wright Decl. ¶¶ 2-3.) The statement in his declaration (Leonardi Decl. ¶ 4) that his office's internet server is based in New York is at best misleading. Moreover, although his declaration is silent on the point, when Mr. Leonardi attempted to deposit money in the account, he was immediately rejected because PlayShare's blocking tools detected the New York billing address of his credit card. (Supp. Wright Decl. ¶ 4.) Although Mr. Leonardi tendentiously touts his apparent ability to register a real account with a fictitious address,[3] in reality PlayShare's blocking technology worked exactly as intended in preventing a New Yorker from doing business on its Grand Monaco Casino website. As for Mr. Leonardi's guest account, because it would not permit the Internet user to engage in any actual commerce with the Grand Monaco Casino, it is irrelevant. As far as PlayShare is aware, its technology has never failed. (Supp. Wright Dec. ¶ 5.)

The very fact that Mr. Leonardi, to try to open a real account, used a fictitious address outside New York when he was prompted on-line to enter a physical address, shows PlayShare is not purposefully doing business here. Although (as Mr. Leonardi knows), PlayShare uses methods far more sophisticated than the honor system to block New Yorkers, simply that a New Yorker must dissemble to be permitted access to the Grand Monaco website shows PlayShare is not purposefully seeking to do business with such individuals (in this or other particular states). Consistent with the legal precedents counseling "reluctan[ce] to find personal jurisdiction unless the website specifically targets New Yorkers, or is aimed at New York users," ISI Brands, Inc., 458 F. Supp. 2d at 86, this Court should decline to exercise personal jurisdiction here.[4] Indeed,

---

[3] The argumentative style of Mr. Leonardi's declaration evidences open advocacy rather than neutral reporting of fact and so raises concerns what other undisclosed efforts he made to generate evidence.

[4] Seldon v. Direct Response Technologies, Inc., No. 03 CIV. 5381(SAS), 2004 WL 691222 (S.D.N.Y. Mar. 31, 2004), summarized the main issues arising from internet commerce cases as follows:
> Courts assessing whether internet activity permits the exercise of personal jurisdiction "have identified an array of fact patterns." [Citation omitted.] At one end of the spectrum are "passive" websites which display, but do not permit an exchange of, information. "At the other end of the spectrum are cases in which the defendant clearly does business over the Internet ... Occupying the

ever since mid-October 2006 (even before they acquired the Grand Monaco Casino business), defendants have affirmatively refused the privilege of conducting activities within New York.

Societe des Bains also cites PlayShare's affiliates program, under which PlayShare allows third-party website owners to receive compensation for advertising PlayShare's Internet sites. However, although the affiliates program has many participants, virtually none is in New York. Of 389 affiliates who advertise the Grand Monaco Casino, only two have any contact with New York. The two affiliates have been compensated all of $76, a tiny (.0017%) part of the revenues PlayShare has earned ($4,315,719) from affiliates of the Grand Monaco Casino overall (Supp. Wright Decl. ¶ 6), and an even more negligible element of PlayShare's entire business (which plaintiff itself estimates at $120 million from the Grand Monaco Casino alone (Complaint ¶ 45)). Such ephemeral commerce does not establish "minimum contacts" sufficient to sustain jurisdiction. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987). Indeed, because member affiliates are not consumers and are not at risk of being confused (even if there were a real trademark "Casino de Monaco"), the relationship with affiliates is not even relevant.

(b) Efforts to Market Services Other than the "Grand Monaco Casino" Are Irrelevant

Ignoring the requirement that there be an 'articulable nexus" and a "substantial relationship between the transaction and the claim asserted", Societe des Bains continues to focus on PlayShare's extraneous promotion of its PokerShare website – both through the gasoline giveaway in May 2006 (as alleged in the complaint and addressed in PlayShare's original moving papers), and now, by reference to the "Mikey the Chimp" promotional character. There is no suggestion either promotional program had anything to do with the Grand Monaco

---

middle ground are 'interactive' websites, which permit the exchange of information between the defendant and website viewers." Id.

Id., at *3

Casino. (Supp. Wright Decl. ¶ 10.) They did not. Indeed, both were discontinued prior to PlayShare's acquisition of Naden and the relevant business. (Id.)[5]

Nor is there any evidence that GamShare, which operates the businesses PokerShare and CasinoShare, or Hillstead, which simply provides back-office processing of financial transactions for PlayShare, in any way uses the name in issue, Grand Monaco Casino, in this or any other jurisdiction. The most that plaintiff has offered among the literally hundreds of pages it has assembled is a harmless error on one page of the PlayShare affiliates website that suggested (incorrectly) that PlayShare is a subsidiary of GamShare, when in fact the relationship is just the opposite. (Levick Decl. Ex. 19.) The page has now been corrected. (See Supp. Wright Decl. ¶ 9; see also http://www.playshareaffiliates.com/about_us.aspx.) The Complaint itself reflects plaintiff's correct understanding of the relationship between PlayShare and its subsidiary, GamShare (Complaint ¶¶ 6,8) – as well as Hillstead's limited back-office role. (Id. ¶ 11.)

Without disputing that the Grand Monaco Casino is in fact operated by Naden, Inc., or that PlayShare acquired Naden and the Grand Monaco Casino in November 2006, Societe des Bains notes that a company called Grand Monaco Ltd. was incorporated in March 2007. Although, regrettably, PlayShare's Chief Executive Officer had not recalled at the time of his original declaration that this bare legal entity had been created, this might perhaps be better understood by noting that the entity is not yet a trading company; has no employees; has no income; generates no reports, and has not yet had any regular meetings. (Supp. Wright Decl. ¶ 8.) Moreover and most important, the newly created entity is not involved in operating the Grand Monaco Casino. (Id.) Because PlayShare has never made a secret of the actual subsidiary that does operate the Grand Monaco Casino (namely, Naden), any questions whether the new entity is connected to this forum or the Grand Monaco Casino are easily resolved: since it does

---

[5] Whether or not the chimp character appeared on a radio show in 2007 (Levick Decl Ex. 34) it was not to promote PlayShare.

not trade at all, it does not trade in New York. Moreover, although PlayShare also explained in its moving papers that it refers to Naden under the assumed name "Grand Monaco Ltd." (Wright Decl. ¶ 3; Supp. Wright Decl. ¶ 7), plaintiff seeks to sow doubt simply because many (most likely even most or all) public statements by PlayShare do refer to the on-line casino by that assumed name, not by reference to Naden. However, that plaintiff took the trouble to research the relevant company records to find the proof of the recent UK incorporation of the shell company suggests that its searches confirmed as well that Naden is indeed the actual entity in interest. Finally, to resolve any further questions regarding Naden, Mountain Breeze Trust, mentioned by Plaintiff (Pl. Brf. at 3 n.3), was simply the prior owner of Naden, from which PlayShare acquired the company (Supp. Wright Decl. ¶ 7.) Wayne Smith was the individual who registered the relevant domain names for Naden/Mountain Breeze Trust. (Id.)

Even assuming the court has jurisdiction over PlayShare, that is not a basis to sue here the individual defendants, Mr. Wright and Mr. Toh. Merck & Co. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 419 (S.D.N.Y. 2006). Rather than demonstrating specific facts that either individual "has transacted business in New York in his individual capacity", id., plaintiff simply cites two cases indicating that individual officers can, under appropriate circumstances, be liable substantively for infringing conduct of their companies.[6] Even if Mr. Wright or Mr. Toh did thus face liability for conduct undertaken by Naden or PlayShare (which of course is not conceded, particularly as the name Grand Monaco Casino was adopted by Naden before PlayShare even owned the company), that does not even begin to answer the question whether this is the proper court to assess their individual liability. Drake v. Lab. Corp. of Am. Holdings, No. 02 Civ. 1924, 2007 WL 776818, at *11 (E.D.N.Y. Mar. 13, 2007) (allegations

---

[6] Mattel, Inc. v. Internet Dimensions, Inc., No. 99 Civ. 10066, 2000 WL 973745 (S.D.N.Y. Jul. 13, 2000), was not a jurisdictional motion at all. GTFM, Inc. v. Int'l Basic Source, Inc., 01 Civ. 6203, 2002 WL 31050840 (S.D.N.Y. Sept. 12, 2002), although it did include a jurisdictional motion, discussed the role of defendant's owner, president and sole employee solely in the context of whether he could be personally liable for the acts of the company. Id. at *6.

regarding corporation could not be attributed to employee for purposes of jurisdiction). Neither individual is transacting business in New York in matters having any nexus with the subject matter of this suit, and the Court is without personal jurisdiction over either.

(c) That the "Grand Monaco Casino" Site is Interactive Is Not a Basis for Jurisdiction

PlayShare explained in its moving brief that the level of interactivity of a website is simply not the criterion on which to sustain jurisdiction, and that "interactivity" is relevant "only insofar as it helps to decide whether the defendant 'transacts any business' in New York – that is, whether the defendant, through the website, purposefully avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." Best Van Lines, 490 F.3d at 252 (citation omitted).[7] In those cases where a court found personal jurisdiction over the operator of a highly interactive website, "unlike here, the plaintiff first established some further contact with the forum state." ISI Brands, 458 F. Supp. 2d at 86, 88 (citing Rosenberg v. PK Graphics, No. 03 Civ. 6655 (NRB), 2004 WL 1057621, at *1 (S.D.N.Y. May 10, 2004)).[8]

---

[7] ISI Brands, Inc. further explains:

> The existence of a website outside New York, even one that offers a product for sale, cannot alone confer jurisdiction over the defendant under CPLR §302(a)(2). Bensusan, 126 F.3d at 29; Telebyte, 105 F.Supp.2d at 134; Citigroup, 97 F.Supp.2d 549. "Although it is in the very nature of the Internet that the allegedly infringing marks contained in these websites can be viewed anywhere, this does not mean that the infringement occurred everywhere." Citigroup, 97 F.Supp.2d 549. Courts have held that, when websites display infringing marks, the tort is committed where the website is created and/or maintained. See id.; NFL, 2000 WL 335566, 2000 U.S. Dist. LEXIS 3929; Am. Network, Inc. v. Access America/Connect Atlanta, Inc., 975 F.Supp. 494, 497 (S.D.N.Y. 1997).

458 F. Supp. 2d at 89-90. Any other rule, could confer worldwide jurisdiction simply for having a website. Id. at 90.

[8] The 2001 decision on which plaintiff principally relies, Obabueki v. I.B.M. Corp., 2001 WL 921172 (S.D.N.Y. Aug. 14, 2001), to the extent it purported to rely simply on the interactive nature of defendant's website as a basis for jurisdiction, is of doubtful continuing force today. In the other case on which Societe des Bains principally relies, Uebler v. Boss Media, AB, 363 F. Supp. 2d 499 (S.D.N.Y. 2005), even a direct contractual relationship between a New York resident and the subsidiary of an foreign on-line gaming company was not itself sufficient to support jurisdiction when the defendant breached; it merely supported plaintiff's request for jurisdictional discovery. In the remaining case principally relied upon by plaintiff, New Angle Pet Prods., Inc. v. MacWillie's Golf Prods., Inc., No.06 Civ. 1171 (DRH), 2007 WL 1871345 (E.D.N.Y June 28, 2007), the defendant admitted making sales of

Plaintiff ignores the Second Circuit's <u>legal</u> holding in <u>Best Van Lines</u> (or purports to distinguish it on the narrow <u>factual</u> grounds that the message there posted on-line was not sufficiently interactive (Pl. Brf at 9 n.5)). Similarly, in <u>ISI Brands</u>, which Societe des Bains likewise barely addresses, the court refused to find that the defendant had sufficient contacts with New York, notwithstanding that neither party contested that the defendant operated a generally accessible commercial website. The court held that the plaintiff failed to allege that the defendant purposefully solicited New York customers, made mailings to New York residents, entered contracts in New York or in any other manner directed its website to New York consumers. <u>Id.</u> at 87. Thus, even though the defendant admittedly sold products nationally through its interactive website, and placed no restrictions on the ability of anyone in New York to access or make purchases using the website, the contacts were insufficient to justify the exercise of personal jurisdiction. <u>Id.</u> Defendants here have even less of a connection with the State of New York because they expressly refuse to transact business with New Yorkers.

(d) Defendants Have Committed No Tortious Acts Outside the State Causing Injury In New York Within the Meaning of CPLR § 302(a)(3)(ii)

If there really were such a thing as the "Casino de Monaco", it would have been very simple for Societe des Bains to say so affirmatively and under oath in a declaration of a company representative with personal knowledge that the New York office has been used – ever – to support the business. It would have been equally simple to present specimens of goods or advertisements for goods or services. No such proof is offered. Even if it had been, that of course would not show it was foreseeable to PlayShare that its use of the name Grand Monaco Casino (in jurisdictions other than New York) was likely to cause injury here, but it might at least have created a predicate to ask the question. Instead, Societe des Bains continues to point to unverified claims in the complaint concerning its efforts to promote or protect the name

---

the pet product in issue directly to New York and plaintiff alleged that defendant had direct ties to two New York distributors, one of which sold to a major New York retailer with 110 stores in the state.

"Casino de Monte Carlo"[9], making no effort to show there truly is something called the Casino de Monaco, much less that it was foreseeable to PlayShare that plaintiff would suffer injury in New York had its purported trademark been infringed here. Accordingly, there is no jurisdiction under C.P.L.R. §302(a)(3)(ii). Bensusan Rest. Corp. v. King, 126 F.3d 25, 29 (2d Cir. 1997) (foreseeability and substantial revenue – must be pleaded and shown). See also (888) Justice, Inc. v. Just Enterprises, Inc., No. 06 Civ. 6410 (GBD), 2007 WL 2398504 at *4 (S.D.N.Y. Aug. 22, 2007) ("the 'occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for [personal] jurisdiction under §302(a)(3) where the underlying events took place outside New York.'" Id., quoting Whitaker v. Am. Telecasting Inc., 261 F.3d 196, 209 (2d Cir. 2001).

(e)     Societe des Bains Has Not Shown a Basis for Jurisdictional Discovery

To show that it has made a "sufficient start toward establishing jurisdiction" to warrant discovery, Drake, 2007 WL 776818 at *98, plaintiff simply terms "reasonable" its demonstrably incorrect "belief" that defendants are transacting business in New York, based on inadmissible manufactured evidence, the affiliate program (having at most de minimis ties to New York) and promotional efforts for services having no nexus with this suit. The availability of jurisdictional discovery is conditioned on the notion that a plaintiff's allegations must, at a minimal, establish jurisdiction as a matter of law. See, e.g., Drake, 2007 WL 776818 at *9 (denying request for jurisdictional discovery where allegations regarding corporation could not be attributed to employee as a matter of law). See Filus v. Lot Polish Airlines, 907 F.2d 1328, 1332 (2d Cir. 1990) (holding that a "reasonable basis for asserting jurisdiction" was a necessary precondition

---

[9] These efforts include references to the litigation, Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco, 329 F.3d 359 (4th Cir. 2003), which had nothing to do with the name Casino de Monaco. (Pltf Br. at 17.) The reference to a second litigation, Societe des Bains de Mer et du Cercle des Estrangers a Monaco v. Empire Online, Ltd., No 06 Civ. 4209 (DLC) (June 2, 2006), is not accompanied by an actual cite or even identification of the court where the case allegedly was litigated.

for obtaining jurisdictional discovery – the basis must be reasonable as a matter of law. Plaintiff's various theories do not establish jurisdiction.

Nor do the cases plaintiff cites show a bare allegation of interrelatedness of corporations justifies jurisdictional discovery. See, e.g., Aerotel, Ltd. v. Sprint Corp., 100 F. Supp. 2d 189, 194 (S.D.N.Y. 2000). The bald assertion that GamShare, Grand Monaco and Hillstead are "mere departments" of PlayShare would (if proven) be relevant if the entities' activities formed a reasonable basis for jurisdiction. As explained above, they do not. Nor has PlayShare made any secret of the actual subsidiary that is involved in managing the Grand Monaco Casino: Naden. As such, plaintiff is not entitled to jurisdictional discovery concerning these uninvolved entities.

Should jurisdictional discovery be permitted, given the great inconvenience to the deponents (who did not choose this forum) of traveling to New York, any depositions should take place where the witnesses reside. See Dagen v. CFC Group Holdings Ltd., No. 02 Civ. 54682, 2003 WL 21910861, at *2 (S.D.N.Y. August 11, 2003). Mr. Wright is located in South Africa, and PlayShare is headquartered in the United Kingdom.[10]

## V. CONCLUSION

For the foregoing reasons, defendants request that the complaint be dismissed for lack of personal jurisdiction, together with such other and further relief as the Court may deem just and proper.

Dated: September 12, 2007

Respectfully submitted,

By: _____
Jonathan E. Moskin (JM 9814)
E. Michelle Dean
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
212-819-8200
Attorneys for Defendants

---

[10] Defendants also note that such depositions should be at plaintiff's expense, as provided under Local Rule 30.1.