UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SOCIETE DES BAINS DE MER ET DU :
CERCLE DES ETRANGERS A MONACO, :
                              Plaintiff, :    07 Civ. 4802 (DAB) (RLE)

      vs. :

                                 :    **SUPPLEMENTAL**
PLAYSHARE PLC, GRAND MONACO LTD., :    **DECLARATION OF**
GAMSHARE (UK) LTD., LUCAN TOH,     **MAXWELL WRIGHT IN**
MAXWELL WRIGHT, HILSTEAD LTD., :    **FURTHER SUPPORT OF**
                                             **MOTION TO DISMISS**
                        Defendants. :
------------------------------------------------------------x

      I, Maxwell Wright, hereby declare:

1.    I am Chief Executive Officer of defendant, PlayShare PLC and the same individual who executed a previous declaration in this matter dated 20 July, 2007, in support of defendants' motion to dismiss the Amended Complaint. I have personal knowledge of the matters set forth herein and make this declaration in further support of defendants' pending motion.

2.    I have reviewed the declaration of Shawn Leonardi, submitted by Societe des Bains. Our own internal investigation concerning the IP ("internet protocol") address he used to create the guest account (No. FGMG00560650) described in his declaration (paragraph 4) is that he first logged in on 7 August, 2007 at 10:48 a.m. EST from IP 12.40.227.4. That IP address is based in New York, NY. Because guest accounts do not constitute doing business, we do not monitor creation of such accounts. Mr. Leonardi does not note, however, that he again logged in on 10 August, 2007 at 4.22 p.m. EST from the IP address IP 38.98.178.9. That IP address is based either in Chicago, Illinois or Washington D.C. (Although IP addresses don't provide a 1-1

correlation with physical addresses, the address can be determined using somewhat sophisticated electronic algorithms. Nonetheless, on some occasions, this still leaves some degree of uncertainty; hence our inability to resolve whether the address here at issue is in Chicago or Washington. Although not 100% precise, the method we use is the industry standard, state of the art means of determining location. It is, for instance, the same method used to stop overseas viewers watching US professional sports over the internet.)

3.　　　　When Mr. Leonardi initiated creation of the real account, VGMR00551816, described in his declaration (paragraph 4), he again used the IP address IP 38.98.178.9, based in Chicago, Illinois or Washington D.C. He logged in on 31 July, 2007 at 4:26 p.m. EST. His declaration corresponds to our internal records that he registered the address as Washington D.C. at the White House.

4.　　　　Mr. Leonardi does not disclose in his declaration, however, that he also attempted to complete the opening of this account by making a deposit on 31 July, 2007 at 4:31 p.m. EST. He attempted to deposit $100 using a credit card tied to his name at the address: 1601 Third Ave, New York, N.Y. 10128. He received the following "'Automatic Rejection': Reason, Restricted State". In our records, this appears as Transaction No. 414447. A screen shot displaying our internal records of this rejection is attached to this declaration as Exhibit A.

5.　　　　Although Mr. Leonardi argues that PlayShare did not block access when he created a real account, and notes particularly that he used a fake address, in declining to disclose his failed attempted to deposit money in the account, he omits the most important feature of our blocking technology. Indeed, an account is not fully active and can not be used until it contains funds. Thus, it is only at that point (but not sooner) that we would have checked the credit card or bank account information against the street address provided. Although I can not state that the



process we use to block access from particular states is infallible, I can reaffirm that there are no New York addresses registered for PlayShare's on-line casinos, and we do believe the procedures we put in place in October 2006, even before we acquired Naden, Inc. and the Grand Monaco Casino, have taken are effective.  As a practical matter, because our concern is simply whether someone is actually doing business or not, it would be an unnecessary expense for us to conduct due diligence (automated or otherwise) on anyone who initiated the process of creating a real account without actually trying to do business.  An empty template is not of concern.  It is only when the registrant attempts actually to use the account – that is, to engage in actual business – that we undertake a thorough check of the user's credentials.

6.          As Societe des Bains notes, PlayShare, including its Grand Monaco Casino, permits third-parties that operate web-sites of their own to assist in advertising and promoting the site through our "affiliate program".  Parties who sign up receive advertising materials and are then compensated at a modest rate for "click-throughs" from their websites, on a revenue sharing basis or by other flat fee arrangements.  Because the only service affiliates provide is to advertise our sites, and because they do not conduct any actual business, to date we not sought to block access to participate in the affiliate program based on where the affiliate is located.  Nonetheless, although we do not expressly seek to block New Yorkers from advertising our services as affiliates, the fact that we do not do any business in New York (perhaps together with other factors) is evidently very effective in dissuading New Yorkers from signing up as affiliates.  In fact, of the total 389 affiliates associated with PlayShare's Grand Monaco Casino, we have only two affiliates in New York.  Since we acquired the Grand Monaco Casino, the total compensation the two affiliates with some New York connection have been paid for advertising the Grand Monaco Casino is $76 (seventy-six dollars).  By contrast, overall, for the period 13

October 2006 to 1 September 2007, the Grand Monaco Casino affiliate program has earned revenues of $4,315,719, meaning the payments to New York affiliates for the same period represents only .0017% of the total earned. As small as this percentage is, it bears even less relationship to the overall turnover of the company.

7.  I also explained that since November 1, 2006, when PlayShare acquired the company, Naden, Inc., Naden has done business under the name "Grand Monaco Casino". Addressing the question raised by Societe des Bains regarding the relationship of Naden to Mountain View Trust and Wayne Smith, Mountain View was the prior owner, and Mr. Smith, on behalf of Mountain View, had originally registered its domain names. As I further explained then, and can reiterate now, Naden (as PlayShare's subsidiary) continues to do business under the name Grand Monaco Casino, and it is by that name that we refer to the company colloquially in our publicity statements and on our websites.

8.  Because the "Grand Monaco Casino" business is owned and operated by Naden, and because Naden does business under the name Grand Monaco, I explained in my prior declaration that there is no operating legal entity "Grand Monaco Ltd." Regrettably, at the time of my prior declaration, I had not recalled that an entity bearing that name was indeed created in March 2007. However, this is not yet a trading company. It has no income; it produces no reports; it does not yet have regular meetings; it has no employees. (No doubt it was for this reason I did not recall it had been created.) Most important, it is not in any way involved in operating the Grand Monaco Casino. As the date of creation itself makes clear, it is not the operating entity that we acquired the previous year and the entity that still operates the "Grand Monaco Casino", *i.e.*, Naden.



9.  Although Societe des Bains has raised questions regarding the relationships among the various PlayShare and its various subsidiaries, those relationships are as I described them in my prior declaration. Although I am not a lawyer, I am not aware of any deficiencies in the corporate relationships that would undermine the separate legal status of each entity. I will note, however, that from among the hundreds of pages of internet content and print publicity we have published, Societes des Bains did find one error, particularly on the web page http://www.playshareaffiliates.com/about_us.aspx, which states (incorrectly) that "PlayShare is licensed by the Kahnawake Gaming Commission through its parent company, GamShare Limited." As I previously noted, GamShare is a subsidiary of PlayShare. A corrected copy of the page as it now appears on the internet is attached to this declaration as Exhibit B.

10. As I explained in my prior declaration, the one New York-based promotion to which the complaint refers, a gasoline giveaway in May 2006, was conducted to promote our entirely separate PokerShare.com on-line casino in May 2006, before PlayShare had even acquired the Grand Monaco Casino business. Similarly, Mikey the Chimp, to which Societe des Bains now refers, was used solely to promote PokerShare.com, not the Grand Monaco Casino. Our contract with All-Tame Animals Inc., which owns and trained the chimpanzee, expired no later than October 2006, well before we acquired Naden, Inc.

I hereby declare under penalty of perjury under the laws of the United States of America this 12th day of September, 2007 that the foregoing is true and correct.

*[signature]*
Maxwell Wright

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of September, 2007, I served a copy of the **SUPPLEMENTAL DECLARATION OF MAXWELL WRIGHT** on the attorneys for the Plaintiff, as designated below, by ECF Filing as follows:

> Robert L. Raskopf
> Alan Blum
> Lori E. Weiss
> QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
> 51 Madison Avenue, 22nd Floor
> New York, NY 10010

>> s\Jonathan Moskin
>> Jonathan E. Moskin
>> WHITE & CASE LLP
>> 1155 Avenue of the Americas
>> New York, New York 10036