UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE CASINO DE MONACO
TRADEMARK LITIGATION,                    :      Case No. 07 Civ. 4802 (DAB)

                                         :      AMENDED ANSWER TO SECOND
                                                AMENDED COMPLAINT AND
                                                COUNTERCLAIMS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


        Defendants PlayShare PLC ("PlayShare"), Grand Monaco Ltd., GamShare (UK)

Ltd., Lucan Toh, Maxwell Wright, and Hillstead Ltd. (collectively, "Defendants"), by their

attorneys, White & Case LLP, as and for their Amended Answer to the Complaint and

Counterclaims, allege as follows:

## PRELIMINARY STATEMENT

        1.      Admit that there exists a Casino de Monte-Carlo; deny having knowledge

or information sufficient to admit or deny how long it has been in existence, how well known it

is, or plaintiff's role therein or in relation to the Principauté of Monaco; deny that there exists a

Casino de Monaco and deny the remaining allegations of Paragraph 1 of the complaint.

        2.      Admit that defendant PlayShare, through a subsidiary, is the beneficial

owner of the approximately 100 domain names referenced in the Second Amended Complaint

that employ the geographic term "Monaco" in connection with the operation of gaming-related

websites (hereinafter "the Monaco domain names"); admit that Playshare's Grand Monaco

casino websites did once feature the designations "Grand Monaco casino" and "Grand Monaco",

and deny the remaining allegations off Paragraph 2 of the Complaint.

3.      Admit that a PlayShare subsidiary rebranded the Grand Monaco casino websites under the name Grand Mondial, and that there is a small statement on one page of the website (the "who we are" page) inconspicuously noting that it was once named Grand Monaco, and deny the remaining allegations of Paragraph 3.

4.      Admit that Maxwell Wright is the record owner of certain of the Monaco Domain Names at issue in this action which he registered for the benefit of a subsidiary of PlayShare; admit that Mr. Wright is a Director and Chief Executive Officer of PlayShare, and admit that he stated in a submission to the World Intellectual Property Organization ("WIPO") in a related proceeding against SBM, in respect of the geographic designation Monaco and lifestyles associated therewith, and the widespread third-party use of the same geographic designation for just such purposes, that Playshare is "not unique in seeking to get some of the lustre of Monaco by incorporating the word in our name"; and deny the remaining allegation of Paragraph 4.

5.      Deny that Paragraph 5 contains allegations of fact that require admission denial, but deny that defendants have engaged in any acts of unfair competition, trademark infringement, trademark dilution, cyber squatting, or other unlawful conduct under federal law or New York statutory or common law; deny that SBM is suffering any injury, and deny there exists any goodwill or reputation in SBM's claimed trademarks.

**THE PARTIES**

6.      Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6 and therefore deny the same.

7.      Admit that PlayShare PLC ("PlayShare") is a public limited company organized under the laws of the United Kingdom with its principal place of business at 7 Queen

Street, Mayfair, London W1J 5PB, UK and is the parent company of GamShare (UK) Limited and Grand Monaco Limited.

8.     Admit that Grand Monaco Limited is a private limited company organized under the laws of the United Kingdom with an address at 7 Queen Street, Mayfair, London W1J 5PB, UK and is a subsidiary of PlayShare PLC but deny that Grand Monaco Limited is an active business entity.

9.     Admit that GamShare (UK) Limited ("GamShare") is a private limited company organized under the laws of the United Kingdom with its principal place of business at 7 Queen Street, Mayfair, London W1J 5PB, UK, that GamShare is a gaming operator, licensed in Kahnawake, Canada, and that GamShare is a subsidiary of PlayShare.

10.     Admit that defendant Lucan Toh is the registered owner of certain domain names held for the benefit of a subsidiary of PlayShare and that he is a resident of the United Arab Emirates, and deny the remaining allegation of Paragraph 10.

11.     Admit that defendant Maxwell Wright ("Wright") is a Director and the Chief Executive Officer ("CEO") of PlayShare, is currently a resident of South Africa, and is the registered owner of certain domain names held for the benefit of a subsidiary of PlayShare, and deny the remaining allegations of Paragraph 11.

12.     Admit that Hillstead Limited ("Hillstead") has its principal place of business at Suite 2B, Centre Plaza, Main Street, Gibraltar, and that it is an indirect subsidiary of PlayShare that handles, at least in part, the financial transactions for the Grand Monaco casino, and deny the remaining allegations of Paragraph 12.

13.     Admit that Wright is a Director and the Chief Executive Officer of PlayShare and deny remaining the allegations of Paragraph 13.

## JURISDICTION AND VENUE

14.    Deny that defendants have engaged in any acts of or causing unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1125(a), trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); cyber squatting under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(l); deceptive acts and practices in violation of Section 349(h) of the New York General Business Law; false advertising in violation of Section 350-e(3) of the New York General Business Law; caused injury to business reputation or trademark dilution in violation of Section 360-l of the New York General Business Law; or trademark infringement or unfair competition in violation of the common laws of the State of New York or the several states of the United States.

15.    Deny that Paragraph 15 contains any allegations of fact that require admission or denial.

16.    Admit that, pursuant to stipulation, defendants have consented to this Court's exercise of personal jurisdiction over them, and make reference to said stipulation for a true and complete statement of its terms, and deny the remaining allegation of Paragraph 16.

17.    Admit that, by consent, venue is proper and deny the remaining allegation of Paragraph 17.

## THE BUSINESS OF PLAINTIFF SBM

18.    Deny that the terms Monaco and Monte Carlo are interchangeable, and deny having knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 18 and therefore deny the same.

19.    Deny having knowledge or information sufficient to form a belief as to the nature or extent of the recognition of the place Monaco or of the specific casinos operated there

by SBM, and therefore deny such allegations; deny that any use of, recognition for, or rights in

the name "Monte Carlo" or "Casino De Monte-Carlo" confers any rights in or implies any

recognition for the purported name "Monaco" or "Casino De Monaco", deny that there exists

any such business under the name "Casino De Monaco" or that the name has ever been used in

commerce by average American consumers or others; and deny the remaining allegations of

Paragraph 19.

    20.  Deny having knowledge or information sufficient to form a belief as to the

allegations of Paragraph 20 and therefore deny the same.

    21.  Deny having knowledge or information sufficient to form a belief as to the

allegations of Paragraph 21 and therefore deny the same.

    22.  Deny having knowledge or information sufficient to form a belief as to the

allegations of Paragraph 22 and therefore deny the same.

    23.  Deny having knowledge or information sufficient to form a belief as to the

allegations of Paragraph 23 and therefore deny the same.

    24.  Deny having knowledge or information sufficient to form a belief as to the

allegations of Paragraph 24 and therefore deny the same.

    25.  Deny having knowledge or information sufficient to form a belief as to the

allegations of Paragraph 25 and therefore deny the same.

    26.  Deny having knowledge or information sufficient to form a belief as to the

allegations of Paragraph 26 and therefore deny the same.

    27.  Deny having knowledge or information sufficient to form a belief as to the

allegations of Paragraph 27 and therefore deny the same, and deny that any use of, recognition

for, or rights in the name "Monte Carlo" or "Casino De Monte-Carlo" confers any rights in or implies any recognition for the name "Monaco" or "Casino De Monaco".

28.     Deny having knowledge or information sufficient to form a belief as to any uncontrolled uses of the name "Casino De Monte-Carlo" and therefore deny the same; deny that any use of, recognition for, or rights in the name "Monte Carlo" or "Casino De Monte-Carlo" confers any rights in or implies any recognition for the name "Monaco" or "Casino De Monaco" or that any injury to the former implies any injury to the latter and deny the remaining allegations of Paragraph 28.

## **DEFENDANTS' ACCUSED CONDUCT**

29.     Admit that PlayShare, through its subsidiaries, including GamShare, provides and markets online gaming services, including sites formerly operated under the name Grand Monaco casino, and including websites where consumers can download gaming software and utilize online gaming services, and defendants deny the remaining allegations of Paragraph 29.

30.     Admits that PlayShare is the parent company of several online gaming companies, through which it has operated the Grand Monaco casino, PokerShare.com, and CasinoShare.com, the PlayShare affiliates program and G3Partner.com; that PlayShare's subsidiary, GamShare, is licensed by the Kahnawake Gaming Commission, which regulates and controls gaming and gaming related activities conducted within and from the Mohawk Territory of Kahnawake, Canada; that Wright is a Director of PlayShare; and that the PlayShare's subsidiary operates an Affiliates Program and G3Partner.com, through which member third-parties can receive a monthly commission from a PlayShare subsidiary based, *inter alia*, on revenues earned from customers referred by the affiliate; deny that PokerShare.com or

CasinoShare.com are subsidiaries of PlayShare and deny the remaining allegations of Paragraph 30.

31.    Admit that PlayShare acquired the Grand Monaco casino and the G3 affiliate program that promotes it when it acquired Naden, Inc., effective November 2, 2006, including the domain names set forth in the Second Amended Complaint linked to the word Monaco, admit that Wayne Smith held the subject domain names for the benefit of Naden, and deny the remaining allegations of Paragraph 31.

32.    Admit that the Grand Monaco casino was launched by PlayShare's predecessor, in or around June 2006; admit that PlayShare has stated at its websites, to market and promote such services, that the Grand Monaco casino offers players approximately 250 unique games and "innovative monthly promotions"; admit that PlayShare has employed the designations Grand Monaco casino and Grand Monaco in advertising and promotions, deny that defendants have advertised such services nationwide, in New York or in this judicial District, and deny the remaining allegations of Paragraph 32.

33.    Admit that a subsidiary of defendant PlayShare is the beneficial owner of all the domain names identified in Paragraph 33 and deny the remaining allegations thereof.

34.    Admit that Mr. Mr. Wright and Mr. Toh, respectively, registered the subject domain names for the benefit of PlayShare's subsidiary and deny the remaining allegations of Paragraph 34.

35.    Admit that the Grand Monaco casino website did once feature the name Grand Monaco casino as depicted in Paragraph 35 of the Complaint and deny the remaining allegations thereof.

36.    Admit that a subsidiary of PlayShare has a currently operative online casino, Grand Mondial, accessible through the subject domain names; admit that the subject website permits users to download gaming software; and admit that the home page of the website did at one time appear as depicted in paragraph 36 and deny the remaining allegations of Paragraph 37.

37.    Admit that a subsidiary of PlayShare previously provided a link to download its gaming software and "instant flash" on the home page of PlayShare's website, as depicted in paragraph 36, and deny the remaining allegations of Paragraph 37.

38.    Admit that a website of PlayShare's subsidiary previously presented the name Grand Monaco on all or substantially all pages as depicted in paragraph 36, and deny the remaining allegations of Paragraph 38.

39.    Admit that a website of PlayShare's subsidiary and a link to its associated downloadable casino program and "Instant Flash" gaming environment could be viewed anywhere in the United States, but deny that users in many parts of the United States, including New York and this judicial District, can now or could at any relevant time actually engage in any commerce on the site, and deny the remaining allegations of Paragraph 39.

40.    Admit that, on or about May 26, 2006, GamShare organized and publicized a "gas giveaway" promotion for its PokerShare.com business (as described in the company's press release); that GamShare encouraged local radio personalities and media outlets to publicize the event and its PokerShare.com services; that the event was held in this judicial District, at the corner of Canal Street and the West Side Highway, and resulted in a traffic jam that was ultimately shut down by the New York Police Department; that GamShare gave away over eight thousand gallons of gasoline to New York consumers, including consumers in this

judicial District in an attempt to gain attention for its PokerShare.com business, deny that the foregoing promotion was in any way related to the Grand Monaco casino, and deny the remaining allegations of Paragraph 40.

41.    Admit that a computer of PlayShare's subsidiary allows limited interaction with pre-registered customers in the United States, as depicted in Paragraph 41; denies that any such customers are in New York or this Judicial District, and deny the remaining allegations of Paragraph 41.

42.    Deny the allegations of Paragraph 42.

43.    Admit that a subsidiary of PlayShare, since a time prior to PlayShare's acquisition of the company, and for reasons other than those stated in the Second Amended Complaint, had included on its website a truthful statement that was later left in place after the acquisition that read: "Grand Monaco is in no way associated with the Principality of Monaco, nor any of the land-based casino operations located in that jurisdiction.  Grand Monaco is an independent operation;" and deny the remaining allegations of Paragraph 43.

44.    Admit that a subsidiary of PlayShare promotes its subject websites through an "affiliate program", by which affiliates are able to promote PlayShare's services for a commission of revenues earned by Defendants for each individual gambling on Defendants' websites as a result of the affiliate's efforts; admit that PlayShare, through its subsidiary, at a time prior to the commencement of this action, had approximately 463 affiliates to promote these services and websites and had derived approximately 95% of its business from affiliate advertisements displaying the names Grand Monaco casino and Grand Monaco; admit that affiliates provide links to websites of PlayShare's subsidiary in their advertisements, through which consumers were able to link to the Grand Monaco casino website; admit that PlayShare's

subsidiary has advertised, promoted and marketed its gaming services offered in connection with the Grand Monaco casino website, and deny the remaining allegations of Paragraph 44.

45.    Admit that affiliates of PlayShare's subsidiaries have promoted the Grand Monaco casino, and other gaming websites offering casino services operated by PlayShare subsidiaries, including PokerShare.com and CasinoShare.com; admit that Paragraph 45 shows sample promotional materials for such websites; deny having knowledge or information sufficient to admit or deny how effective such promotions may have been and deny the remaining allegations of Paragraph 45.

46.    Admit that the Grand Mondial casino has users in various parts of the world; that the service is available in English, German, French, Spanish and Italian; that payments can be made in various currencies, including US dollars, Canadian dollars, Euros and pounds sterling that recent winners are posted at grandmonaco.com/Winners.aspx, and that a PlayShare subsidiary owns certain ".eu" domain names that incorporate the place name Monaco and deny the remaining allegations of Paragraph 46.

47.    Admit that Mr. Wright has in the past estimated that the amount of business generated by the Grand Monaco casino is "very substantial" and that transactions (not revenues) could have been annualized at approximately $120,000,000; deny that PlayShare is a publicly traded company, deny that its revenues are the result of any association with SBM or its non-existent casino "brands", and deny having knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 47, and therefore deny the same.

48.    Admit that Mr. Wright stated, in a related proceeding against SBM, in respect of the geographic designation Monaco and lifestyles associated therewith, and the widespread third-party use of the same geographic designation for just such purposes, that

Playshare is "<u>not unique</u> in seeking to get some of the lustre of Monaco by incorporating the word in our name"; and deny the remaining allegation of Paragraph 48.

49.    Admit that on or about May 25, 2007, in a proceeding under the Uniform Domain Name Dispute Resolution Policy initiated by SBM on March 21, 2007, WIPO entered a non-final decision entitled to no precedential weight (and consistent with its pattern of upholding essentially all domain name complaints) recommending transfer of 66 of the subject Monaco domain names to SBM, and deny the remaining allegations of Paragraph 49.

50.    Admit that, on or about August 14, 2007, after the commencement of the instant legal, PlayShare's subsidiary rebranded the Grand Monaco casino as the Grand Mondial casino, and that there now exists on the site a small inconspicuous statement that "Grand Mondial is a casino that launched originally as Grand Monaco in July 2006."; and deny the remaining allegations of Paragraph 50.

51.    Admit that the name Grand Mondial casino is presented as shown in Paragraph 52 and that the name Grand Monaco casino was presented as shown in Paragraph 38 of the complaint, and deny the remaining allegations of Paragraph 51.

52.    Admit that certain of the Monaco domain names link to the "rebranded" Grand Mondial casino website; that two of the currently Monaco domain names link to the website at grandmondial.com; that approximately 83 of the subject Monaco domain names link to the Grand Mondial casino, deny having knowledge or information sufficient to form a belief as to the extent to which customers of the Grand Monaco casino now use the Grand Mondial casino because the domain name remains the same, and therefore deny the same, and deny the remaining allegations of Paragraph 52.

53.     Admit that Wright, on behalf of a PlayShare subsidiary, has registered the 34 domain names to be used in connection with the Grand Mondial casino website, and deny the remaining allegations of Paragraph 53.

54.     Deny the remaining allegations of Paragraph 54.

55.     Deny the allegations of Paragraph 55.

56.     Deny the allegations of Paragraph 56.

57.     Deny the allegations of Paragraph 57.

58.     Deny the allegations of Paragraph 58.

### COUNT I — FEDERAL UNFAIR COMPETITION

59.     Defendants repeat and reallege their responses to paragraphs 1 through 59 above as if set forth at length herein.

60.     Deny the allegations of Paragraph 60.

61.     Deny the allegations of Paragraph 61.

62.     Deny the allegations of Paragraph 62.

63.     Deny the allegations of Paragraph 63.

### COUNT II — FEDERAL TRADEMARK INFRINGEMENT

64.     Defendants repeat and reallege their responses to paragraphs 1 through 63 above as if set forth at length herein.

65.     Deny the allegations of Paragraph 65.

66.     Deny the allegations of Paragraph 66.

67.     Deny the allegations of Paragraph 67.

68.     Deny the allegations of Paragraph 68.

## COUNT III — FEDERAL CYBERSQUATTING

69.    Defendants repeat and reallege their responses to paragraphs 1 through 69 above as if set forth at length herein.

70.    Deny the allegations of Paragraph 70.

71.    Deny the allegations of Paragraph 71.

72.    Deny the allegations of Paragraph 72.

## COUNT IV — DECEPTIVE ACTS AND PRACTICES UNDER NEW YORK LAW

73.    Defendants repeat and reallege their responses to paragraphs 1 through 72 above as if set forth at length herein.

74.    Deny the allegations of Paragraph 74.

75.    Deny the allegations of Paragraph 75.

## COUNT V — FALSE ADVERTISING UNDER NEW YORK LAW

76.    Defendants repeat and reallege their responses to paragraphs 1 through 75 above as if set forth at length herein.

77.    Deny the allegations of Paragraph 77.

78.    Deny the allegations of Paragraph 78.

79.    Deny the allegations of Paragraph 79.

## COUNT VI — INJURY TO BUSINESS REPUTATION AND DILUTION UNDER NEW YORK LAW

80.    Defendants repeat and reallege their responses to paragraphs 1 through 79 above as if set forth at length herein.

81.    Deny the allegations of Paragraph 81.

82.    Deny the allegations of Paragraph 82.

83.    Deny the allegations of Paragraph 83.

## COUNT VII — COMMON LAW TRADEMARK INFRINGEMENT

84.     Defendants repeat and reallege their responses to paragraphs 1 through 83 above as if set forth at length herein.

85.     Deny the allegations of Paragraph 85.

86.     Deny the allegations of Paragraph 86.

87.     Deny the allegations of Paragraph 87.

## COUNT VIII — COMMON LAW UNFAIR COMPETITION

88.     Defendants repeat and reallege their responses to paragraphs 1 through 87 above as if set forth at length herein.

89.     Deny the allegations of Paragraph 89.

90.     Deny the allegations of Paragraph 90.

91.     Deny the allegations of Paragraph 91.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

92.     The Complaint fails in whole to state a claim for which relief can be granted against some or all of the parties.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

93.     The Complaint is barred, in whole or in part, under principles of fair use.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

94.     The Complaint is barred, in whole or in part, under principles of territoriality of trademark rights.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

95.     The Complaint is barred, in whole or in part, by plaintiff's non-use of the subject trademark, Casino de Monaco.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

96.    The Complaint is barred, in whole or in part, for failure to name a necessary party.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

97.    The Complaint is barred, in whole or in part, under principles of laches.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

98.    The Complaint is barred, in whole or in part, under 15 U.S.C. § 1126(d)(4).

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

99.    The Complaint is barred, in whole or in part, under principles of estoppel.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

100.    Plaintiffs are without standing to assert some or all of the claims set forth in the Complaint.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, under principles of unclean hands.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

101.    The prayer for relief in the Complaint is barred, in whole or in part, under 15 U.S.C. § 1111.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE AND FIRST COUNTERCLAIM

102.    Counterclaim-plaintiff PlayShare PLC ("PlayShare") is a public limited company organized under the laws of the United Kingdom with its principal place of business at 7 Queen Street, Mayfair, London W1J 5PB, UK.

103.    Upon information and belief, counterclaim-defendant SBM is a societe anonyme organized and existing under the laws of the Principaute of Monaco, with a principal place of business at Place du Casino, Monte Carlo MC 9800.

104.    The Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121(a), as it involves substantial claims under the Trademark Act of 1946, and under 28 U.S.C. §§ 2201 and 2202.

105.    Venue is proper under 28 U.S.C. § 1391(b) and (c).

106.    On or about November 2, 2006, PlayShare acquired the capital shares of the owner of an online gaming business operated under the name Grand Monaco.

107.    Included among the assets PlayShare acquired were the subject Monaco domain names set forth in paragraph 33 of the Complaint; which have been registered with GoDaddy.com, Inc., an Arizona corporation and a domain name registrar accredited by the Internet Corporation for Assigned Names and Numbers (hereinafter "ICANN") with a principal place of business at 14455 North Hayden Road, #219, Scottsdale, Arizona 85260; and which were the subject of a prior arbitral proceeding between the parties before the World Intellectual Property Organization ("WIPO") as set forth more fully below.

108.    As set forth in the Complaint herein, certain of the domain names, including grandmonaco.com and grandmonacocasino.com, were registered by PlayShare's predecessor on or before December 20, 2005.

109.    Certain of the subject Monaco domain names, including Grandmonaco.com, were first registered and in use as early as August 2000, and the name Grand Monaco was used in connection therewith as early as August 2000.

110.    Prior to PlayShare's acquisition of the subject Monaco domain names, SBM had never objected to use thereof by the prior users thereof, and PlayShare was unaware of any possible adverse claim by SBM thereto.

111.    Subsequent to its acquisition of the subject Monaco domain names, PlayShare's subsidiary has continued the development of a substantial international business operated at a website linked to the subject names.

112.    Indeed, although PlayShare is aware that there exists a casino business known as Casino de Monte Carlo operating in Monte Carlo, to PlayShare's knowledge there does not now exist and never has existed any actual business named Casino de Monaco, whether operated by or for SBM or anyone else.

113.    Neither PlayShare nor any of its subsidiaries has ever used the name Casino de Monaco on or in connection with its businesses.

114.    The complaint does not allege and SBM is not aware that either PlayShare or any of its subsidiaries has ever used the name Casino de Monaco on or in connection with its businesses.

115.    Neither PlayShare nor any of its subsidiaries has ever used the name Casino de Monte Carlo on or in connection with its businesses.

116.    The complaint does not allege and SBM is not aware that either PlayShare or any of its subsidiaries has ever used the name Casino de Monte Carlo on or in connection with its businesses.

117.    Neither PlayShare nor any of its subsidiaries has ever offered casino services within a hotel resort environment.

118.    The complaint does not allege and SBM is not aware that either PlayShare or any of its subsidiaries has ever offered casino services within a hotel resort environment.

119.    Casino de Monaco means literally casino of Monaco.

120.    On or about July 1, 2002, SBM applied in the United States Patent and Trademark Office ("PTO"), Application Serial No. 76/478,796, for registration of the mark Casino de Monaco

121.    Application Serial No. 76/478,796 was filed after the first use of the name Grand Monaco.

122.    SBM's Application Serial No. 76/478,796 was based, *inter alia*, on a claimed *bona fide* intent to use the mark for all of the following goods and services:

(a) In International Class 9: scientific, nautical, geodesic, electric, photographic, cinematographic, optical, weighing, measuring, signaling, checking (supervision), life-saving and teaching apparatus and instruments; apparatus for recording, transmission, reproduction of sound or images; magnetic data carriers, acoustics discs; automatic vending machines and mechanisms for coin-operated apparatus; cash registers, calculating machines, data processing equipment and computers; fire extinguishing apparatus;

(b) In International Class 16: paper, cardboard and goods made from these materials not included in other classes; printed matter, bookbinding material; photographs; stationery; adhesives (sticky materials) for stationery or household purposes; artists' materials, paint brushes; typewriters and office requisites (except furniture); instructional and teaching material (except apparatus); plastic materials for packaging (not included in other classes); playing cards; printers' type; printing blocks;

(c) In International Class 28: games and playthings; gymnastics and sporting articles not included in other classes; decorations for Christmas trees; and

(d) In International Class 41: education; providing of training;  entertainment; sporting and cultural activities

123.    In claiming a *bona fide* intent to use the subject mark on the stated list of approximately 46 different goods and services, SBM's Application Serial No. 76/478,796 did not claim that the subject mark Casino de Monaco had ever been used in commerce on any such goods or services.

124.    In the course of SBM's prosecution of application Serial No. 76/478,796, SBM disclaimed any exclusive rights in the word "casino".

125.    In the course of SBM's prosecution of application Serial No. 76/478,796, the PTO repeatedly objected that the claimed mark was merely descriptive of casino services emanating from Monaco, and therefore initially refused registration.

126.    To overcome this initial refusal to register the claimed mark, SBM represented to the PTO, *inter alia*, that in addition to its unregistrable descriptive meaning, the claimed mark had acquired  recognition - or "secondary meaning" - entitling it to registration and protection of the descriptive term as a trademark.

127.    The following statement appears in SBM's September 14, 2004 response to the PTO's second and final refusal to register the mark Casino de Monaco:

> Registration of applicant's mark, CASINO DE MONACO, has been refused under Sec. 2(e)(2) of the U.S. Trademark Act, because the mark in the opinion of the Examining Attorney is "primarily geographically descriptive" of the goods and services to which it (the mark) is applied.  Since "primarily geographically descriptive" marks are not considered to be inherently distinctive, attorney for applicant recognizes that the mark must have acquired "secondary meaning" in the market place in order to secure registration.

128.    However, despite admitting that proof of acquired secondary meaning was required to permit registration, and despite assuring the PTO that its evidence demonstrated recognition of the name applied for, Casino de Monaco, among the approximately 35 pages of materials submitted to the PTO by SBM to overcome the finding of descriptiveness, there was

not a single example of commercial or other use of the name Casino de Monaco.

129.    At the time of SBM's September 14, 2004 response to the PTO's second and final refusal to register the mark Casino de Monaco, there did not exist a Casino de Monaco.

130.    At the time of SBM's September 14, 2004 response to the PTO's second and final refusal to register the mark Casino de Monaco, SBM had never sold any goods or services bearing the name Casino de Monaco.

131.    Rather than offering to the PTO proof of use of the claimed mark, Casino de Monaco, SBM instead simply offered proof of use (somewhere) of the name Casino de Monte Carlo.

132.    In reliance on SBM's representations as aforesaid, the PTO withdrew its initial refusal to register the claimed mark.

133.    Registration No. 3,031,006 for the mark Casino de Monaco issued on December 20, 2005.

134.    As a result of amendment of the specification of goods and services claimed during prosecution of the subject application, at the time the registration issued and at the time this action was commenced, Registration No. 3,031,006 for the mark Casino de Monaco specified the following approximately 84 different goods and services:

(e) In International Class 9: electric apparatus and instruments, namely computerized video games for gaming purposes, interactive video games of virtual reality comprised of computer hardware and software, machines for playing games of chance, computer software games, software for use in gaming machines and gaming equipment, gaming equipment namely gaming machines, slot machines, keno and poker machines, coin changers, coin accepters for separating good coins from counterfeits; photographic apparatus; controlling and signaling apparatus used in casinos; apparatus for recording, transmission, reproduction of sound or images, namely radio apparatus, video screen, video cameras; calculators, data processing equipment, namely communication servers, communication software for connecting global computer networks, computer cameras,

computer game software, computer ecommerce software to allow users to perform electronic business transactions via a global computer network and computers; fire extinguishers.

(f) In International Class 16: printed matter, namely blank or partially printed postcards, printed invitations, printed menus, printed paper signs, menu boards, printed timetables, books, magazines, catalogues featuring casino, hotel and international news, tourism; bookbindings; photographs, stationery; adhesives tapes for stationery or household purposes; artists' materials, namely pencils, pens, brushes, paint brushes; typewriters and office requisites, namely typewriter typing elements, rubber bands, staplers; printed instructional, educational, and teaching materials used in hotels and casinos for teaching different games; plastic materials for packaging, namely bags for packaging, tubs for consumer products, plastic films used as packaging for food, envelopes, pouches for merchandise packaging; printers' type; printing blocks.

(g) In International Class 28: games and playthings, namely playing cards, board games, card games, coin-operated video games, disposable ticket sets for playing games of chance, hand held units for playing electronic and video games, lottery games, dominos, parlor games, European roulette, American roulette, video poker, poker game and boule game; gymnastic and sporting articles, namely golf bags and balls, sport balls, play swimming pools, swimming equipment, gymnastic apparatus, gymnastic training stools, portable support stretching for dance and other exercises and tennis equipment; decoration for Christmas trees

(h) In International Class 41: organizing community sporting and cultural activities; providing casino services within a hotel resort environment; training for the personnel employed in casinos in the use and operation of slot machines and cinema equipment; conducting educational entertainment exhibits in the nature of cooking demonstrations; entertainment services in the nature of opera, namely, organizing, producing and presenting live musical, orchestral and operative shows; organizing sporting events in the nature of car racing, tennis tournaments, golf tournaments, and swimming competitions.

135.    Upon information and belief, contrary to SBM's representations made to the PTO to secure registration of the subject mark, Casino de Monaco, the evidence presented to the PTO in fact failed to show any use in commerce of the claimed mark, Casino de Monaco, at any time.

136.    Upon information and belief, SBM's representations made to the PTO to secure registration of the subject mark, Casino de Monaco, were false and misleading when made, and were made with knowledge of their false and misleading nature.

137.    Following commencement of this action, SBM, on or about December 20, 2007, voluntarily amended Registration No. 3,031,006 for the mark Casino de Monaco by surrendering all of the goods and services specified therein with the exception of "providing casino services within a hotel resort environment" in International Class 41.

138.    As a result of the foregoing, Registration No. 3,031,006 for the mark Casino de Monaco now specifies only "providing casino services within a hotel resort environment".

139.    Upon information and belief, SBM has never made use in commerce in the United States of the claimed mark Casino de Monaco on or in connection with "providing casino services within a hotel resort environment" as specified in its Registration No. 3,031,006.

140.    Upon information and belief, SBM has never made use in commerce in the United States of the claimed mark Casino de Monaco on or in connection with casino services of any kind.

141.    Upon information and belief, SBM has never offered for sale in the United States any "casino services within a hotel resort environment" bearing the claimed mark Casino de Monaco, as specified in its Registration No. 3,031,006.

142.    Upon information and belief, SBM has never offered for sale in the United States any casino services of any kind bearing the claimed mark Casino de Monaco.

143.    Upon information and belief, SBM has never imported into the United States any "casino services within a hotel resort environment" bearing the claimed mark Casino de Monaco, as specified in its Registration No. 3,031,006.

144.    Upon information and belief, SBM has never imported into the United

States any casino services of any kind bearing the claimed mark Casino de Monaco.

145.    Upon information and belief, SBM has never actually sold in the United States any "casino services within a hotel resort environment" bearing the claimed mark Casino de Monaco, as specified in its Registration No. 3,031,006.

146.    Upon information and belief, SBM has never actually sold in the United States any casino services of any kind bearing the claimed mark Casino de Monaco.

147.    Upon information and belief, SBM has never advertised for sale in the United States any "casino services within a hotel resort environment" bearing the claimed mark Casino de Monaco, as specified in its Registration No. 3,031,006.

148.    Upon information and belief, SBM has never advertised for sale in the United States any casino services of any kind bearing the claimed mark Casino de Monaco.

149.    Upon information and belief, SBM has never offered for sale anywhere in the world any "casino services within a hotel resort environment" bearing the claimed mark Casino de Monaco, as specified in its Registration No. 3,031,006.

150.    Upon information and belief, SBM has never offered for sale anywhere in the world any casino services of any kind bearing the claimed mark Casino de Monaco.

151.    Upon information and belief, SBM has never actually sold anywhere in the world any "casino services within a hotel resort environment" bearing the claimed mark Casino de Monaco, as specified in its Registration No. 3,031,006.

152.    Upon information and belief, SBM has never actually sold anywhere in the world any casino services of any kind bearing the claimed mark Casino de Monaco.

153.    Upon information and belief, SBM has never advertised for sale anywhere in the world any "casino services within a hotel resort environment" bearing the claimed mark Casino de Monaco, as specified in its Registration No. 3,031,006.

154.    Upon information and belief, SBM has never advertised for sale anywhere in the world any casino services of any kind bearing the claimed mark Casino de Monaco.

155.    Upon information and belief, SBM has never made use in commerce anywhere in the world of the claimed mark Casino de Monaco on or in connection with "providing casino services within a hotel resort environment" as specified in its Registration No. 3,031,006.

156.    Upon information and belief, SBM has never made use in commerce anywhere in the world of the claimed mark Casino de Monaco on or in connection with providing casino services of any kind.

157.    Upon information and belief, from among the goods or services specified in its Registration No. 3,031,006 when the registration initially issued on December 20, 2005, SBM has never offered for sale in the United States so much as a single item of such goods or services bearing the claimed mark Casino de Monaco.

158.    Upon information and belief, SBM has never imported into the United States so much as a single item of goods or services specified in its Registration No. 3,031,006 in the form the registration initially issued on December 20, 2005 bearing the claimed mark Casino de Monaco.

159.    Upon information and belief, SBM has never actually sold in the United States so much as a single item of goods or services specified in its Registration No. 3,031,006 in

the form the registration initially issued on December 20, 2005 bearing the claimed mark Casino de Monaco.

160.    Upon information and belief, SBM has never advertised for sale in the United States so much as a single item of goods or services specified in its Registration No. 3,031,006 in the form the registration initially issued on December 20, 2005 bearing the claimed mark Casino de Monaco.

161.    Upon information and belief, SBM has never offered for sale anywhere in the world so much as a single item of goods or services specified in its Registration No. 3,031,006 in the form the registration initially issued on December 20, 2005 bearing the claimed mark Casino de Monaco.

162.    Upon information and belief, SBM has never actually sold anywhere in the world so much as a single item of goods or services specified in its Registration No. 3,031,006 in the form the registration initially issued on December 20, 2005 bearing the claimed mark Casino de Monaco.

163.    Upon information and belief, SBM has never advertised for sale anywhere in the world so much as a single item of goods or services specified in its Registration No. 3,031,006 in the form the registration initially issued on December 20, 2005 bearing the claimed mark Casino de Monaco.

164.    Upon information and belief, SBM has never made use in commerce anywhere in the world of the claimed mark Casino de Monaco on so much as a single item of goods or services specified in its Registration No. 3,031,006 in the form the registration initially issued on December 20, 2005.

165.    Upon information and belief, there does not now exist in the United States an actual casino operated by or for SBM named Casino de Monaco

166.    Upon information and belief, there does not now exist anywhere in the world an actual casino operated by or for SBM named Casino de Monaco.

167.    Upon information and belief, there has never existed in the United States an actual casino operated by or for SBM named Casino de Monaco.

168.    Upon information and belief, there has never existed anywhere in the world an actual casino operated by or for SBM named Casino de Monaco.

169.    Upon information and belief, to the extent SBM conducts business from the New York office referenced in paragraphs 6, 24 and 25 of the Amended Complaint herein, it has done so solely to book reservations and conventions at Monaco hotels, not for the sale of casino services.

170.    Upon information and belief, to the extent SBM conducts business from the New York office referenced in paragraphs 6, 24 and 25 of the Amended Complaint herein, it has no business records of any sales of casino services.

171.    Upon information and belief, to the extent SBM has conducted business from the New York office alleged in paragraphs 6, 24 and 25 of the Amended Complaint herein, it has no business records of any of any such activities other than booking reservations and conventions at Monaco hotels.

172.    Upon information and belief, to the extent SBM conducts business from the New York office alleged in paragraphs 6, 24 and 25 of the Amended Complaint herein, it has no business records of any of any such activities for considerably longer than three years.

173.    Upon information and belief, as a matter of law, SBM is not now authorized or permitted to offer for sale or sell casino services in New York or elsewhere in the United States, either from the New York office referenced in paragraphs 6, 24 and 25 of the Amended Complaint herein or from other locations in the United States.

174.    Upon information and belief, as a matter of law, SBM has never been authorized or permitted to offer for sale or sell casino services in New York or elsewhere in the United States, either from the New York office referenced in paragraphs 6, 24 and 25 of the Amended Complaint herein or from other locations in the United States.

175.    Because there does not exist a Casino de Monaco and because SBM has never used the name in commerce, SBM has no actual customers in the United States of any "Casino de Monaco".

176.    Because there does not exist a Casino de Monaco and because SBM has never used the name in commerce, SBM has no actual customers anywhere in the world of any "Casino de Monaco".

177.    Because SBM has no actual customers of any "Casino de Monaco", it faces no risk that any such customers of any "Casino de Monaco" in the United States will be diverted to PlayShare or its subsidiary.

178.    Because SBM has no actual customers of any "Casino de Monaco", it faces no risk that any such customers of any "Casino de Monaco" anywhere in the world will be diverted to PlayShare or its subsidiary.

179.    Because there does not exist a Casino de Monaco and because SBM has never used the name in commerce, there exists no goodwill in the name in the United States

capable of suffering harm.

180.    Because there does not exist a Casino de Monaco and because SBM has never used the name in commerce, there exists no goodwill in the name anywhere in the world capable of suffering harm.

181.    PlayShare is not aware of any instances in which any purchaser or potential purchaser of its gaming services in the United States has ever been confused or mistaken as to the source of origin of the services offered by PlayShare or its subsidiaries' or as to PlayShare's or its subsidiaries' relationship to SBM.

182.    PlayShare is not aware of any instances in which any purchaser or potential purchaser of its gaming services anywhere in the world has ever been confused or mistaken as to the source of origin of the services offered by PlayShare or its subsidiaries' or as to PlayShare's or its subsidiaries' relationship to SBM

183.    Upon information and belief, SBM is not aware of any instances in which any purchaser or potential purchaser of gaming services in the United States has ever been confused or mistaken as to the source of origin of the services offered by PlayShare or its subsidiaries' or as to PlayShare's or its subsidiaries' relationship to SBM.

184.    Upon information and belief, SBM is not aware of any instances in which any purchaser or potential purchaser of gaming services anywhere in the world has ever been confused or mistaken as to the source of origin of the services offered by PlayShare or its subsidiaries' or as to PlayShare's or its subsidiaries' relationship to SBM

185.    Among the approximately 84 different goods and services originally specified in Registration No. 3,031,006, SBM did not specify "casino services" as such (as

distinct from casino services within a hotel resort environment).

186.    Accordingly, having failed to specify casino services, such as those offered by PlayShare's subsidiaries, SBM, following commencement of this action, on November 7, 2007 filed Application Serial No. 77/329,567 for the mark "Casino de Monaco" simply for casino services.

187.    SBM's Application Serial No. 77/329,567 does not allege actual use in commerce of the mark Casino de Monaco but instead claims a *bona fide* intent to use the mark.

188.    SBM's Application Serial No. 77/329,567 is now pending, and SBM does not own a United States registration of the mark Casino de Monaco for casino services as such.

189.    Upon information and belief, SBM has never made use in commerce in the United States of the claimed mark Casino de Monaco on or in connection with casino services as specified in its Application Serial No. 77/329,567.

190.    Upon information and belief, SBM has never offered for sale in the United States any casino services as specified in its Application Serial No. 77/329,567 bearing the claimed mark Casino de Monaco.

191.    Upon information and belief, SBM has never imported into the United States any casino services as specified in its Application Serial No. 77/329,567 bearing the claimed mark Casino de Monaco.

192.    Upon information and belief, SBM has never actually sold in the United States any casino services as specified in its Application Serial No. 77/329,567 bearing the claimed mark Casino de Monaco.

193.    Upon information and belief, SBM has never advertised for sale in the

United States any casino services as specified in its Application Serial No. 77/329,567 bearing the claimed mark Casino de Monaco.

194.    Upon information and belief, SBM has never offered for sale anywhere in the world any casino services as specified in its Application Serial No. 77/329,567 bearing the claimed mark Casino de Monaco.

195.    Upon information and belief, SBM has never actually sold to any United States consumers anywhere in the world any casino services as specified in its Application Serial No. 77/329,567 bearing the claimed mark Casino de Monaco.

196.    Upon information and belief, SBM has never actually sold to any consumers anywhere in the world any casino services as specified in its Application Serial No. 77/329,567 bearing the claimed mark Casino de Monaco.

197.    Upon information and belief, SBM has never advertised for sale anywhere in the world any casino services as specified in its Application Serial No. 77/329,567 for sale under the claimed mark Casino de Monaco.

198.    Upon information and belief, SBM has never made use in commerce anywhere in the world of any casino services as specified in its Application Serial No. 77/329,567 bearing the claimed mark Casino de Monaco.

199.    Upon information and belief, SBM's Application Serial No. 77/329,567 was filed to manufacture evidence of rights in and to the mark Casino de Monaco for casino services.

200.    Upon information and belief, prior to or contemporaneous with SBM's December 2002 filing of its application Serial No. 76/478,796 to register Casino de Monaco, it

had no specific plans to use in commerce the claimed mark as a trademark on any or all of the goods or services specified in said application.

201.    Upon information and belief, there exist no business documents prior to or contemporaneous with SBM's filing of its application Serial No. 76/478,796 demonstrating any business plans to use the claimed mark Casino de Monaco as a trademark on or in connection with any or all of the goods or services specified.

202.    Upon information and belief, there exist no business documents prior to or contemporaneous with SBM's filing of its application Serial No. 76/478,796 demonstrating any business plans to use the claimed mark Casino de Monaco as a trademark on or in connection with any casino services within a hotel resort environment.

203.    Upon information and belief, there exist no business documents prior to or contemporaneous with SBM's filing of its application Serial No. 76/478,796 demonstrating any business plans to use the claimed mark Casino de Monaco as a trademark on or in connection with any on-line casino services.

204.    Upon information and belief, there exist no business documents prior to or contemporaneous with SBM's filing of its application Serial No. 76/478,796 demonstrating any business plans to use the claimed mark Casino de Monaco as a trademark on or in connection with any casino services..

205.    Upon information and belief, subsequent to SBM's December 2002 filing of its application Serial No. 76/478,796 to register Casino de Monaco, it has had no specific plans to use in commerce the claimed mark as a trademark on any or all of the goods or services specified in said application.

206.    Upon information and belief, there exist no business documents subsequent to SBM's filing of its application Serial No. 76/478,796 demonstrating any business plans to use the claimed mark Casino de Monaco as a trademark on or in connection with any or all of the goods or services specified in said application.

207.    Upon information and belief, there exist no business documents subsequent to SBM's filing of its application Serial No. 76/478,796 demonstrating any business plans to use the claimed mark Casino de Monaco as a trademark on or in connection with any casino services within a hotel resort environment.

208.    Upon information and belief, there exist no business documents subsequent to SBM's filing of its application Serial No. 76/478,796 demonstrating any business plans to use the claimed mark Casino de Monaco as a trademark on or in connection with any on-line casino services.

209.    Upon information and belief, there exist no business documents subsequent to SBM's filing of its application Serial No. 76/478,796 demonstrating any business plans to use the claimed mark Casino de Monaco as a trademark on or in connection with any casino services.

210.    Upon information and belief, SBM's representation that it had a *bona fide* intent to use the mark Casino de Monaco on the goods or services specified in application Serial No. 76/478,796 was false.

211.    As a result of the foregoing Registration No. 3,031,006 was procured fraudulently and pursuant to 15 U.S.C. § 1119 should be canceled in its entirety.

212.    As a result of the foregoing, PlayShare is entitled to recovery of all

damages sustained pursuant to 15 U.S.C. § 1120.

### AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE AND SECOND COUNTERCLAIM

213.    PlayShare repeats and realleges each of the allegations of paragraphs 102 through 212 above as if the same were set forth at length herein.

214.    As a result of the foregoing, any rights of SBM in and to the claimed mark Casino de Monaco have been abandoned, and pursuant to 15 U.S.C. § 1119 Registration No. 3,031,006 should be canceled.

### AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE AND THIRD COUNTERCLAIM

215.    PlayShare repeats and realleges each of the allegations of paragraphs 102 through 214 above as if the same were set forth at length herein.

216.    Because the name Casino de Monaco has never been used in commerce it can have acquired no secondary meaning.

217.    As a result of the foregoing, SBM was not entitled to registration of the claimed mark Casino de Monaco, and pursuant to 15 U.S.C. § 1119 Registration No. 3,031,006 should be canceled.

### AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE AND FOURTH COUNTERCLAIM

218.    PlayShare repeats and realleges each of the allegations of paragraphs 102 through 217 above as if the same were set forth at length herein.

219.    Because SBM lacked a *bona fide* intent to use the subject mark Casino de Monaco at the time it filed Applications Serial Nos. 76/478,796 and 77/329,567 the applications were and/or are invalid.

220.    As a result of the foregoing, SBM was not entitled to registration of the claimed mark Casino de Monaco, and pursuant to 15 U.S.C. § 1119 Registration No. 3,031,006 should be canceled and pending Application Serial No. 77/329,567 should be disallowed.

## AS AND FOR A SIXTEENTH AFFIRMATIVE DEFENSE AND FIFTH COUNTERCLAIM - STATED IN THE ALTERNATIVE

221.    PlayShare repeats and realleges each of the allegations of paragraphs 102 through 220 above as if the same were set forth at length herein, and states this counterclaim in the alternative only, to the extent that SBM relies on any claimed rights in the mark Casino de Monte Carlo in the United States.

222.    SBM does not own any registration in the United States for the mark Casino de Monte Carlo.

223.    In November 2007, SBM applied to register the mark Casino de Monte Carlo, Application Serial No. 77/329,593, for "casino services", claiming use in commerce since December 31, 1984.

224.    On March 5, 2008, the USPTO issued an office action initially refusing registration on grounds, *inter alia*, that the claimed mark "is primarily geographically descriptive of the applicant's goods/services".

225.    In its March 5, 2008 office action, the USPTO determined that the primary significance of the term "MONTE CARLO" is geographic, and that the addition of the generic or

highly descriptive term, "casino", to such a geographic term does not obviate a determination of geographic descriptiveness.

226.    In its March 5, 2008 office action, the USPTO refused registration on the further grounds that there may be a likelihood of confusion under Trademark Act Section 2(d) between SBM's claimed mark and two other prior pending applications, Application Serial No. 76/284,329 of Victoria Partners for the mark Monte Carlo for casino services and Application Serial No. 78/240,625 of Scientific Games International, Inc. for the mark Monte Carlo for lottery games and services.

227.    Upon information and belief, in the United States, the mark Monte Carlo has been used for casino services since 1995 by Victoria Partners.

228.    Upon information and belief, in the United States, the mark Monte Carlo has been used for lottery games and services since 1995 by Scientific Games International, Inc.

229.    Upon information and belief, in the United States, the mark Monte Carlo has for many years been and is now used and/or registered on and in connection with diverse goods and services by numerous third parties having no relationship with SBM.

230.    Upon information and belief, SBM has never made use in commerce in the United States of the claimed mark Casino de Monte Carlo on or in connection with "casino services" as specified in its Application Serial No. 77/329,593.

231.    Upon information and belief, SBM has never imported into the United States any "casino services" bearing the claimed mark Casino de Monte Carlo, as specified in its Application Serial No. 77/329,593.

232.    Upon information and belief, SBM has never actually sold in the United States any "casino services" bearing the claimed mark Casino de Monte Carlo, as specified in its Application Serial No. 77/329,593.

233.    Upon information and belief, SBM has never actually offered for sale in the United States any "casino services" bearing the claimed mark Casino de Monte Carlo, as specified in its Application Serial No. 77/329,593.

234.    Upon information and belief, SBM has never advertised for sale in the United States any "casino services" bearing the claimed mark Casino de Monte Carlo, as specified in its Application Serial No. 77/329,593.

235.    Upon information and belief, there does not now exist in the United States an actual casino operated by or for SBM named Casino de Monte Carlo.

236.    Upon information and belief, there has never existed in the United States an actual casino operated by or for SBM named Casino de Monte Carlo.

237.    Upon information and belief, SBM has no current plans to create an actual casino in the United States under the claimed mark Casino de Monte Carlo.

238.    Upon information and belief, SBM has never had any plans to create an actual casino in the United States under the claimed mark Casino de Monte Carlo.

239.    Upon information and belief, SBM does not now provide on-line gaming under the name Casino de Monte Carlo.

240.    Upon information and belief, SBM has no current plans to create an on-line gaming service under the claimed mark Casino de Monte Carlo.

241.    Upon information and belief, SBM has never had any plans to create an on-line gaming service under the claimed mark Casino de Monte Carlo.

242.    Upon information and belief, to the extent SBM conducts business from the New York office as alleged in paragraphs 6, 24 and 25 of the Amended Complaint herein, it has done so solely to book reservations and conventions at Monaco hotels, not for the sale of casino services under the claimed mark Casino de Monte Carlo.

243.    Upon information and belief, to the extent SBM conducts business from the New York office as alleged in paragraphs 6, 24 and 25 of the Amended Complaint herein, it has no business records of any sales of casino services under the claimed mark Casino de Monte Carlo.

244.    Upon information and belief, as a matter of *law*, SBM is not now authorized or permitted to offer for sale or sell casino services in New York or elsewhere in the United States under the claimed mark Casino de Monte Carlo, either from the New York office referenced in paragraphs 6, 24 and 25 of the Amended Complaint herein or from other locations in the United States.

245.    Upon information and belief, as a matter of *law*, SBM has never been authorized or permitted to offer for sale or sell casino services in New York or elsewhere in the United States under the claimed mark Casino de Monte Carlo, either from the New York office referenced in paragraphs 6, 24 and 25 of the Amended Complaint herein or from other locations in the United States.

246.    As a result of the foregoing, SBM has no enforceable rights in the United States in the claimed mark Casino de Monte Carlo.

247.    Upon information and belief, in connection with the proceeding, <u>International Bancorp, L.L.C.</u> v. <u>Societe Des BainesDe Mer Et Du Cercle Des Etrangers A Monaco</u>, 192 F.Supp.2d 467 (E.D.Va. 2002), SBM expressly conceded that its claimed rights in the name Casino de Monte Carlo do not confer upon it the right to object to use in the United States of the name Monaco in connection with on-line casino services.

248.    Upon information and belief, based in part upon its admission that its claimed rights in the name Casino de Monte Carlo do not confer upon it the right to object to use in the United States of the name Monaco in connection with on-line casino services, the district court in <u>International Bancorp, L.L.C.</u> v. <u>Societe Des BainesDe Mer Et Du Cercle Des Etrangers A Monaco</u>, 192 F.Supp.2d 467 (E.D.Va. 2002), granted summary judgment in part dismissing SBM's claims for International Bancorp's use of the name Monaco in connection with on-line casino services, and SBM did not appeal the grant of partial summary judgment against it.

249.    As a result of the foregoing, there is no basis for SBM to contend now that the name Grand Monaco casino (much less Grand Mondial casino) is confusingly similar to Casino de Monaco.

250.    As a result of the foregoing, to the extent SBM relies in this proceeding on any claimed rights in the name Casino de Monte Carlo, PlayShare is entitled to a declaration that SBM has no enforceable rights in the name Casino de Monte Carlo for on-line gaming services in the United States and that PlayShare's use of the names Grand Monaco casino and/or Grand Mondial casino do not infringe any rights of SBM.

**AS AND FOR A SEVENTEENTH AFFIRMATIVE DEFENSE AND**
**<u>SIXTH COUNTERCLAIM - STATED IN THE ALTERNATIVE</u>**

251.    PlayShare repeats and realleges each of the allegations of paragraphs 102 through 250 above as if the same were set forth at length herein.

252.    As a result of the foregoing, to the extent SBM relies in this proceeding on any claimed rights in the name Casino de Monte Carlo, any such rights of SBM in and to the claimed mark Casino de Monte Carlo should be declared to have been abandoned, and pursuant to 15 U.S.C. § 1119, Application Serial No. 77/329,567 should be disallowed.

### AS AND FOR AN EIGHTEENTH AFFIRMATIVE DEFENSE AND SEVENTH COUNTERCLAIM

253.    PlayShare repeats and realleges each of the allegations of paragraphs 102 through 251 above as if the same were set forth at length herein.

254.    Any interruption of currently existing or future marketing and sales of PlayShare's services in connection with the name Grand Monaco casino Grand Mondial casino or the subject domain names is likely to cause PlayShare great and irreparable injury.

255.    The name Grand Monaco casino shares with the name Casino de Monaco only the descriptive and unprotectable term Monaco and the generic term "casino" and shares with the name Casino de Monte Carlo no elements other than the generic term "casino".

256.    SBM does not own exclusive rights in the place name Monaco.

257.    Because SBM does not now use and has never used in commerce its claimed name Casino de Monaco, there exist no products or services of SBM bearing SBM's claimed mark Casino de Monaco with which users of PlayShare's services might be confused.

258.    Because SBM does not now use and has never used its claimed name Casino de Monaco in commerce, and has never used its claimed name Casino de Monte Carlo in United States commerce, the present action by SBM to interfere with the legitimate business of

PlayShare and its subsidiaries constitutes reverse domain name hijacking.

259.    As a result of the foregoing, PlayShare is entitled to a declaratory judgment that its use of the name Grand Monaco casino or the subject domain names does not infringe any rights of SBM in and to its claimed trademarks Casino de Monaco or  Casino de Monte Carlo.

## AS AND FOR A NINETEENTH AFFIRMATIVE DEFENSE AND
## EIGHTH COUNTERCLAIM

260.    PlayShare repeats and realleges each of the allegations of paragraphs 102 through 259 above as if the same were set forth at length herein.

261.    The May 25, 2007 WIPO decision directing a transfer of 66 of the Monaco domain names does not identify any specific facts supporting a finding of likelihood of confusion between the subject domain names and SBM's claimed trademark, Casino de Monaco.

262.    The May 25, 2007 WIPO decision directing a transfer of 66 of the Monaco domain names entirely fails to address the bona fide business interests conducted by PlayShare's subsidiary in connection with the subject Monaco domain names.

263.    The May 25, 2007 WIPO decision directing a transfer of 66 of the Monaco domain names does not identify any specific facts supporting a finding of bad faith against PlayShare or Mr. Wright or Mr. Toh.

264.    In connection with the WIPO proceeding, SBM failed to disclose its admission in International Bancorp, L.L.C. v. Societe Des BainesDe Mer Et Du Cercle Des Etrangers A Monaco, 192 F.Supp.2d 467 (E.D.Va. 2002), that the words Monaco and Monte Carlo are not confusingly similar and failed to disclose the grant of summary judgment against it that its claimed rights in the name Casino de Monte Carlo do not confer upon it the right to object to use of the name Monaco in connection with on-line casino services.

265.    As a result of the foregoing, the non-final WIPO decision ordering transfer of the domain names to SBM is contrary to law and the UDRP policy under which it was issued; it should not be enforced and PlayShare should be entitled to retain use of the subject Monaco domain names.

WHEREFORE, Defendants and Counterclaim-Plaintiff request that the court enter relief as follows:

(i)     dismissing the complaint in its entirety;

(ii)    declaring that SBM has no enforceable rights against defendants in the name Casino de Monaco and directing the cancellation of Trademark Registration No. 3,031,006 and refusal to register Application Serial No. 77/329,567;

(iii)    to the extent necessary to the resolution of this action, declaring that SBM has no enforceable rights against defendants in the name Casino de Monte Carlo and directing the refusal to register Application Serial No. 77/329,593;

(iv)    rejecting the WIPO decision directing defendants to transfer the domain names in question to the plaintiffs and declaring that defendants' continued use and ownership of the subject domain names is lawful and infringes no rights of SBM;

(v)     awarding defendants their actual damages, to the extent permitted by law;

(vi)    awarding defendants punitive damages, to the extent permitted by law;

(vii)    awarding to defendants their reasonable attorneys' fees, to the extent permitted by law;

(viii)    awarding such other and further relief as the Court may deem just and

proper.

DATED:  New York, New York
July 3, 2008

s\Jonathan Moskin
Jonathan E. Moskin (JM 9814)
Michelle Dean
**WHITE & CASE LLP**
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone:  (212) 819-8200
Facsimile:  (212) 354-8113

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd day of July, 2008, I served a copy of **DEFENDANTS'**
**AMENDED ANSWER AND COUNTERCLAIMS** on the attorneys for the Plaintiff, as
designated below, by ECF filing and by mail as follows:

Robert L. Raskopf
Alan Blum
Lori E. Weiss
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010


s\Jonathan Moskin
Jonathan E. Moskin
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036